Oliver H. Goe
J. Daniel Hoven
Abbie N. Cziok
BROWNING, KALECZYC, BERRY & HOVEN, P.C.
800 N. Last Chance Gulch, Suite 101
P.O. Box 1697
Helena, MT 59601
Telephone: (406) 443-6820
Facsimile: (406) 443-6883
oliver@bkbh.com
dan@bkbh.com
abbie@bkbh.com

Attorneys for Koelsch Senior Communities, LLC, and Billings Partners, LLC

FILED
FEB 10, 2022
Clerk, U.S. District Court
District of Montana
Billings Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ESTATE OF ROBERT W. PETERSEN, by and through Robert T. Petersen as Personal Representative,<br><br>Plaintiffs,<br><br>v.<br><br>KOELSCH SENIOR COMMUNITIES LLC; and BILLINGS PARTNERS, LLC d/b/a CANYON CREEK<br><br>Defendants. | Case No. DV-56-2022-0000040-NE<br><br>USDC Case No. CV-22-11-BLG-SPW-TJC<br><br>**NOTICE OF REMOVAL** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i, ii, iii, iv, v

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

PLAINTIFF'S ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I. The Parties are Completely Diverse and the Amount in Controversy is over $75,000. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II. Federal Question Jurisdiction Exists Under 28 USC § 1331 By Virtue Of Complete Preemption Under the PREP Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A. The PREP Act Provides for Complete Preemption . . . . . . . . . . . . 5

B. Plaintiff's Claims Fall Within the Purview of the PREP Act . . . 17

II. Federal Question Jurisdiction Also Exists Pursuant to the *Grable* Doctrine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

III. Federal Question Jurisdiction Exists Pursuant to the Federal Officer Removal Statute (28 U.S.C. § 1442(a)(1)) . . . . . . . 23

A. Defendants Were Acting Under the Direction of a Federal Officer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

B. There is a causal nexus between Plaintiffs' claims and Defendants' actions taken pursuant to federal direction . . . . . . . . . . . . . . . . . 28

C. Defendants Have Colorable Defenses Based on Federal Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

## TABLE OF AUTHORITIES

**Cases** **Page**

*Allstate Ins. Co. v. Hughes*, 358 F.3d 1089 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . 5

*Bd. of Comm'rs v. Tenn. Gas Pipeline Co.*,850 F.3d 714, 724 (5th Cir. 2017) . . 22

*Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003) . . . . . . . . . . . . . . . . 6.15.16

*Bolton v. Gallatin Center for Rehabilitation & Healing, LLC*,
No. 3:30-cv-00683 (M.D. Tenn. Jan. 19, 2021) (DN 35) . . . . . . . .. . . . . . . . . . 13

*Branch v. Lilac Holdings, LLC*,
No. 21-cv-00605-BAS-MDD (S.D. Cal. June 16, 2021) . . . . . . . . . . . . . . . . 15, 17

*Casabianca v. Mt. Sinai Medical Center*, 2014 WL 10413521
(N.Y. Ct. App. Dec. 12, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Chevron, Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-44 (1984) . . . . . . . . . . . . . . . . . 13

*Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006) . . . . . . 23

*Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018) . . . . . . . . . . . 24

*Fields v. Brown*, No. 6:20-CV-00475, 2021 WL 510620,
at *2 (E.D. Tex. Feb. 11, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26, 27

*Garcia v. Welltower OpCo Group, LLC*, 522 F.Supp.3d 734
(C.D. Cal. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17

*Goncalves v. Rady Children's Hosp. San Diego*,
865 F.3d 1237, 1247 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24, 28

*Grable & Sons Metal Prods. v. Darue Eng'g & Mfg*.,
545 U.S. 308 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 20, 21, 22, 29

*Jefferson Cnty. V. Acker,* 527 U.S. 423, 432-33) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894 (9th Cir. 2006). . . 4

*Latiolais v. Huntington Ingalls, Inc.,* 951 F.3d 286, 292 (5th Cir. 2020). . . . . . . . 28

*Maglioli v. All. HC Holdings LLC,* 16 F.4th 393 (3d Cir. 2021) . . . . . . . . . . . . . . 15

*McMahon v. Presidential Airways, Inc*.,
410 F.Supp.2d 1189, 120-02 (M.D. Fla. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808 (1986) . . . . 21

*Rachal v. Natchitoches Nursing & Rehabilitation Center, LLC*,
No. 1:21-cv-00334 (W.D. La. Apr. 30, 2021) . . . . . . . . . . . . . . . . . . . . 12, 15, 17, 18

*Reilly v. Delta Healthcare II, LLC*,.
No: 8:21-cv-1013-JSM-JSS (M.D. Fla. June 7, 2021) . . . . . . . . . . . . . . . . . . 15, 17

*Rose v. SLM Fin. Corp.,* Civ. A. No. 3:05CV445, 2007 WL 674319, at *4
(W.D. N.C. Feb. 28, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Watson v. Philip Morris Cos*., 551 U.S. 142, 152 (2007). . . . . . . . . . . . . . . . . . . . 24

*Wazelle v. Tyson Foods, Inc.,* No. 2:20-CV-203Z,
2021 WL 2637335 (N.D. Tex. June 25, 2021) . . . . . . . . . . . . . . . . . . . . . . . 25, 27, 28

*Willingham v. Morgan,* 395 U.S. 402, 409 (1969) . . . . . . . . . . . . . . . . . . . . . . . . 28

*Winters v. Diamond Shamrock Chem. Co.,*
149 F.3d 387, 400 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## Statutes, Codes and Court Rules

85 Fed. Reg. 15198 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9, 10

85 Fed. Reg. 21012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

85 Fed. Reg. 35100 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

85 Fed. Reg. 79190 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

86 Fed. Reg. 7872 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

5 U.S.C. §§701, *et. Seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. §§ 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §§ 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

