John Heenan
Joe Cook
Teague Westrope
HEENAN & COOK
1631 Zimmerman Trail
Billings, MT 59102
Phone: (406) 839-9091
Fax: (406) 839-9092
john@lawmontana.com
joe@lawmontana.com
teague@lawmontana.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ESTATE OF ROBERT W. PETERSEN, by and through Robert T. Petersen as Personal Representative; ESTATE OF MARY ANN SIMONS, by and through Dean Simons as Personal Representative; and ESTATE OF CHARLOTTE ELAINE GUILFORD, by and through Charles Guilford as Personal Representative,<br><br>Plaintiff,<br><br>vs.<br><br>KOELSCH SENIOR COMMUNITIES, LLC; BILLINGS PARTNERS, LLC d/b/a CANYON CREEK; and OLIVIA ELLEN, LLC,<br><br>Defendants. | CV-22-00011-SPW-TJC<br><br>**FIRST AMENDED COMPLAINT** |

COME NOW Plaintiffs, through counsel, and for their complaint allege:

## **INTRODUCTION**

1.     This civil action is to recover all damages stemming from the indignity, pain and suffering, mental anguish and emotional distress, and eventual deaths of Robert W. Petersen (Petersen), Mary Ann Simons (Simons), and Charlotte Guilford (Guilford), all of whom were residents of Canyon Creek in Billings, Montana in June/July 2020. Petersen suffered from dementia. Simons suffered from complications caused by a hemorrhagic stroke. And Guilford suffered from dementia. Lacking the means to care for themselves, they and their families relied upon Canyon Creek to provide essential care and services, through specially trained staff, which were catered to their individual needs.

Unfortunately, the owners and operators of Canyon Creek failed to fulfill their duties to Petersen and Simons during a COVID-19 outbreak at Canyon Creek in June/July 2020. Both Petersen and Simons became infected with COVID-19 during the outbreak but were asymptomatic. Nevertheless, their health deteriorated as Canyon Creek failed to provide them with essential care and services, such as proper nutrition and hydration and regular turning to prevent development of pressure injuries. Both Petersen and Simons were eventually hospitalized because of their failing health, and sadly neither recovered. Simons passed away August 10, 2020, and Petersen passed away September 18, 2020.

Guilford's experience was different than that of Petersen and Simons. Her family moved her into Canyon Creek on June 30, 2020. At the time, Guilford's family specifically asked Canyon Creek staff if the facility had residents infected with COVID-19. Canyon Creek staff replied that the facility was free of COVID-19 infection. Regardless of whether that initial representation was true when it was made, Canyon Creek learned sometime on June 30th that a resident had tested positive for COVID-19 and failed to disclose such information to Guilford's representatives. This nondisclosure deprived Guilford's representatives of the opportunity to timely remove her from Canyon Creek. The next time Guilford's representatives heard from Canyon Creek staff was when they were notified that she had become infected with COVID-19. Guilford passed away on August 22, 2020 from COVID-19 complications.

## **PARTIES**

2.      Petersen was a resident of Canyon Creek, 1785 Majestic Lane, Billings, Yellowstone County, Montana, from July 2019 to July 2020. He is survived by his wife and adult children. His son, Robert T. Petersen, is the court-appointed Personal Representative of the Estate of Robert W. Petersen.

3.      Simons was a resident of Canyon Creek, 1785 Majestic Lane, Billings, Yellowstone County, Montana, from June 2019 to July 2020. She is

survived by her husband and adult children. Her husband, Dean Simons, is the court-appointed Personal Representative of the Estate of Mary Ann Simons.

4.    Guilford was a resident of Canyon Creek, 1785 Majestic Lane, Billings, Yellowstone County, Montana, from June 30, 2020 to August 2020. She is survived by her adult children. Her son, Charles Guilford, is the court-appointed Personal Representative of the Estate of Charlotte Elaine Guilford.

5.    Defendant Koelsch Senior Communities LLC (Koelsch Senior Communities) is a limited liability company organized and existing under the laws of the State of Washington, with its principal address listed as 111 Market St. NE, Ste 200, Olympia, WA 98501. Its members include E. Aaron Koelsch and Judy S. Koelsch. According to its website, Koelsch Senior Communities operates nearly three dozen communities in eight states, including Canyon Creek. However, Koelsch Senior Communities is not registered to do business in the State of Montana.

