IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ESTATE OF ROBERT W. PETERSON, *by and through Robert T. Petersen as Personal Representative*; ESTATE OF MARY ANN SIMONS, *by and through Dean Simons as Personal Representative*; ESTATE OF CHARLOTTE ELAINE GUILFORD, *by and through Charles Guilford as Personal Representative*,<br><br>Plaintiffs,<br><br>vs.<br><br>KOELSCH SENIOR COMMUNITIES, LLC; BILLINGS PARTNERS, LLC, *d/b/a* CANYON CREEK; OLIVIA ELLEN, LLC,<br><br>Defendants. | CV 22-11-BLG-SPW<br><br>ORDER |

Before the Court is United States Magistrate Judge Timothy Cavan's Findings and Recommendations, filed December 19, 2022. (Doc. 29). Judge Cavan recommended that the Court deny the Motion to Dismiss (Doc. 16) filed by Defendant Koelsch Senior Communities, LLC, and Billings Partners, LLC, d/b/a Canyon Creek (collectively, "Canyon Creek"). Canyon Creek timely objected to the Findings and Recommendations. (Doc. 30). After a careful review of the filed objections and Plaintiff Estate of Robert W. Petersen, Estate of Mary Ann Simons,

1

and Estate of Elaine Guilford's response (Docs. 30, 32), the Court adopts Judge Cavan's Findings and Recommendations in full.

## I. Legal Standards

### A. Standard of Review

The parties are entitled to a de novo review of those findings to which they have "properly objected." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). The portions of the findings and recommendations not properly objected to are reviewed for clear error. *See McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

An objection is proper if it "identif[ies] the parts of the magistrate's disposition that the party finds objectionable and present[s] legal argument and supporting authority, such that the district court is able to identify the issues and the reasons supporting a contrary result." *Mont. Shooting Sports Ass'n v. Holder*, No. CV 09-147-M-DWM-JCL, 2010 WL 4102940, at *2 (D. Mont. Oct. 18, 2010). "It is not sufficient for the objecting party to merely restate arguments made before the magistrate or to incorporate those arguments by reference." *Id.*

### B. Motion to Dismiss

Canyon Creek moved to dismiss Plaintiffs' Amended Complaint (Doc. 10) under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Canyon Creek did

2

not state whether their objections were pursuant to their claims under Rule 12(b)(1) or Rule 12(b)(6) or, in their motion, under which subsection they assert the immunity defense. However, the substance of Canyon Creek's motion demonstrates its immunity defense must fall under Rule 12(b)(6), since a finding of immunity would not divest the Court of jurisdiction but rather shield Canyon Creek from liability. As such, the Court will apply Rule 12(b)(6).

Rule 12(b)(6) governs a motion to dismiss for failure to state a claim upon which relief can be granted. "Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (citing *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[I]n

3

practice, a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). Bare legal conclusions or recitations of the elements are not enough. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

## II. Statement of the Facts

This case broadly concerns the treatment and care of elderly residents of Canyon Creek. With respect to Judge Cavan's recitation of the facts, Canyon Creek only objects to Judge Cavan's explanation that "[t]he Estates allege Canyon Creek failed to fulfill their duties to Petersen and Simons before and during a COVID-19 outbreak." (Doc. 29 at 2). Canyon Creek contends Plaintiffs did not allege Canyon Creek failed to fulfill their duties to either Petersen and Simons before the COVID-19 outbreak at their facility. (Doc. 30 at 3).

Specifically with respect to Petersen, Canyon Creek concedes that the Amended Complaint "lists some complaints about Petersen's care prior to the COVID-19 outbreak." (*Id.* at 3). However, the fact that the Amended Complaint also states that Petersen was "'well nourished, sufficiently hydrated, and able to assist with his activities of daily living' at that time" demonstrates that Canyon Creek did not violate their duties to Plaintiffs prior to the COVID-19 outbreak.

4

(*Id.*). As for Simons, Canyon Creek generally argues that the Amended Complaint says nothing about her pre-COVID outbreak care. (*Id.* at 3).