28 U.S.C. §§ 1441 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §§ 1441(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1442(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

28 U.S.C. §§ 1442 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §§ 1446 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . .. . . . . . . . . . 1

28 U.S.C. § 1446(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1446(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1446(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. § 201, *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

42 U.S.C. § 247d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

42 U.S.C. § 247d-6d . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,6,7,8,9,11,16,17,18,21

42 U.S.C. §§ 247d-6e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,6,8,16

42 U.S.C. § 5195c(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

42 U.S.C. § 5195c(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**Other Authorities**

*Renewal of Determination That A Public Health Emergency Exists* (July 19, 2021), https://www.phe.gov/emergency/news/healthactions/phe/Pages/COVID-19July2021.aspx . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**TABLE OF EXHIBITS**

| Ex. | Document |
|---|---|
| A | Complaint and Demand for Jury Trial |
| B | Advisory Opinion on the Public Readiness and Emergency Preparedness Act and March 10,2020 Declaration Under the Act April 17, 2020, as Modified May 19, 2020 |
| C | Advisory Opinion on the Public Readiness and Emergency Preparedness Act and the Secretary's Declaration Under the Act October 22, 2020 as Modified on October 23, 2020 |
| D | Advisory Opinion 21-01 on the Public Readiness and Emergency Preparedness Act Scope of Preemption Provision January 8, 2021 |
| E | Notice of Filing Statement of Interested of the United States |
| F | *Mills v. Hartford Health Care Corp.*, CV-20-6134761S (Conn. Sup. Ct. Sept. 27, 2021). |

## INTRODUCTION

1. Defendants Koelsch Senior Communities, LLC, and Billings Partners, LLC d/b/a Canyon Creek (collectively "Defendants"), through counsel, remove this case from the Montana Thirteenth Judicial District Court, Yellowstone County, to the United States District Court for the District of Montana pursuant to 28 U.S.C. § 1132 and 28 U.S.C. §§ 1331, 1441, 1442 and 1446; the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d-6d, 247d-6e (2005) (the "PREP Act"); and the Declaration for Public Readiness and Emergency Preparedness Act Coverage for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198-07 (March 17, 2020) (including all amendments thereto).

2. This case is removable because diversity jurisdiction exists pursuant to 28 U.S.C. § 1132. Federal question jurisdiction also exists by virtue of complete preemption under the PREP Act and pursuant to the *Grable* doctrine. In addition, federal officer removal jurisdiction exists pursuant to 28 USC § 1442.

## PROCEDURAL HISTORY

3. On January 18, 2022, Plaintiff filed a Complaint in the Montana Thirteenth Judicial District Court against Defendants. Plaintiffs served their Complaint on January 20, 2022. Fewer than thirty (30) days have passed since service of the Complaint, and this Notice is therefore timely under 28 U.S.C. § 1446(b). (Complaint attached as **Exhibit A)**.

4. Venue for removal is proper in this district and division because this district and division embrace the Thirteenth Judicial District Court, Yellowstone, Montana, the forum in which the removed action was filed. 28 U.S.C. § 1441(a).

5. Plaintiff pleads various claims against Defendants relating to their administration and use of COVID-19 countermeasures and decisions they made in managing and operating their countermeasure program and facility during the COVID-19 pandemic.

6. Pursuant to 28 U.S.C. § 1446(d), Defendants will promptly give Plaintiffs written notice of the filing of this Notice of Removal and will promptly file a copy of this Notice of Removal with the Clerk of the Thirteenth Judicial District, Yellowstone County, Montana, where the action is pending.

**FACTUAL BACKGROUND**

7. Mr. Petersen was a Montana resident. Ex. A, ¶ 2. He had lived in Canyon Creek, in Billings, Montana, for a year prior to his death. *Id.,* ¶ 1.

8. The sole Member in Billings Partners, LLC, is Olivia Ellen, LLC. There are a number of members of Olivia Ellen, LLC. Their names and states of residence and citizenship are:

*a.* Aaron Koelsch and Judy S. Koelsch, Washington;

*b.* Brent Schumacher, Washington;

*c.* Garth Brandt, Washington;

*d.* Karen Bryant, California;

*e.* Emmet Clark Koelsch, Washington;

*f.* Olivia Ellen Koelsch, Washington;

*g.* Jack Henry Koelsch, Washington;

*h.* Sophia Emma Elizabeth Koelsch, Washington;

9. Koelsch Senior Communities, LLC, has two members: E. Aaron Koelsch and Judy Koelsch. They both reside in and are citizens of Washington.

**PLAINTIFF'S ALLEGATIONS**

10. Plaintiff alleges that Mr. Petersen's family was unable to visit him in July 2020 due to the COVID-19 pandemic, but were notified that Mr. Petersen had tested positive for COVID-19 on July 8, 2020. Ex. A, ¶¶ 1, 40. When his family did see him again on July 23, 2020, Plaintiff alleges that Mr. Petersen had lost a considerable amount of weight and was not able to talk, swallow, or stand. *Id.*, ¶ 42. Plaintiff alleges that Defendants did not provide Mr. Petersen with sufficient care while he was being treated with COVID-19. *Id.*, ¶¶ 49, 59, 69. Also, Plaintiff identifies but discounts Koelsch's representations regarding its COVID-19 infection prevention and control protocols, *id.*, ¶¶ 9–45, quoting statements made by Koelsch that it "continue[s] to follow all state mandates and CDC guidelines in all of our communities" and "ha[s] comprehensive plans in place not only to protect our residents and employees." *Id.*, ¶¶ 22, 73–82. Plaintiff alleges

Defendants negligently managed the facility, *id.*, ¶ 70, criticizing the sufficiency of their COVID-19 infection prevention and control protocols at Canyon Creek and how they managed and operated their countermeasures program. *Id.*, ¶ 97. More specifically, they concede that Eva Arant, the Chief Operating Officer of Koelsch, represented Defendants had "put in place policies and procedures that . . . have protected our residents" but attack defendants' decision to use their own COVID testing rather than the state's COVID testing program. *Id.*, ¶¶ 32, 34.