6.    Defendant Billings Partners, LLC (Billings Partners) is a Delaware limited liability company registered to do business in the State of Montana. Its mailing address is listed as 111 Market St. NE, Ste 200, Olympia, WA 98501, the same as for Koelsch Senior Communities. Billings Partners' registration with the State of Montana shows it as being associated with several inactive assumed business names previously registered with the State of Montana, including: Canyon

Creek Alzheimer's Community; Canyon Creek Assisted Living Memory Care Community; and Canyon Creek, a Koelsch Senior Community. Those assumed business names all had mailing addresses listed as 111 Market St. NE, Ste 200, Olympia, WA 98501, the same as for Koelsch Senior Communities. The sole member of Billings Partners, LLC, is Olivia Ellen, LLC.

7.     Defendant Olivia Ellen, LLC, is a Washington limited liability company with its principal address listed as 111 Market St. NE, Ste 200, Olympia, WA 98501, the same as for Koelsch Senior Communities. The members of Olivia Ellen, LLC, include: E. Aaron Koelsch; Judy S. Koelsch; Olivia Ellen Koelsch; Emmett Clark Koelsch; Jack Henry Koelsch; Sophia Emma Elizabeth Koelsch; Brent Schumacher; Garth Brandt; and Karen Bryant.

8.     Upon information and belief, Billings Partners is a mere alter ego of Olivia Ellen, LLC, and Koelsch Senior Communities, such that piercing the corporate veil is appropriate. In the alternative, to the extent Defendants are indeed separate entities, Plaintiffs believe that Defendants act in concert to operate Canyon Creek, such that joint liability is appropriate.

9.     At all relevant times herein, Defendants' employees and/or agents were acting in the course and scope of their employment.

10.     Defendants are vicariously liable for the negligent conduct of their employees and/or agents under the common law doctrine of respondeat superior.

## JURISDICTION AND VENUE

11.     This Court has diversity jurisdiction over this matter pursuant to 28

U.S.C. § 1332, and venue is proper in the District of Montana.

## MANAGEMENT OF CANYON CREEK

12.     Koelsch Senior Communities is in the business of standalone memory

care. It owns and operates 35 communities across eight states.

13.     In a 2019 interview, while answering a question about how Koelsch

Senior Communities defines a healthy margin while striking the right

mission/margin balance, Koelsch Senior Communities' CFO Dennis Christianson

stated in part, "Trying to balance margin and mission, [CEO Koelsch] would be the

first one to tell you, as a leader of a for-profit company, his goal is to make

money."

14.     According to CFO Christianson, the core metric tracked by Koelsch

Senior Communities is the company's expense-to-revenue ratio. Koelsch Senior

Communities strives for an expense-to-revenue ratio of 64% or less, meaning that

for every $100 in revenue, Koelsch Senior Communities does not want to exceed

$64 in expenses. CEO Koelsch takes a close look at expenses if the company's

expense-to-revenue ratio climbs into the high 60s.

15.     According to CFO Christianson, labor costs "are huge" and have the

biggest effect on expenses. If labor costs are too high, "[it] creates a quick

conversation for the regional team." In other words, cuts in staffing are made to increase profit margins.

16.     Upon this information, Plaintiffs believe Defendants intentionally understaffed Canyon Creek during the time Petersen, Simons, and Guilford were residents at Canyon Creek.

17.     CFO Christianson has also recognized that "[t]urnover is high . . . We think we can do better there with some better training and hiring."

18.     Upon this information, Plaintiffs believe Canyon Creek's staff were improperly trained and/or improperly experienced during the time Petersen, Simons, and Guilford were residents at Canyon Creek.

19.     In late February 2020, Koelsch Senior Communities became aware of the dangers and complications associated with COVID-19 outbreaks in memory care communities. Around that time, Koelsch Senior Communities' Madison House Independent & Assisted Living Community in Kirkland, Washington accepted two residents from Life Care Center of Kirkland. In late February and early March 2020, Koelsch Senior Communities became aware of the start of a COVID-19 outbreak at Life Care Center of Kirkland. Over the next two months, at least 35 deaths related to COVID-19 were linked to Life Care Center of Kirkland. The COVID-19 outbreak at Life Care Center of Kirkland garnered national news as the first major COVID-19 outbreak in a senior care community.

20.    On April 22, 2020, Koelsch Senior Communities issued a COVID-19 update on its website stating in part, "Since the beginning of the COVID-19 outbreak, we have been in close communication with local health departments in the areas where our communities are located. At both Cascade Inn in Vancouver, Washington, and Cedar Creek in Edmonds, Washington, health department officials have recommended and offered to conduct wide-spread testing of both residents and employees. We welcome these tests and are working to ensure that they are conducted quickly and completely." Despite accepting government testing in Washington, Koelsch Senior Communities would go on to decline free government testing for Canyon Creek.