The Court agrees the Amended Complaint does not allege any wrongdoing by Canyon Creek with respect to Simons prior to the COVID-19 outbreak. (*See* Doc. 10 at 12-13). However, regarding Petersen, Canyon Creek ignores the plain language Plaintiffs use to describe Petersen's daughter Misty Mitchell's observations of his pre-COVID outbreak care: that she "observed and documented instances of neglect and mistreatment." (*Id.* at 10). Among those observations were "staff not regularly assisting Petersen with going to the bathroom; staff not regularly assisting Petersen with proper grooming and bathing; and staff making changes to Petersen's medications without first receiving permission from Petersen's healthcare power of attorney." (*Id.*). Plaintiffs then invoke these examples of alleged neglect and mistreatment explicitly in Count II, and implicitly in other counts. (*Id.* at 17, 24-28). Just because Petersen was not actively ill, or as ill as he eventually became, does not neutralize the harm he allegedly suffered in violation of Canyon Creek's statutory and common law duties.

Thus, Judge Cavan's explanation of Plaintiffs' allegations is accurate because it reflects what the Estates of Petersen and Simons, together, alleged. He then follows this summary with specific details of each estate's allegations, namely that the alleged violations of duty to Petersen occurred before and after the

5

outbreak, and those to Simons occurred only after the outbreak. As such, the Court overrules Canyon Creek's objection to Judge Cavan's factual findings, adopts them as Judge Cavan set out, and reiterates only those necessary to its analysis below.

### III. Legal Objections

Canyon Creek lodges two legal objections to Judge Cavan's Findings and Recommendations:

(1) the Findings and Recommendations are contrary to law because Plaintiffs' injuries resulted from the administration of covered countermeasures under the Public Readiness and Emergency Preparedness Act ("PREP Act"), so Canyon Creek is entitled to immunity; and

(2) the Findings and Recommendations are contrary to law because the Court must give deference to an advisory opinion from the Department of Health & Human Services Office of General Counsel, which explains that the choice not to administer a covered countermeasure falls under the PREP Act and its immunity. Advisory Opinion 21-01 on the Public Readiness and Emergency Preparedness Act Scope of Preemption Provision, Dep't Health & Hum. Servs., General Counsel Advisory Opinion (Jan. 8, 2021) ("Advisory Opinion").

The Court finds both objections are proper and reviews each issue de novo.

   *A.*   *Whether Plaintiffs' injuries were caused by Canyon Creek's administration of covered countermeasures*

      *1. PREP Act Background*

The PREP Act was enacted in 2005. It authorizes the Secretary of the Department of Health and Human Services to issue a declaration determining "that a disease or other health condition or other threat to health constitutes a public health emergency ...." 42 U.S.C. § 247d-6d(b)(1) (2005). If the declaration is issued, the PREP Act immunizes "a covered person" from liability for "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure ...." § 247d-6d(a)(1). If immunity applies, an injured person may be compensated "for covered injuries directly caused by the administration or use of a covered countermeasure" from the "Covered Countermeasure Process Fund." 42 U.S.C. § 247d-6e(a).

In March 2020, the Secretary declared the spread of COVID-19 a public health emergency. Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198 (Mar. 17, 2020).[1] As defined by the Fourth Amendment to the Declaration, "covered countermeasures" include:

---

[1] To date, the Declaration has been amended ten times to extend or clarify its scope. *See* 85 Fed. Reg. 21,012 (Apr. 15, 2020); 85 Fed. Reg. 35,100 (June 8, 2020); 85 Fed. Reg. 52,136 (Aug. 24, 2020); 85 Fed. Reg. 79,190 (Dec. 9, 2020); 86 Fed. Reg. 7,872 (Feb. 2, 2021); 86 Fed. Reg. 9,516 (Feb. 16, 2021); 86 Fed. Reg. 14,462 (Mar. 16, 2021); 86 Fed. Reg. 41,977 (Aug. 4, 2021); 86 Fed. Reg. 51,160 (Sept. 14, 2021); 87 Fed. Reg. 982 (Jan. 7, 2022).