## ARGUMENT

### I. The Parties are Completely Diverse and the Amount in Controversy is over $75,000.

11. There is federal jurisdiction in this Court because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332.

12. "LLCs resemble both partnerships and corporations. Notwithstanding LLCs' corporate traits, however, every circuit that has addressed the question treats them like partnerships for the purposes of diversity jurisdiction." *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Thus, an "LLC is a citizen of every state of which its owners/members are citizens." *Id.*

13. As stated above, Billings Partners, LLC, is owned by another LLC—Olivia Ellen, LLC. All owners/members of that entity are either citizens of Washington or California.

14. Koelsch Senior Communities, LLC, has two owners/members, both of whom are citizens of Washington.

15. As stated in Plaintiff's complaint, Robert W. Petersen was a resident of Canyon Creek in Billings, Montana, when he died. On information and belief, he was therefore a citizen of Montana. Ex. A, ¶ 1.

16. "Diversity jurisdiction under § 1332 requires complete diversity of citizenship, each of the plaintiffs must be a citizen of a different state than each of the defendants." *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1095 (9th Cir. 2004).

17. Because the Plaintiff is from Montana and none of the Defendants are from Montana, the parties are completely diverse.

18. Plaintiff seeks damages in the amount compensatory damages for the survival action, compensatory damages for the wrongful death action, damages for pecuniary loss, treble damages and attorneys' fees under the Montana Unfair Trade Practices and Consumer Protection Act, and punitive damages. *See generally* Ex. A, Prayer for Relief. Therefore, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## II. Federal Question Jurisdiction Exists Under 28 USC § 1331 By Virtue Of Complete Preemption Under The PREP Act.

### A. The PREP Act Provides for Complete Preemption

19. "When [a] federal statute completely preempts [a] state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in

terms of state law, is in reality based on federal law." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003). *Beneficial* provides that state claims may be removed to federal court in two circumstances: (1) when a federal statute wholly displaces the state-law cause of action; or (2) when Congress expressly provides. *Id*. Both circumstances apply here. The PREP Act wholly displaces state law. 42 U.S.C. §§ 247d-6e, 247d-6d(d)(e). This comprehensive federal remedial structure was purposefully established by Congress, and it is explicitly "exclusive of any other civil action or proceeding for any claim or suit [the PREP Act] encompasses . . . ." 42 U.S.C. § 247d-6e(d).

*i. The PREP Act is Made Applicable to the COVID-19 Pandemic.*

20. The PREP Act, which is part of the Public Health Services Act ("PHSA"), 42 U.S.C. § 201, *et seq*., grants healthcare providers and other covered persons immunity from claims for injuries related to the use of approved countermeasures to combat a national public health emergency. 42 U.S.C. § 247d-6d.

21. The PREP Act is triggered when the Secretary of the Department of Health and Human Services ("HHS") issues a "declaration" defining the scope and breadth of PREP Act protections relevant to a particular public health emergency. *See* 42 U.S.C. § 247d.

22. Notably, Congress precluded any judicial review of the Secretary's actions under the PREP Act, giving his decisions and proclamations the force of law: '[n]o

court of the United States, or of any State, shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under this subsection.'" 42 U.S.C. 247d-6d(b)(7).

23. When the Secretary issues a declaration invoking the PREP Act for a specific public health crisis "covered persons" who administer or use "covered countermeasures" "**shall be** immune from suit and liability under Federal and State law with respect to **all** claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure" as defined by the Secretary of HHS. 42 U.S.C. § 247d-6d(a)(1) (emphasis added).

24. A "covered person" includes a person or entity that "is a qualified person" or a "program planner". 42 U.S.C. § 247d–6d(i)(2)(B). A "qualified person" is defined as a "licensed health professional or other individual who is authorized to prescribe, administer, or dispense such countermeasures under the law of the State in which the countermeasure was prescribed, administered, or dispensed." 42 U.S.C. § 247d–6d(i)(2)(B)(iv). A "program planner" is defined as

> [A] person employed by the State or local government, or other person who supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with a declaration under subsection (b).

42 U.S.C. § 247d– 6d(i)(6). The PREP Act defines a "person" as "an individual, partnership, corporation, association, entity, or public or private corporation." 42 U.S.C. § 247d–6d(i)(5).

25. Congress provides two exclusive federal remedies in the PREP Act for claims arising out of the use or administration of covered countermeasures. First, the Act creates a "Covered Countermeasure Process Fund" for purposes of "providing timely, uniform, and adequate compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure." 42 U.S.C. § 247d-6e(a). This pre-litigation administrative remedy is subject to judicial review under the Administrative Procedure Act, 5 U.S.C. §§701, *et. seq.*

26. Second, an injured person may bring "an exclusive Federal cause of action" under the PREP Act "against a covered person for death or serious physical injury proximately caused by willful misconduct." 42 U.S.C. § 247d-6d(d)(1). Significantly, the PREP Act sets forth specific and comprehensive procedures that govern the federal lawsuit asserting this cause of action. 42 U.S.C. § 247d-6d(e).

27. Congress made preemption explicit: "no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that is different from, or

is in conflict with, any requirement applicable under this section." 42 U.S.C. §247d-6d(b)(8)(A)-(B).