21.    As of April 30, 2020, Koelsch Senior Communities had significant COVID-19 outbreaks in its communities in Edmonds, Washington and Northbrook Illinois. Throughout May and June 2020, Koelsch Senior Communities had additional outbreaks in its communities in Arlington Heights, Illinois, Arlington, Texas, and Plano, Texas.

22.    On July 7, 2020, Koelsch Senior Communities issued a COVID-19 update on its website advising of an outbreak at Canyon Creek. According to its statement, Koelsch Senior Communities advised that as of July 3, 2020, 43 of its 59 residents (approximately 73% of all residents) and 15 staff had tested positive.

At that time, Koelsch Senior Communities was awaiting test results for nine other residents, and only seven residents had tested negative.

23.    On July 7, 2020, Montana Governor Steve Bullock advised media that Canyon Creek was among a minority of long-term care and assisted living facilities in Montana that had declined participation with the State's free testing program.

24.    On July 10, 2020, the State of Montana was required to deploy troops from the Montana National Guard to help provide care to Canyon Creek residents.

25.    On July 21, 2020, Koelsch Senior Communities' Chief Operating Officer Eva Arant was present at Canyon Creek and addressed questions with the Montana media concerning the COVID-19 outbreak at Canyon Creek. She defended the decision to not participate in the State's free testing program.

26.    Arant's presence at Canyon Creek and her comments to the Montana media, along with the comments made on Koelsch Communities' website, show that Koelsch Senior Communities exercises control over Canyon Creek's operation and its care and services to residents.

## PETERSEN'S CARE AT CANYON CREEK

27.    Petersen became a resident of Canyon Creek in July 2019. Other than Parkinson's disease and Parkinson's disease dementia, he had no other significant health conditions.

28.     Petersen's daughter, Misty Mitchell (Mitchell), provided supplemental care and services to him at Canyon Creek. She assisted Petersen with his activities of daily living and served as an onsite advocate for Petersen to receive better care and services from Canyon Creek.

29.     Mitchell observed and documented instances of neglect and mistreatment by Canyon Creek, including, but not limited to: staff not regularly assisting Petersen with going to the bathroom; staff not regularly assisting Petersen with proper grooming and bathing; and staff making changes to Petersen's medications without first receiving permission from Petersen's healthcare power of attorney.

30.     On June 27, 2020, the last day Mitchell visited Petersen before Canyon Creek experienced a COVID-19 outbreak, Petersen was well nourished, sufficiently hydrated, and able to assist with his activities of daily living.

31.     On July 1, 2020, Mitchell was prevented from entering Canyon Creek. The head nurse advised her that a resident had tested positive for COVID-19 on June 30, 2020.

32.     On July 8, 2020, Canyon Creek advised Petersen's family that he had tested positive for COVID-19 but was asymptomatic.

33.     On July 23, 2020, Mitchell visited Petersen for the first time since June 27, 2020. She found him soaked in his own urine. Mitchell observed that

Canyon Creek was short-staffed, and that staff were not checking on Petersen regularly. Additionally, she observed that Petersen had lost a considerable amount of weight and was no longer able to talk, swallow, or stand. Mitchell asked Canyon Creek staff to weigh Petersen, but Canyon Creek staff advised Mitchell they were no longer weighing residents due to COVID-19 protocols.

34.     On July 24, 2020, Mitchell observed signs that Petersen was severely dehydrated. A nurse confirmed that he was indeed dehydrated. However, Canyon Creek staff advised Petersen's wife, and healthcare power of attorney, that he did not need to be transported to the hospital. Canyon Creek's head nurse acknowledged that Petersen could benefit from intravenous fluids but said that so too could all of Canyon Creek's residents.

35.     On July 25, 2020, Petersen developed a fever. In addition, his heart rate was high, but his blood pressure was low. He was therefore transported to the hospital. At the hospital, Petersen's family was told to say their goodbyes because Petersen was not expected to survive. Hospital staff advised that Petersen was suffering from, among other things, confusion, deconditioning, and acute kidney injury, all caused by severe dehydration, and a pressure injury over his sacrum and left hip.

36.     Over the next 10 days, Petersen's condition stabilized enough to be discharged from the hospital and placed under hospice care in accordance with the

conditions of his living will. He never recovered and passed away on September 18, 2020.