7

> (a) Any antiviral, any drug, any biologic, any diagnostic, any other device, any respiratory protective device, or any vaccine manufactured, used, designed, developed, modified, licensed, or procured:
> > i. To diagnose, mitigate, prevent, treat, or cure COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom; or
> > ii. to limit the harm that COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, might otherwise cause;
> 
> (b) a product manufactured, used, designed, developed, modified, licensed, or procured to diagnose, mitigate, prevent, treat, or cure a serious or life-threatening disease or condition caused by a product described in paragraph (a) above;
> 
> (c) a product or technology intended to enhance the use or effect of a product described in paragraph (a) or (b) above; or
> 
> (d) any device used in the administration of any such product, and all components and constituent materials of any such product.

85 Fed. Reg. 79,190, at 79,196.

"Administration" of covered countermeasures for the COVID-19 emergency "means physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution, and dispensing of the countermeasures to recipients; management and operation of countermeasure programs; or management and operation of locations for purpose[s] of distributing and dispensing countermeasures." 85 Fed. Reg. 15,198, at 15,200. Further, "*not* administering a Covered Countermeasure to one individual in order to administer it to another individual can" fall under the PREP Act. 85 Fed. Reg. 79,190, at 79,197 (emphasis original). However, "whether immunity is applicable will depend on the particular facts and circumstances" of

8

each case, and "a liability claim alleging an injury ... not directly related to the countermeasure activities is not covered ...." 85 Fed. Reg. 15,198, at 15,200.

### 2. *Canyon Creek's Immunity*

Judge Cavan found Canyon Creek was not entitled to immunity because Plaintiffs do not "allege any injury as a result of the administration of a covered countermeasure under the PREP Act." (Doc. 29 at 10). Judge Cavan notes that although Petersen, Simons, and Guilford contracted COVID-19 as residents, Plaintiffs' claims "relate to Canyon Creek's failure to care for them." *Id.* He then describes the ways Canyon Creek failed to provide for each decedent, which constitute alleged violations of their duties and caused Plaintiffs injuries. *Id.*

Further, Judge Cavan rejected Canyon Creek's argument that Plaintiffs' injuries have a causal nexus with Canyon Creek's management of their "COVID-19 countermeasure program," namely testing and use of PPE. (*Id.* at 11 (citing Doc. 16 at 27)). The mere mention of countermeasures, Judge Cavan explained, does not mean Plaintiffs allege their injuries resulted from the administration of countermeasures. (*Id.*). Even if the Amended Complaint could be construed as alleging Canyon Creek failed to employ testing, such a failure would be nonfeasance, not misfeasance, which the PREP Act does not cover. (*Id.* at 12-13).

Canyon Creek objects to Judge Cavan's conclusions on whether their actions constituted "administration." (*See* Doc. 30 at 7). Canyon Creek argues that their

9

decision not to employ certain COVID-19 measures were affirmative actions, not nonfeasance, such that PREP Act immunity applies. (*Id.*). Notably, Canyon Creek does not address Judge Cavan's findings on whether Plaintiffs alleged that their injuries were caused by any countermeasures.

Plaintiffs disagree, explaining that their claims are based on neither covered countermeasures nor Canyon Creek's administration of them. (Doc. 32 at 10). Plaintiffs further point out that the caselaw relied upon by Defendants cannot rebut the "overwhelming consensus" of circuit court caselaw that support Judge Cavan's decision. (*Id.* at 11).

In focusing on whether Canyon Creek *administered* any covered countermeasures, Canyon Creek's objection overlooks the crucial first step in determining whether PREP Act immunity applies: Are Plaintiffs' injuries related to any covered countermeasures that could have been administered? The Court agrees with Judge Cavan and Plaintiffs that the answer is no.

As for Petersen and Simons, the Amended Complaint is clear that the alleged cause of Plaintiffs' harms is Canyon Creek's failure to provide adequate care generally, not specific to COVID-19. (*See e.g.* Doc. 10 at 14 ("Defendants breached their duty to Petersen and Simons by failing to ensure that they received sufficient nutrition and hydration"); *id.* at 17-18 (describing failure of Canyon Creek to provide Petersen with good grooming and personal and oral hygiene; to

ensure Petersen and Simons received care to prevent pressure injuries; to notify Petersen's and Simons' representatives that they had become malnourished and dehydrated, developed pressure injuries, and had their medications changed; and to notify Petersen's representatives that he could not talk, swallow, or stand)). None of these allegations implicate a covered countermeasure, *i.e.* a drug, product, or device used to treat, mitigate, etc. COVID-19, even if the time period in which the alleged breaches occurred was during a COVID-19 outbreak at the facility.