28. In accordance with Congressional authority, at the start of the pandemic, the Secretary of HHS invoked the PREP Act to cover COVID-19 by issuing a declaration on March 17, 2020, announcing that, as of February 4, 2020, "[l]iability immunity as prescribed in the PREP Act. . . is in effect" for any "[a]ctivities authorized in accordance with the public health and medical response of the Authority Having Jurisdiction to prescribe, administer, deliver, distribute or dispense the Covered Countermeasures following a Declaration of an emergency" related to COVID-19. Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198 at 15201-02 (Mar. 17, 2020), amended by 85 Fed. Reg. 21012 (Apr. 15, 2020) (the "Declaration").

29. In that Declaration, the term "administration" is defined to extend beyond the physical distribution of COVID-19 countermeasures to the "activities and decisions directly relating to . . . dispensing of the countermeasures to recipients," and to the "management and operation of countermeasure programs" as well as the "management and operation of locations for [the] purpose of distributing and dispensing countermeasures." *See* 85 Fed. Reg. 15198 at 15202.

30. The Declaration also broadly defines "covered countermeasure" as:

> Covered Countermeasures are any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, or any device used in the administration of any such product, and all components and constituent materials of any such product.

85 Fed. Reg. 15198.

31. Respiratory protective devices were added to the list of covered countermeasures. *See* 85 Fed. Reg. 21012 at 21013.[1] On June 8, 2020, the Declaration was amended again to reflect HHS's initial intent to "identify the full range of qualified countermeasures" as permitted under the PREP Act. 85 Fed. Reg. 35100 at 35101.

32. HHS also issued an Advisory Opinion stating that "immunity covers claims for loss sounding in tort or contract", and that "PREP Act immunity must be read in light of the PREP Act's broad, express-preemption provision." (Attached as **Exhibit B** at 2).

33. On October 23, 2020, HHS issued "Advisory Opinion 20-04 on the Public Readiness and Emergency Preparedness Act and Secretary's Declaration Under the Act," confirming that "administration" under the PREP Act is much broader than the mere physical provision of a countermeasure to a recipient and encompasses

[1] The Secretary issued an Amended Declaration under the PREP Act. (March 27, 2020). It added respiratory protective devices approved by NIOSH as a covered countermeasure under the PREP Act. On June 4, 2020, the Secretary further the Declaration to clarify that covered countermeasures under the Declaration include qualified products that limit the harm COVID-19 might otherwise cause. This Amendment was effective as of February 4, 2020. See 85 CFR 21012.

activities related to the "management and operation" of COVID-19 countermeasure programs and those facilities that provide countermeasures to recipients. (Exhibit C). This Advisory Opinion flatly rejects as "wrong" a pre-pandemic New York trial court ruling in *Casabianca v. Mt. Sinai Medical Center*, 2014 WL 10413521 (N.Y. Ct. App. Dec. 12, 2014), that the PREP Act requires the "direct physical" administration of a COVID-19 countermeasure and that the Act is not applicable to claims involving an omission or failure to act.

34. Further, on December 3, 2020, the HHS Secretary issued the Fourth Amendment to the Declaration ("Amendment Four") (published at 85 Fed. Reg. 79190 (Dec. 9, 2020)), which:

(a) Expressly adopts all COVID-19 Advisory Opinions into its initiating Declaration, giving those directives controlling authority over interpretations of the PREP Act; 85 Fed. Reg. 79190, 79191, 79192, 79194-95;

(b) Declares that an omission to administer a covered countermeasure can fall within the PREP Act's protections; 85 Fed. Reg. 79190, 79191, 79194, 79197; and

(c) Makes explicit that cases involving COVID-19 covered countermeasures are to be in the federal system as provided by Congress and that this "federal jurisdiction" is essential to the uniform provision of a national response to the COVID-19 pandemic; 85 Fed. Reg. 79190, 79194, 79196, 79197-98.

35. Amendment Four also addresses HHS's authority to define the application of the PREP Act by stating: "42 U.S.C. 247d-6d(b)(7) provides that '[n]o court of the United States, or of any State, shall have subject matter jurisdiction to review,

whether by mandamus or otherwise, any action by the Secretary under this subsection.'" *See* Amendment Four, 85 Fed. Reg. 79190 at 79198 n.25.

36. On January 8, 2021, HHS published an Advisory Opinion of the Office of General Counsel addressing questions raised by the Fourth Amendment. *See* Advisory Opinion 21-01 (Jan. 8, 2021) ("AO 21-01") (attached as Exhibit D). AO 21-01 states that the PREP Act is indeed invoked by allegations that include not only "use" or administration of countermeasures, but alleged failure to act or inaction, where the non-use was the result of conscious decision-making. *See, e.g., Rachal v. Natchitoches Nursing & Rehabilitation Center, LLC*, No. 1:21-cv-00334 (W.D. La. Apr. 30, 2021), *12.

37. AO 21-01 also recognizes that "[t]he PREP Act is a 'Complete Preemption' Statute," because it establishes both a federal and administrative cause of action as the only viable claim and vests exclusive jurisdiction in federal court.

*ii. The New Administration and Federal Courts Reaffirm the PREP Act Provides Complete Preemption.*

38. Consistently, in 2021, the new Administration again recognized that the PREP Act provides for complete preemption of COVID-19 state law claims. On January 28, 2021, HHS amended the Declaration for the fifth time, again asserting that HHS Advisory Opinions are incorporated into the original Declaration. *See* Fifth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and

Republication of the Declaration, (Jan. 28, 2021), 86 Fed. Reg. 7872, 7874 (stating "[t]he plain language of the PREP Act makes clear that there is complete preemption of state law."); *see also* U.S. Dep't of Health & Human Services, *Renewal of Determination That A Public Health Emergency Exists* (July 19, 2021), https://www.phe.gov/emergency/news/healthactions/phe/Pages/COVID-19July2021.aspx (last accessed Feb. 10, 2022).