## SIMONS' CARE AT CANYON CREEK

37.    Simons became a resident of Canyon Creek in June or July 2019 after suffering a hemorrhagic stroke.

38.    During the COVID-19 outbreak at Canyon Creek, Simons' husband was not permitted to visit her but did see her regularly through Skype.

39.    Upon information and belief, Simons tested positive for COVID-19 on July 6, 2020 but was asymptomatic.

40.    Sometime around mid-July, Simons' husband noticed that Simons' cognitive functioning was declining. Around July 21, 2020, Simons became increasingly unresponsive.

41.    At the instruction of Simons' husband, Simons was transported from Canyon Creek by ambulance to the Billings Clinic on July 23, 2020. Hospital records indicate that she was in "serious condition" in the emergency department. She was not able to follow commands or respond to questions.

42.    Simons tested positive for COVID-19 in the emergency department, but her temperature was normal, her lungs were clear, her oxygen saturation was stable, and she presented with no pulmonary symptoms. However, Simons was diagnosed with acute metabolic encephalopathy, which doctors believed was

secondary to hypernatremia and acute kidney injury. The doctors contributed these

conditions to severe dehydration. Furthermore, Simons had a pressure injury over

her sacrum and additional pressure injuries on her right and left buttocks.

43.     Simons was not able to recover during her hospitalization and was

transitioned to comfort care. She was eventually transferred to her home and

placed under hospice care before passing away on August 10, 2020.

## GUILFORD'S CARE AT CANYON CREEK

44.     Guilford became a resident of Canyon Creek on June 30, 2020. She

was negative for COVID-19 at the time.

45.     When Guilford's representatives brought her to Canyon Creek on

June 30th, they observed a staff member wearing head-to-toe personal protective

equipment. They therefore specifically asked Canyon Creek staff if the facility was

infected with COVID-19.

46.     Canyon Creek staff advised Guilford, through her representatives, that

the facility was free of COVID-19 infection.

47.     Had Canyon Creek staff notified Guilford's representatives <u>at any</u>

<u>time</u> on June 30th that a resident had tested positive for COVID-19, Guilford's

representatives would have immediately removed her from the facility.

48.     Canyon Creek staff reportedly placed Guilford on 14-day isolation

protocols.

49.     The next time Guilford's representatives heard from Canyon Creek staff was sometime in July, when Canyon Creek staff notified Guilford's representatives that she had tested positive for COVID-19.

50.     Guilford passed away on August 22nd from COVID-19 complications.

## COUNT I: NEGLIGENCE

51.     Plaintiffs Estate of Robert Petersen and Mary Ann Simons incorporate paragraphs 2-43 as if set forth herein.

52.     On its website, Koelsch Senior Communities represents in part, "Our dementia care communities and specially trained staff members focus solely on the care of each person, no matter the level of care needed." Koelsch Senior Communities further represents that its services cater to those with a diagnosis of dementia, and that Koelsch Senior Communities provides 24/7 on-site nurses.

53.     Defendants assumed a duty to provide care and services to Petersen and Simons, through specially trained staff, and catered to their individual needs.

54.     Defendants breached their duty to Petersen and Simons by failing to ensure that they received sufficient nutrition and hydration.

55.     The issue of whether Defendants provided sufficient nutrition and hydration to Petersen and Simons is not an issue beyond the common experience of

triers of fact, such that expert testimony is necessary to assist the triers of fact in understanding the evidence or determining an issue.

56.     Defendants' failure to ensure that Petersen and Simons received sufficient nutrition and hydration constitutes negligence, or in the alternative gross negligence.

57.     As a direct and proximate result of Defendants' negligence, or in the alternative gross negligence, Petersen and Simons suffered from malnutrition and dehydration, which deteriorated their health, caused them pain, suffering, and mental anguish, and ultimately hastened their untimely deaths.

58.     As a direct and proximate result of Defendants' negligence, or in the alternative gross negligence, Petersen's wife and adult children, and Simons' husband and adult children, have suffered loss of consortium, loss of companionship, and/or loss of comfort and society.

## COUNT II: NEGLIGENCE / NEGLIGENCE PER SE

59.     Plaintiffs Estate of Robert Petersen and Estate of Mary Ann Simons incorporate paragraphs 2-43 and 51-58 as if set forth herein.

60.     Canyon Creek is a licensed assisted living facility under Montana law.

61.     Administrative Rule of Montana § 37.106.2828 mandates that all licensed assisting living facilities shall comply with the Montana Long-Term Care Residents' Bill of Rights found in Montana Code Annotated § 50-5-1101 , et seq.