Canyon Creek cherry-picks the Amended Complaint for mere mentions of COVID-19 countermeasures—namely, use of PPE and testing—to argue that Plaintiffs' allegations are rooted in those countermeasures. But, as Judge Cavan noted, "[t]he mere mention of countermeasures in the complaint does not confer immunity." *Harris v. Allison*, 20-cv-09393-CRB, 2022 WL 2232525, at *9 (N.D. Cal. May 18, 2022), *appeal docketed*, No. 22-15921 (9th Cir. 2023). Here, the description of COVID-19 countermeasures in the Amended Complaint only serve to provide context for the treatment of Petersen and Simon, not to provide the basis for Plaintiffs' claims.

Likewise, in Guilford's case, Plaintiffs do not allege that Guilford's death and Plaintiffs' subsequent injuries resulted from the administration of any drug, product, or device to diagnose, mitigate, prevent, treat, or cure COVID-19. Rather, Plaintiffs allege Canyon Creek failed to (1) notify Guilford's representatives that

11

the facility was infected with COVID-19, and (2) enact an infection prevention and control *program*. (Doc. 10 at 20-21, 24-25). Federal courts considering similar challenges in the nursing home and prison contexts have held that COVID-19 prevention and control programs are not covered countermeasures. *See Smith v. Colonial Care Center, Inc.*, No. 2:21-cv-00494-RGK-PD, 2021 WL 1087284, at *4 (C.D. Cal. Mar. 19, 2021), *appeal docketed*, No. 21-55377 (9th Cir. 2021) ("failure to 'implement an effective policy for isolating proven or suspected carriers of [COVID-19], and protecting [nursing home] residents from exposure to [covid-19]'" is not covered by the PREP Act's immunity); *Harris*, 2022 WL 2232525, at *10 (rejecting PREP Act immunity claim when a plaintiff alleged a prison failed to implement appropriate testing, distancing, and quarantining before, during, and after a transfer of prisoners to the plaintiff's facility).

Even assuming covered countermeasures were at issue, Canyon Creek's failure to implement them does not qualify as their "administration." Generally, a failure to act "cannot be construed to be administration ... of any kind of covered countermeasure." *Burris v. Montefiore*, No. 1:21-cv-02107-PAB, 2022 WL 1120374 (N.D. Ohio Apr. 14, 2022); *see also Walsh v. SSC Westchester Operating Co. LLC*, 592 F. Supp. 3d 737, 744 (N.D. Ill. 2022) (distinguishing between misfeasance and nonfeasance and maintaining the Act only protects those who employ, not decline to employ, covered countermeasures).

However, the PREP Act also immunizes the failure to administer a countermeasure when the failure to administer to one person resulted from the administration to another individual. 85 Fed. Reg. at 79,197. Courts have interpreted this to mean there must be a "close causal relationship" between the administration of the countermeasure to one person and the failure to administer it to another. *Lyons v. Cucumber Holdings, LLC*, 520 F. Supp. 3d 1277, 1285-86 (C.D. Cal 2021); *see also Goldblatt v. HCP Prairie Village KS OPCO LLC*, 516 F. Supp. 3d 1251, 1262-63 (D. Kan. 2021) ("person A 'was able to receive [the single covered countermeasure] *only because* it was not administered to' person B" (citing Advisory Opinion) (emphasis added by *Goldblatt*)); *Harris*, 2022 WL 2232525, at *10 (defendants' failure to implement appropriate COVID-19 measures in prisoner transfer had no relationship to the testing of other prisoners). For instance, the PREP Act immunizes a healthcare professional who only had one dose of a COVID-19 vaccine and administered the dose to a person who is more vulnerable to COVID-19, instead of another person who is less vulnerable. Advisory Opinion at 3.