39. Given the congressional delegation of authority to the Secretary and the Congressional dictate precluding any judicial review of the Secretary's actions under the PREP Act, the Declaration, with amendments and opinions, has controlling force of law. Also, HHS's interpretive proclamations regarding the PREP Act are alternatively entitled to *Chevron* controlling deference. *See Chevron, Inc. v. NRDC, Inc.*, 467 U.S. 837, 843–44 (1984).

40. In addition to these controlling HHS authorities, the U.S. Department of Justice ("DOJ") filed a Statement of Interest ("SOI") of the United States in *Bolton v. Gallatin Center for Rehabilitation & Healing, LLC*, No. 3:30-cv-00683 (M.D. Tenn. Jan. 19, 2021) (DN 35). It agrees that the PREP Act "completely preempts claims relating to the administration or use of covered countermeasures." (Exhibit E at 1, 7–8.) Further, it states that the two key provisions of the PREP Act – the immunity provision for all Federal and state law claims, and the exclusive alternative federal remedy provision, established as the sole exception to immunity

– operate together to demonstrate the PREP Act's completely preemptive nature. *Id*. at 7–8.

41. Courts have also addressed these issues. The United States District Court for the Central District of California in *Garcia v. Welltower OpCo Group, LLC*, 522 F.Supp.3d 734 (C.D. Cal. 2021), denied the plaintiffs' motion to remand and granted the defendants' motion to dismiss based on the PREP Act regarding a case with similar facts. Specifically, the Court held that: (1) "[t]he acts and omissions alleged by Plaintiffs appear almost verbatim in the January 8, 2021 Advisory Opinion" and that accordingly, the PREP Act applied to the plaintiffs' claims, *id.* at *14; (2) "because the OGC stated [in the January 8, 2021 Advisory {Opinion] that the PREP Act is a complete preemption statute . . . an adequate basis for federal question jurisdiction exists," *id*.; and (3) prior Court opinions holding that the PREP Act did not provide a basis for federal question jurisdiction preceded more recent guidance from the OGC (Advisory Opinion published January 8, 2021). *Id.*

42. More recently, the District Court for the Western District of Louisiana likewise agreed that the PREP Act is a complete preemption statute, finding that the PREP Act confers federal jurisdiction and completely preempts claims falling within its scope because of the civil enforcement provision; a specific jurisdictional grant to the federal courts for enforcement of the right; and a clear Congressional

intent that claims brought under the federal law be exclusive. *See Rachal*, Civil Docket No. 1:21-CV-00334, *3 n.3; *see also Reilly v. Delta Healthcare II*, *LLC*, No: 8:21-cv-1013-JSM-JSS (M.D. Fla. June 7, 2021) (conceding jurisdiction and the applicability of the PREP Act when senior living facility moved to dismiss); *Branch v. Lilac Holdings, LLC*, No. 21-cv-00605-BAS-MDD (S.D. Cal. June 16, 2021) (same).

43. Most recently, the United States Court of Appeals for the Third Circuit in *Maglioli v. All. HC Holdings LLC,* 16 F.4th 393, 412 (3d Cir. 2021), concluded that the PREP Act is a complete preemption statute with respect to willful misconduct claims, which Plaintiff pleads here. It confirmed that the Secretary of HHS has broad and extensive non-reviewable authority bestowed on him by Congress for all substantive applications of the PREP Act. *Id.* at 400–01. Significantly, the Third Circuit Court reiterated that "the Secretary controls the scope of immunity through the declaration and amendments", including what "acts and omissions" fall thereunder. *Id.* at 401.

*iii. Under the Analysis in Beneficial, Congress Explicitly Provided for Complete Preemption in the PREP Act.*

44. The PREP Act expressly satisfies the *Beneficial* test for complete preemption in stating that "a covered person **shall** be immune from suit and liability under Federal and State law with respect to **all** claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an

individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure." 42 U.S.C. § 247d-6d(a)(1) (emphasis added). The PREP Act further provides that this immunity "applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure . . . or use of such countermeasure." 42 U.S.C. § 247d-6d(a)(2)(B).

45. Significantly, the PREP Act also provides an extensive exclusive federal cause of action (as well as an supplemental administrative remedy) for COVID-19 claimants in accordance the directives of *Beneficial* by providing for federal redress and displacing state-law liability. Specifically, the PREP Act provides an exclusive Federal cause of action for willful misconduct claims as the single exception to immunity (42 U.S.C. § 247d-6d(d)(1)) and also establishes a pre-litigation no-fault monetary fund for those injured by the use or administration of covered countermeasures that must be exhausted prior to relief under the federal civil litigation process (42 U.S.C. § 247d-6e(a), (d)(1)), thereby requiring an exclusive federal remedy for all claims related to countermeasures (42 U.S.C. § 247d-6e(d)(5)).

46. In addition, Congress expressly preempts all state law claims relating to the administration and use of covered countermeasures. *See* 42 U.S.C. § 247d-6d(b)(8).