62.     Montana Code Annotated § 50-5-1104(1) adopts the rights guaranteed by the Federal Nursing Home Reform Act (FNHRA) set forth in 42 U.S.C. § 1396 et seq. and implemented through federal regulation.

63.     Defendants owed Petersen and Simons duties of care attendant with the following rights:

   a. Petersen and Simons had the right to a dignified existence. 42 C.F.R. § 483.10(a).

   b. Petersen and Simons had the right to be treated with respect and dignity and care in a manner and in an environment that promoted maintenance or enhancement of their quality of life. 42 C.F.R. § 483.10(a)(1).

   c. Petersen and Simons had the right to equal access to quality care regardless of their diagnoses or the severity of their condition. 42 C.F.R. § 483.10(a)(2).

   d. Petersen and Simons had the right to receive services with reasonable accommodation of their needs. 42 C.F.R. § 483.10(e)(3).

   e. Petersen and Simons had the right to be free from neglect. 42 C.F.R. § 483.12.

f.  Petersen and Simons, through their representatives, had the right to be informed of, and participate in, their treatment plans, including the right to be informed, in advance, of changes to their treatment plans. 42 C.F.R. § 483.10(c).

g.  Petersen and Simons, through their representatives, had the right to be immediately informed of significant changes in their physical, mental, or psychosocial statuses. 42 C.F.R. § 483.10(g)(14).

64.  Defendants breached their duties of care by:

a.  Failing to provide Petersen with the necessary services to maintain good grooming and personal and oral hygiene, as required by 42 C.F.R. § 483.24(a)(2) and ARM 37.106.2843(1);

b.  Failing to have sufficient nursing staff, with the appropriate competencies and skill sets, to provide Petersen and Simons with nursing and related services for them to attain or maintain the highest practicable physical, mental, and psychosocial well-being, as required by 42 C.F.R. § 483.35 and ARM 37.106.2816;

c.  Failing to ensure that Petersen and Simons maintain acceptable parameters of nutrition and hydration, as required by 42 C.F.R. § 483.25(g);

d. Failing to ensure that Petersen and Simons receive care, consistent with professional standards of practice, to prevent development of pressure injuries, as required by 42 C.F.R. § 483.25(b)(i) and ARM 37.106.2843(4);

e. Failing to notify Petersen's and Simons' representatives that they had become malnourished and dehydrated, as required by 42 C.F.R. § 483.10(g)(14);

f. Failing to notify Petersen's representatives that he had could not talk, swallow, or stand, as required by 42 C.F.R. § 483.10(g)(14); and

g. Failing to notify Petersen's and Simons' representatives that they had developed pressure injuries, as required by 42 C.F.R. § 483.10(g)(14).

65. The foregoing statutes and regulations were established to recognize the fundamental civil and human rights to which residents of assisted living facilities are entitled.

66. As residents of Canyon Creek, Petersen and Simons were entitled to the foregoing civil and human rights.

67. Petersen and Simons suffered injuries of the sort which the foregoing statutes and regulations were enacted to prevent.

68.     The foregoing statutes and regulations are intended to regulate Defendants as owners and operators of Canyon Creek.

69.     Defendants' acts/omissions constitute negligence, gross negligence, and/or negligence per se.

70.     As a direct and proximate result of Defendants' negligence, gross negligence, and/or negligence per se, Petersen suffered, in isolation, from malnutrition, dehydration, pressure injuries, and infection, all of which deteriorated his health, caused him pain, suffering, and mental anguish, and ultimately hastened his untimely death.

71.     As a direct and proximate result of Defendants' negligence, gross negligence, and/or negligence per se, Simons suffered, in isolation, from malnutrition, dehydration, and pressure injuries, all of which deteriorated her health, caused her pain, suffering, and mental anguish, and ultimately hastened her untimely death.

72.     As a direct and proximate result of Defendants' negligence, gross negligence, and/or negligence per se, Petersen's wife and adult children, and Simons' husband and adult children, have suffered loss of consortium, loss of companionship, and/or loss of comfort and society.

/ / /

/ / /

## COUNT III: NEGLIGENCE/NEGLIGENCE PER SE

73.     Plaintiff Estate of Charlotte Guilford incorporates paragraphs 2-26 and 44-50 as if set forth herein.

74.     Canyon Creek is a licensed assisted living facility under Montana law.

75.     Administrative Rule of Montana § 37.106.2828 mandates that all licensed assisting living facilities shall comply with the Montana Long-Term Care Residents' Bill of Rights found in Montana Code Annotated § 50-5-1101 , et seq.