Here, Canyon Creek does not contend that its failure to administer COVID-19 countermeasures to Petersen, Simons, and Guilford resulted from their choice to administer the same measures to others. To the contrary, Canyon Creek's failure to act was systematic, stemming from their complete failure to enact COVID-19

control programs. Canyon Creek's failure to understand this nuance in the PREP Act is fatal to their motion. Nor is their motion saved by the three state court cases and one federal court case they cite to rebut the robust federal caselaw supporting Judge Cavan's findings. (*See* Doc. 30 at 11-12).

Accordingly, the Court overrules Canyon Creek's objection and adopts Judge Cavan's findings and recommendations on this issue in full.

B.   *Whether Judge Cavan erred in disregarding the Advisory Opinion*

In his Findings and Recommendations, Judge Cavan refused to defer to the Advisory Opinion in determining if Canyon Creek's choice not to administer a covered countermeasure qualified as "an administration" under the PREP Act. Judge Cavan relied on the Ninth Circuit's opinion in *Saldana*, which likewise refused to consider the Advisory Opinion in a PREP Act case. (Doc. 29 at n.3 (citing *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 687 (9th Cir. 2022)).

Canyon Creek objects, arguing that *Saldana* only discussed complete pre-emption, not immunity, under the PREP Act, so it is not applicable. (Doc. 30 at 14). Instead, the Court should adopt the Third Circuit's reasoning that Congress has expressly delegated interpretative authority to the Secretary, so the Advisory Opinion has controlling weight. (Doc. 30 at 14-15 (citing *Maglioli v. All. HC Holdings, LLC*, 16 F.4th 393, 401 (3d Cir. 2021)).

The Court agrees with Judge Cavan that the Advisory Opinion should not be afforded deference, but not because *Saldana*'s reasoning applies. In *Saldana*, the defendants argued in opposition to the plaintiffs' motion for remand that the PREP Act completely pre-empted plaintiffs' state law claims of negligence and misconduct at a nursing home facility during the COVID-19 pandemic, thus giving the court subject matter jurisdiction. *Saldana*, 27 F.4th at 686. The defendants, in part, relied on the Advisory Opinion supporting pre-emption. *Id.* at 687 The court disagreed, holding that the question of complete pre-emption is a jurisdictional issue, and "an agency's opinion on federal court jurisdiction is not entitled to *Chevron* deference." *Id.*

Here, Canyon Creek does not invoke the Advisory Opinion to challenge the Court's jurisdiction. Rather, Canyon Creek wields the language of the Advisory Opinion to argue that Plaintiffs fail to state a claim for relief because Canyon Creek is entitled to immunity under the PREP Act. This argument does not affect jurisdiction, and therefore *Saldana* is not applicable.

However, this Court has refused to defer to the Advisory Opinion for reasons not specific to jurisdiction. In *Estate of Champion*, the Court held,

> As a preliminary matter, the Advisory Opinion explicitly provides "[i]t is not a final agency action or final order. It does not have the force or effect of law." [Advisory Opinion] at 5. Additionally, it is clear that "[i]nterpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference."

15

> *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) … Such opinions are "'entitled to respect' … to the extent that those interpretations have the 'power to persuade.'" [*Id.*] (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)).

591 F. Supp. 3d 892, 899 (D. Mont. 2022) (footnote omitted).

Though *Estate of Champion* generally addressed the same jurisdictional issue on a motion to remand as *Saldanas*, the case it relied upon to disregard the Advisory Opinion—*Christensen*—does not. *See Christensen*, 829 U.S. at 586-87 (refusing to give deference to a Department of Labor opinion letter to interpret substantive provisions in the Fair Labor Standards Act). Thus, the Court follows its holding in *Estate of Champion*, overrules Canyon Creek's objection, and adopts Judge Cavan's recommendation to not defer to the Advisory Opinion.

## IV. Conclusion

For these reasons, the Court finds that Canyon Creek is not entitled to immunity under the PREP Act. Accordingly, Judge Cavan's Findings and Recommendations (Doc. 29) are ADOPTED in full. IT IS FURTHER ORDERED that Canyon Creek's Motion to Dismiss (Doc. 15) is DENIED.

DATED this 1st day of March, 2023.

Susan P. Watters
SUSAN P. WATTERS
United States District Judge