**B. Plaintiff's Claims Fall Within the Purview of the PREP Act.**

47. Here, based on the face of the Complaint, the totality of the allegations made therein and the logical impact of its most central allegations, the PREP Act is implicated by Plaintiff's claims against Defendants as "covered persons" engaged in the use and administration—including the allegedly improper use and administration—of "covered countermeasures" under the Act. 42 U.S.C § 247d–6d(a)(1). *See Rachal*, Civil Docket No. 1:21-CV-00334, *3 n.3; *Garcia*, 2021 WL 492581, at *7 (C.D. Cal. Feb. 10, 2021); *see Reilly*, No: 8:21-cv-1013-JSM-JSS (M.D. Fla. June 7, 2021); *Branch*, No. 21-cv-00605-BAS-MDD (S.D. Cal. June 16, 2021); *Mills v. Hartford Health Care Corp.*, CV-20-6134761S, p. 2 (Conn. Sup. Ct. Sept. 27, 2021) (attached as Exhibit F).

48. The PREP Act applies to "covered persons" who administer or use "covered countermeasures," and thus become "immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1).

49. Defendants are "covered persons" as contemplated by 42 U.S.C. § 247d–6d and are qualified persons and program planners as confirmed by the August 14, 2020 HHS Advisory Opinion. 42 U.S.C. § 247d-6d(i)(2)(B). Defendants were acting as "qualified persons" because they are licensed healthcare providers and

administrators authorized to administer and/or use FDA approved medical devices to prevent or mitigate the spread of COVID-19. 42 U.S.C. § 247d-6d(i)(8). Defendants were also acting as "program planners" in that they managed, supervised, and administered infection control covered countermeasures, including, but not limited to, the use of PPE, thermometers, oxygen, visitation restrictions, COVID-19 symptom monitoring, COVID-19 treatment, infection control procedures, and screening requirements at the facility in an effort to prevent and mitigate the spread of COVID-19 to its residents during the pandemic. *See, e.g., Rachal*, Civil Docket No. 1:21-CV-0334, *9-10 (finding nursing homes are "covered persons" under the PREP Act).

50. Defendants, as covered persons, administered and used "covered countermeasures" under the PREP Act. 42 U.S.C. § 247d-6d(a)(1). Covered countermeasures include: antivirals; diagnostic devices; any devices used to treat, diagnose, prevent, or mitigate COVID-19; and respiratory protective devices. In Canyon Creek, while Mr. Petersen was a resident, masks were worn, COVID-19 tests were given, and social distancing and quarantine plans were made to mitigate the effects of COVID-19.

51. Here, although asserting that Defendants did not go far enough, Plaintiff discusses at length in the Complaint Koelsch's infection prevention and control protocols, Ex. A, ¶¶ 9–45, quoting statements made by Koelsch that it "continue[s]

to follow all state mandates and CDC guidelines in all of our communities" and "ha[s] comprehensive plans in place not only to protect our residents and employees." *Id.*, ¶¶ 22, 73–82. Plaintiff also alleges Defendants negligently managed the facility, *id.*, ¶ 70, in how they implemented COVID-19 infection prevention and control protocols at Canyon Creek and in the sufficiency of those protocols. *Id.*, ¶ 97. Plaintiff specifically criticizes the manner in which they managed and operated their COVID-testing countermeasures program. *Id*. They concede that Eva Arant, the Chief Operating Officer of Koelsch, represented Defendants had "put in place policies and procedures that . . . have protected our residents" but attack defendants' decision to use their own COVID testing rather than the state's COVID testing program. *Id.*, ¶¶ 32, 34. Plaintiff's allegations thus center on Defendants decisions as program planners with regard to testing and other covered countermeasures that necessarily comprises their COVID-19 infection protocols.

52. According to plaintiff, these several decisions made by Defendants as program planners with regard to their COVID-19 infection control countermeasure program were a cause of Mr. Petersen's COVID-19 infection and death. Plaintiff's claims for damages thus allegedly resulted from Defendants' "program planning" and how Defendants administered their countermeasure program or facility.

## III. Federal Question Jurisdiction Also Exists Pursuant to the *Grable* Doctrine.

53. Federal jurisdiction also exists where an action "arises under" federal law and raises a substantial federal issue, actually disputed and substantial. *See Grable & Sons Metal Prods. v. Darue Eng'g & Mfg*., 545 U.S. 308 (2005). Here, the Complaint raises substantial and disputed issues of federal law related to the Declaration issued under the PREP Act and Defendants' actions in response to the global COVID-19 pandemic.

54. HHS, in its Fourth Amended Declaration and AO 21-01, Ex. D, stated that "ordaining the metes and bounds of PREP Act protection in the context of a national health emergency necessarily means that the case belongs in federal court." Ex. D at 5. HHS provides that "there are substantial federal legal and policy . . . interests within the meaning of [the *Grable* doctrine] in having a unified, whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private-sector entities." *Id.* (quoting 85 Fed. Reg. at 79, 197).

55. Further, "Congress delegated to [the Secretary] the authority to strike the appropriate Federal-state balance with respect to particular covered countermeasures through PREP Act declarations." HHS's interpretation of *Grable* is consistent with the Supreme Court's long-standing rule "that in certain cases federal question jurisdiction will lie over state law claims that implicate federal issues." *Grable*, 545 U.S. at 312.

56. The *Grable* Court determined that there is a two-step process determines whether a state law claim "arises under" federal law: (1) the state law claim must necessarily raise a stated federal issue that is actually disputed and substantial; and (2) federal courts must be able to entertain the state law claims "without disturbing a congressionally approved balance of state and federal judicial responsibilities." *Id.* at 314; *see Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808 (1986).

57. Here, both prongs of *Grable* are satisfied. First, Plaintiff brings claims relating to Defendants' alleged use or administration (or misuse, nonuse, or non-administration) of covered countermeasures in connection with the care and treatment of Mr. Petersen, which necessarily implicate disputed and substantial federal issues. *See* 42 U.S.C. § 247d-6d. Second, as recognized by AO 21-01 and the HHS Declaration (and its amendments), the PREP Act expresses a clear intention to supersede and preempt state control of the very issues raised by Plaintiff, i.e., issues concerning Defendants' conscious decisions as when and how to use or administer covered countermeasures related to COVID-19 infection control.