76.     Montana Code Annotated § 50-5-1104(1) adopts the rights guaranteed by the Federal Nursing Home Reform Act (FNHRA) set forth in 42 U.S.C. § 1396 et seq. and implemented through federal regulation.

77.     Defendants owed Guilford duties of care attendant with 42 C.F.R. § 483.10, which requires facilities to care for each resident in a manner and in an environment that promotes maintenance or enhancement of his or her quality of life.

78.     Defendants owed Guilford duties of care attendant with 42 C.F.R. § 483.80, which requires facilities to establish and maintain an infection prevention and control program designed to provide a safe, sanitary, and comfortable environment and to help prevent the development and transmission of communicable diseases and infections.

79.     Defendants breached their duties of care by failing to establish a system for preventing, identifying, reporting, investigating, and controlling infections and communicable diseases for all residents, staff, and visitors.

80.     The foregoing statutes and regulations were established to recognize the fundamental civil and human rights to which residents of assisted living facilities are entitled.

81.     As a resident of Canyon Creek, Guilford was entitled to the foregoing civil and human rights.

82.     Guilford suffered injuries of the sort which the foregoing statutes and regulations were enacted to prevent.

83.     The foregoing statutes and regulations are intended to regulate Defendants as owners and operators of Canyon Creek.

84.     Defendants' acts/omissions constitute negligence, gross negligence, and/or negligence per se.

85.     As a direct and proximate result of Defendants' negligence, gross negligence, and/or negligence per se, Guilford became infected with COVID-19 and which eventually caused her untimely death.

86.     As a direct and proximate result of Defendants' negligence, gross negligence, and/or negligence per se, Guilford's adult children have suffered loss of consortium, loss of companionship, and/or loss of comfort and society.

## <u>COUNT IV: NEGLIGENT MANAGEMENT</u>

87.     Plaintiffs incorporate all preceding paragraphs as if set forth herein.

88.     Defendants assumed a special relationship with Petersen, Simons, and Guilford and therefore owed them a nondelegable duty to operate and provide services at Canyon Creek in compliance with all applicable industry standards, statutes, and regulations.

89.     Defendants breached this nondelegable duty by:

      a.  Admitting Guilford into Canyon Creek, either knowing beforehand or immediately thereafter that one or more residents and/or staff were infected with COVID-19;

      b.  Failing to ensure that Canyon Creek's direct care staff had knowledge of the individual needs of Petersen, Simons, and Guilford; and

      c.  Failing to provide a sufficient number of specially trained staff to meet scheduled and unscheduled individual needs of Petersen, Simons, and Guilford;

90.     Defendants' failures in the preceding paragraph constitute negligent management, or in the alternative grossly negligent management.

91.     As a direct and proximate result of Defendants' negligent management, or in the alternative grossly negligent management, Petersen

suffered, in isolation, from malnutrition, dehydration, pressure injuries, and infection, all of which deteriorated his health, caused him pain, suffering, and mental anguish, and ultimately hastened his untimely death.

92.   As a direct and proximate result of Defendants' negligent management, or in the alternative grossly negligent management, Simons suffered, in isolation, from malnutrition, dehydration, and pressure injuries, all of which deteriorated her health, caused her pain, suffering, and mental anguish, and ultimately hastened her untimely death.

93.   As a direct and proximate result of Defendants' negligent management, or in the alternative grossly negligent management, Guilford became infected with COVID-19, which deteriorated her health, caused her pain and suffering, caused her mental anguish, and ultimately hastened her untimely death.

94.   As a direct and proximate result of Defendants' negligent management, or in the alternative grossly negligent management, Petersen's wife and adult children, and Simons' husband and adult children, and Guilford's adult children have suffered loss of consortium, loss of companionship, and/or loss of comfort and society.

## COUNT V: NEGLIGENT MISREPRESENTATION

95.   Plaintiffs incorporate all preceding paragraphs as if set forth herein.

96.    Defendants owed Petersen and Simons, through their representatives, a duty to give accurate information about the level of care and services Defendants were capable of providing to them.

97.    Defendants represented that they would provide Petersen and Simons with specially trained staff members focused solely on their respective individual care, no matter the level of care they needed, including specific care techniques and 24/7 on-site nurses. Defendants made these representations to influence Petersen and Simons, through their representatives, to choose Canyon Creek for their care.

98.    Defendants owed Guilford, through her representatives, a duty to disclose facts which they knew may justifiably induce Guilford, through her representatives, to refrain from moving into Canyon Creek or subsequently move out of Canyon Creek, including a duty to give accurate information about the presence of COVID-19 within the facility.