58. Moreover, the Complaint implicates federal imperatives of the highest and broadest importance: coordination of national disaster relief and the maintenance

of infrastructure "essential to the national defense." *See McMahon v. Presidential Airways, Inc*., 410 F.Supp.2d 1189, 120-02 (M.D. Fla. 2006),

59. The "validity of [Plaintiff's] claims would require that conduct subject to an extensive federal … scheme is in fact subject to implicit restraints that are created by state law." *Bd. of Comm'rs v. Tenn. Gas Pipeline Co*., 850 F.3d 714, 724 (5th Cir. 2017). Thus, there is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum" for these claims. *Grable*, 545 U.S. at 313; *see Rose v. SLM Fin. Corp.,* Civ. A. No. 3:05CV445, 2007 WL 674319, at *4 (W.D. N.C. Feb. 28, 2007) ("Where a federal regulatory scheme requires private parties to undertake certain actions in order to comply with the law, the federal courts necessarily have a serious interest in examining the scope of liability that might arise as a result.").

60. Exercising jurisdiction over Plaintiff's claims also "would not materially affect, or threaten to affect, the normal currents of litigation" given the "rare" circumstances here.

**IV. Federal Question Jurisdiction Exists Pursuant to the Federal Officer Removal Statute (28 U.S.C. § 1442(a)(1)).**

61. Removal is proper under 28 U.S.C. §1442(a)(1), which provides for federal officer removal when the removing defendant establishes that: (1) defendant is a person; (2) was acting under the direction of a federal officer when it engaged in the allegedly tortious conduct; (3) there is a causal nexus between the plaintiff's

claims and the defendant's actions under federal direction; and (4) defendant has raised a colorable defense based upon federal law. *Goncalves v. Rady Children's Hospital San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017). Through 28 U.S.C. §1442(a), Congress recognizes that when private entities are enlisted to help the federal government fulfill basic governmental functions, those private entities are entitled to a hearing in federal court free of the risks of anti-federal bias in state court. 28 U.S.C. §1442(a); *Riggs v. Airbus Helicopters, Inc*., 939 F.3d 981, 985–86 (9th Cir. 2019). This section is interpreted broadly in favor of removal. *Durham v. Lockheed Martin Corp*., 445 F.3d 1247, 1252 (9th Cir. 2006).

62. Removability under Section 1442(a) need not appear on the face of a well-pleaded complaint and is proper where defendant/federal officer raises a "colorable federal defense." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999).

63. Initially, Defendants are "persons" under the federal officer removal statute. Defendants are both corporate entities, and corporations are "person[s]" pursuant to Section 1442(a)(1). *Fidelitad, Inc. v. Insitu, Inc*., 904 F.3d 1095, 1099 (9th Cir. 2018) (stating that "corporations are persons under § 1442(a)(1)").

**A. Defendants were acting under the direction of a federal officer.**

64. Here, Defendants were acting under the direction of a federal officer. The U.S. Supreme Court has held that the phrase "acting under" involves "an effort to assist, or help carry out, the duties or tasks of the federal superior." *Watson v.*

*Philip Morris Cos*., 551 U.S. 142, 152 (2007). The "acting under" requirement is broad and is also to be liberally construed to cover actions that involve "an effort to assist, or to help carry out, the federal supervisor's duties or tasks." *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1247 (9th Cir. 2017), *quoting Watson*, 551 U.S. 142 (2007). In construing the "acting under" requirement, "courts generally find that persons are 'acting under' a federal officer if acts forming the basis of the state suit were performed pursuant to a federal officer's direct orders or comprehensive and detailed regulations." *In re Nat'l Sec. Agency Telecommunications Recs. Litig*., 483 F. Supp. 2d 934, 943 (N.D. Cal. 2007); *Winters v. Diamond Shamrock Chem. Co.,* 149 F.3d 387, 400 (5th Cir. 1998).

65. Defendants acted at all relevant times "to assist, or to help carry out, the duties or tasks of the federal superior," by aiding the federal government in "fulfill[ing] other basic governmental tasks" that otherwise "the Government itself would have had to perform." *See Watson*, 551 U.S. at 153–54.

66. Defendants were designated as a "critical infrastructure" facility and were closely monitored by the federal government. *Fields v. Brown*, 2021 WL 510620, at *2; *Wazelle v. Tyson Foods, Inc.,* 2021 WL 2637335 (federal court is the proper forum for this case where defendant was "acting under the direction of multiple federal agencies" as part of the federal "critical-infrastructure designation").

67. Once COVID-19 began to spread, the federal government declared that healthcare providers, including long-term and nursing care facilities were "critical infrastructure." This designation enabled the federal government to enlist the aid of these private parties to ensure the continued operation of the healthcare infrastructure that is "so vital to the United States that [its] incapacity or destruction . . . would have a debilitating impact on security, national economic security, national public health or safety, or any combination of those matters." 42 U.S.C. § 5195c(e). And when the federal government instructed these private parties on how to carry on their "critical" business during this national emergency, it enlisted them to carry out duty of the government itself to ensure the continued provision of "services critical to maintaining the national defense, continuity of government, economic prosperity, and quality of life in the United States." *Id.*; 42 U.S.C. § 5195c(b)(3); *see Wazelle,* 2021 WL 2637335 at *5.