99.    Defendants represented to Guilford, through her representatives, that Canyon Creek was free of COVID-19 infection. Defendants made this representation to influence Guilford, through her representative, to choose Canyon Creek for her care.

100.    Defendants failed to exercise reasonable care in making these representations.

101.   Defendants failed to exercise reasonable care in disclosing subsequently acquired information to Petersen and Simons, through their representatives – i.e., that Canyon Creek did not have sufficient specially trained staff members focused solely on the individual care of Petersen and Simons, no matter the level of care they needed, including specific care techniques and 24/7 on-site nurses – which Defendants knew would make untrue or misleading their previous representations.

102.   Defendants failed to exercise reasonable care in disclosing subsequently acquired information to Guilford, through her representatives – i.e., that a resident had tested positive for COVID-19 on June 30, 2020 – which Defendants knew would make untrue or misleading their previous representations.

103.   These representations and nondisclosures were material.

104.   Petersen, Simons, and Guilford, through their representatives, relied upon these representations and nondisclosures.

105.   As a direct result of Defendants' negligent misrepresentations and nondisclosures, Petersen, Simons, and Guilford, through their representatives, chose to be residents at Canyon Creek.

106.   As a direct and proximate result of Defendants' negligent misrepresentations and nondisclosures, Petersen suffered, in isolation, from malnutrition, dehydration, pressure injuries, and infection, all of which deteriorated

his health, caused him pain, suffering, and mental anguish, and ultimately hastened his untimely death.

107.   As a direct and proximate result of Defendants' negligent misrepresentations and nondisclosures, Simons suffered, in isolation, from malnutrition, dehydration, and pressure injuries, all of which deteriorated her health, caused her pain, suffering, and mental anguish, and ultimately hastened her untimely death.

108.   As a direct and proximate result of Defendants' negligent misrepresentations and nondisclosures, Guilford became infected with COVID-19 and died from COVID-19 complications.

109.   As a direct and proximate result of Defendants' negligent misrepresentations and nondisclosures, Petersen's wife and adult children, Simons' husband and adult children, and Guilford's adult children, have suffered loss of consortium, loss of companionship, and/or loss of comfort and society.

### COUNT VI: VIOLATION OF THE MONTANA CONSUMER PROTECTION ACT (MONT. CODE ANN. § 30-14-101 ET SEQ.)

110.   Plaintiffs incorporate all preceding paragraphs as if set forth herein.

111.   The Montana Unfair Trade Practices and Consumer Protection Act of 1973, set forth in Mont. Code Ann. § 30-14-101 et seq., prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

112.   Petersen, Simons, and Guilford, through their representatives, were consumers pursuant to the Montana Unfair Trade Practices and Consumer Protection Act of 1973.

113.   Defendants engaged in unfair and/or deceptive acts or practices in the conduct of their commerce or trade; specifically, Defendants misrepresented to Petersen and Simons, through their representatives, the scope of Defendants' abilities to provide care and services.

114.   Defendants engaged in unfair and/or deceptive acts or practices in the conduct of their commerce or trade; specifically, Defendants misrepresented to Guilford, through her representatives, that Canyon Creek was free of COVID-19 infection.

115.   As a direct and proximate result of Defendants' unfair and/or deceptive acts or practices, Plaintiffs suffered pecuniary loss, including: the contract fees paid to Canyon Creek while Petersen, Simons, and Guilford were residents at Canyon Creek; the hospital and hospice bills for Petersen and Simons; and the funeral expenses for Petersen, Simons, and Guilford.

### COUNT VII: VIOLATION OF THE RIGHT TO DIGNITY (ART. II, § 4 OF THE MONTANA CONSTITUTION)

116.   Plaintiffs Estate of Robert Petersen and Estate of Mary Ann Simons incorporate paragraphs 2-79 as if set forth herein.

117.   Article II, § 4 of the Montana Constitution states, "The dignity of the human being is inviolable."

118.   Defendants' treatment of Petersen and Simons degraded and demeaned them as persons, failed to acknowledge their worth as human beings, and directly violated their constitutional right to dignity.

119.   As a direct and proximate result of Defendants' violation of Petersen's constitutional right to dignity, Petersen suffered, in isolation, from malnutrition, dehydration, pressure injuries, and infection, all of which deteriorated his health, caused him pain, suffering, and mental anguish, and ultimately hastened his untimely death.