68. Prior to the COVID-19 pandemic, regulation of assisted living facilities was very general in nature. However, as a direct result of the COVID-19 global public health crisis, this changed through the federal directives issued by the CDC, CMS and others, to them as members of the nation's critical infrastructure by federal authorities have been explicitly guiding operational decisions related to clinical pandemic response in skilled nursing facilities. Facilities were ordered to restrict visitation, cancel communal dining, and implement active screening and staff for

fever and respiratory symptoms. Facilities were also instructed on, among other things, which patients and staff to test for COVID-19; under what circumstances to use and how to conserve PPE; when to permit staff who had COVID-19 to return to work; how to mitigate staff shortages including when to permit COVID-19 positive but asymptomatic staff to return to work; maintaining COVID-19 testing protocols; how separately to staff COVID-19 positive and negative residents; and how to handle the isolation of residents infected with COVID-19 and those under investigation for COVID-19. These very detailed clinical directives and instructions represented a marked departure from the regulatory structure which existed before the pandemic.[2]

69. The decision in *Fields v. Brown*, No. 6:20-cv-00475, 2021 WL 510620 (E.D. Tex. Feb. 11, 2021) is persuasive. In pertinent part, the court in *Fields* held that a Tyson Foods meatpacking facility was "acting under" the direction of a federal officer because Tyson Foods "exhibited 'an effort to help assist, or carry out, the duties and tasks'" of the federal government by "working directly with the Department of Agriculture and the [Food Safety and Inspection Service] to guarantee that there was an adequate food supply" during the COVID-19 pandemic." *Id*. at *3 (citation omitted). The court relied on the additional facts

[2] *See, e.g.*, Ctrs. For Disease Control & Prevention, *CDC Health Update and Interim Guidance on the Outbreak of 2019 Novel Coronavirus* (2019-n-11 coV) (Feb. 1, 2020); Ctrs. For Medicare & Medicaid Servs., *COVID-19 Long-Term Care Facility Guidance* (Apr. 2, 2020); Ctrs. For Disease Control & Prevention, *Strategies for Optimizing the Supply of Facemasks* (updated Mar. 17, 2020); Exec. Order No. 20-009; Exec. Order No, 20-52, *Emergency Management-COVID-19 Public Health Emergency*.

plead by Tyson as outcome determinative like that the "Department of Agriculture and the [Food Safety Inspection Service] closely monitored Tyson Food's meatpacking plants, staffing some employees onsite." *Id.*; *see also Johnson v. Tyson Foods, Inc.*, No. 21-CV-01161-STA-JAY, 2021 WL 5107723, at *3 (W.D. Tenn. Nov. 3, 2021) (adopting the reasoning in *Wazelle* and *Fields* in finding removal appropriate where defendant acted beyond simple compliance with law and helped carry out basic governmental tasks); *Reed v. Tyson Foods, Inc.,* No. 21-CV-01155-STA-JAY, 2021 WL 5107725, at *4 (W.D. Tenn. Nov. 3, 2021) (same).

70. Again, Defendants assisted the government, were designated as a "critical infrastructure" facility, and were subject to specific and targeted directives from the federal government. As such, Defendants were "acting under" the direction of a federal officer in responding to COVID-19 pandemic in an effort to help assist, or carry out, the duties and tasks of the federal government.

**B. There is a causal nexus between Plaintiffs' claims and Defendants' actions taken pursuant to federal direction.**

71. To establish removal under the federal officer statute, a defendant must show "a causal nexus between the plaintiff's claims and the defendant's actions under federal direction." *Goncalves*, 865 F.3d. at 1244. After 2011 statutory amendments, a case is removable if plaintiff's claims are merely "connected or

associated" with federal directions. *See Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020).

72. As explained in paragraphs 45 and 46, Plaintiff alleges a deficiency in Defendants' actions regarding infection control procedures and COVID-19 testing, which were undertaken in responding to evolving federal directives to preserve resources and respond to COVID-19 within this nursing facility. *See Wazelle*, 2021WL2637335 at *5 ("Logically, the choice of what safety precautions should be taken . . . is connected to the broader decision to keep the plant operating during the pandemic.") The nexus element is met as Defendants were following orders/directives of the government for infection control, testing, and the use of PPE as part of the nation's critical infrastructure. *Latiolais*, 951 F.3d at 295.

**C. Defendants have colorable defenses based on federal law.**

73. Lastly, Defendants assert a colorable defense based upon federal law. *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). "[O]ne of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court;" for this reason, the Supreme Court has "rejected a narrow, grudging" approach to this analysis. *Acker*, 527 U.S. at 431. Defendants assert immunity for their administration and use of "covered countermeasures" and preemption of state law claims under the PREP Act. Defendants' actions were also justified by its compliance with mandated federal directives and guidelines aimed

to protect residents from COVID-19. Therefore, Defendants have raised colorable federal defenses.

**CONCLUSION**

74. This case may be properly removed to federal court because diversity jurisdiction exists, federal question jurisdiction exists by virtue of complete preemption under the PREP Act and pursuant to the *Grable* doctrine, and the claims in this case fall within the purview of the PREP Act. In addition, this case is properly before this federal court by virtue of the federal officer removal statute.

DATED this 10TH day of February, 2022.

BROWNING, KALECZYC, BERRY & HOVEN, P.C.

By /s/ Abbie N. Cziok
Oliver H. Goe
J. Daniel Hoven
Abbie N. Cziok

Attorneys for Koelsch Senior Communities, LLC, and Billings Partners, LLC

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(d)(2)(E), I certify that **NOTICE OF REMOVAL**, is double spaced, is a proportionately spaced 14 point typeface, and contains 6,488 words.

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of February, 2022, a true copy of the foregoing was served:

Via ECF to the following parties:

John Heenan
Joseph Cook
Teague Westrope
Heenan & Cook
1631 Zimmerman Trail, Suite 1
Billings, MT 59102

/s/ Abbie N. Cziok
BROWNING, KALECZYC, BERRY & HOVEN, P.C.