120.   As a direct and proximate result of Defendants' violation of Simons' constitutional right to dignity, Simons suffered, in isolation, from malnutrition, dehydration, and pressure injuries, all of which deteriorated her health, caused her pain, suffering, and mental anguish, and ultimately hastened her untimely death.

## <u>COUNT VIII: PUNITIVE DAMAGES</u>

121.   Plaintiffs incorporate all preceding paragraphs as if set forth herein.

122.   Defendants are guilty of actual malice as defined in Mont. Code Ann. § 27-1-212(2). Defendants deliberately acted in conscious or intentional disregard of the high probability of injury to Petersen, Simons, and Guilford, or otherwise

proceeded to act with indifference to the high probability of injury to Petersen, Simons, and Guilford.

123.   Defendants knew Petersen, Simons, and Guilford were entirely reliant upon their care and services.

124.   Defendants knew of the COVID-19 pandemic.

125.   Defendants knew that an outbreak of COVID-19 in Canyon Creek could result in a strain upon or shortage of specially trained staff to provide care and services catered to the individual needs of Petersen and Simons.

126.   Defendants nevertheless decided not to develop and implement enhanced infection prevention and control protocols at Canyon Creek.

127.   As a direct and proximate result of Defendants' decision to not develop and implement enhanced infection prevention and control protocols at Canyon Creek, at least 15 staff members became infected with COVID-19, which in turn had a significant impact on Canyon Creek's ability to provide Petersen and Simons with specially trained staff capable of providing care and services catered to their individual needs.

128.   As direct and proximate result of Defendants' failure to provide Petersen with specially trained staff capable of providing care and services catered to his individual needs, Petersen suffered malnutrition, dehydration, pressure

injuries, and infection, all of which deteriorated his health and hastened his untimely death.

129.   As a direct and proximate result of Defendants' failure to provide Simons with specially trained staff capable of providing care and services catered to her individual needs, Simons suffered malnutrition, dehydration, and pressure injuries, all of which deteriorated her health and hastened her untimely death.

130.   Defendants also knew that an outbreak of COVID-19 in Canyon Creek could result in Guilford becoming infected with COVID-19 and could potentially result in Guilford dying from COVID-19 complications.

131.   Defendants decided not to immediately inform Guilford, through her representatives, on June 30, 2020, that a resident had become infected with COVID-19.

132.   As a direct and proximate result of Defendants' failure to immediately inform Guilford, through her representatives, on June 30, 2020, that a resident had become infected with COVID-19, Guilford's representatives were deprived of the opportunity to immediately remove her from Canyon Creek before she was exposed to COVID-19.

133.   As a direct and proximate result of Defendants' failure to immediately inform Guilford, through her representatives, on June 30, 2020, that a resident had

become infected with COVID-19, Guilford became infected with COVID-19 and eventually died from COVID-19 complications.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests a judgment against Defendants as follows:

134.   To pierce the corporate veil or to otherwise find that Defendants acted in concert in operating Canyon Creek;

135.   For compensatory damages attendant to a survival action with respect to Petersen, Simons, and Guilford, in an amount to be proven at trial;

136.   For compensatory damages attendant to a wrongful death action with respect to Petersen's and Simons' surviving spouses and adult children, and Guilford's surviving adult children, in an amount to be proven at trial;

137.   For pecuniary damages;

138.   For treble damages and attorneys' fees pursuant to Montana Unfair Trade Practices and Consumer Protection Act of 1973;

139.   For punitive damages, in an amount to be proven at trial;

140.   For costs and pre and post-judgment interest, as determined by the Court; and

141.   For any and all further legal or equitable relief as the Court deems proper.

## <u>DEMAND FOR JURY TRIAL</u>

142.   Plaintiffs demand a jury trial in this matter.

Dated March 31, 2022.

*/s/ Teague Westrope*
Teague Westrope
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2022, a true and correct copy of the foregoing document was served upon the following:

[  ] U.S. Mail
[  ] FedEx
[  ] Hand-Delivery
[  ] Facsimile
[X] Email
[X] ECF Electronic filing

Oliver H. Goe
J. Daniel Hoven
Abbie N. Cziok
BROWNING, KALECZYC, BERRY & HOVEN, P.C.
800 N. Last Chance Gulch, Ste. 101
P.O. Box 1697
Helena, MT 59601
Phone: (406) 443-6820
Fax: (406) 443-6883

*Attorneys for Defendants Koelsch Senior Communities, LLC, and Billings Partners, LLC*

/s/ *Teague Westrope*
Teague Westrope
Attorney for Plaintiffs