IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ESTATE OF ROBERT W. PETERSEN, by and through Robert T. Petersen as Personal Representative; ESTATE OF MARY ANN SIMONS, by and through Dean Simons as Personal Representative; ESTATE OF CHARLOTTE ELAINE GUILFORD, by and through Charles Guilford as Personal Representative, | CV 22-11-BLG-SPW-TJC |
| Plaintiffs, | |
| vs. | **ORDER** |
| KOELSCH SENIOR COMMUNITIES, LLC; and BILLINGS PARTNERS, LLC, d/b/a CANYON CREEK, | |
| Defendants. | |

In 2020, Robert W. Petersen ("Petersen"), Mary Ann Simons ("Simons"),

and Charlotte Elaine Guilford ("Guilford") were residents of Canyon Creek. (Doc.

10 at 2.)  Canyon Creek is long-term care and assisted living facility in Billings,

Montana.  Petersen and Guilford suffered from dementia, and Simons suffered

from complications following a stroke.  (*Id.*)  Their estates allege that Canyon

Creek failed to provide essential care, services, and perform duties owed to

Petersen, Simons, and Guilford, before and during a COVID-19 outbreak at the

/ / /

1

Canyon Creek facility, which ultimately resulted in their deaths in August and September 2020.

Pending before the Court are Plaintiffs' Motion To Compel (Doc. 76); Defendants' Motion for a Protective Order for Defendants' Fall Records and Incident Reports (Doc. 77); Defendants' Motion for Sanctions or Alternative Motion in Limine (Doc. 79); Defendants' Motion for Protective Order Regarding Financial Information and the Deposition of CEO Aaron Koelsch (Doc. 84); and Defendants' Motion To Strike Declaration of Tamar Brien (Doc. 109).

The Court held a hearing on these motions on July 18, 2024. (Doc. 118.) The motions are fully briefed and ripe for the Court's review. (*See* Docs. 76, 78, 80, 82, 83, 85, 86, 87, 88, 90, 110, 111, 115.)

For the following reasons, IT IS ORDERED that Plaintiffs' Motion To Compel is GRANTED in part and DENIED in part; Defendants' Motion for Protective Order Regarding Financial Information and the Deposition of CEO Aaron Koelsch is GRANTED in part and DENIED in part; and all other motions are DENIED.

## I.   DISCUSSION

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, information is discoverable when it is (1) nonprivileged, (2) relevant to any party's claim or defense, and (3) proportional to the needs of the case. "The party seeking to

compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)." The party opposing discovery then has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Alves v. Riverside Cty.*, 339 F.R.D. 556, 559 (C.D. Cal. 2021). "The party opposing discovery is 'required to carry a heavy burden of showing' why discovery should be denied." *Reece v. Basi*, 2014 WL 2565986, at *2 (E.D. Cal. June 6, 2014), *aff'd*, 704 F. App'x 685 (9th Cir. 2017) (quoting *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

"The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." *United States ex rel. Brown v. Celgene Corp.*, 2015 WL 12731923, at *2 (C.D. Cal. July 24, 2015) (internal citations and quotation marks omitted).

The parties' present motions address four areas of dispute: (1) the production of Defendants' financial information; (2) the deposition of Koelsch Senior Communities, LLC ("Koelsch") chief executive officer; (3) declarations obtained of former employees of Billings Partners, LLC d/b/a Canyon Creek ("Canyon

/ / /

3

Creek"); and (4) the production of Defendants' fall records and other incident reports. The Court will address each issue in turn.

### A.    Financial Information

Plaintiffs have filed a motion to compel discovery of Defendants' current net worth, as well as other financial information over a ten-year period. (*See* Doc. 76 at 5.) Defendants, in turn, have filed a motion for a protective order. (Doc. 84.)

First, with respect to discovery of Defendants' current net worth, Plaintiffs have asserted a claim for punitive damages. "Where a claim for punitive damages is made a party's financial status is relevant to the subject matter of the action and thus a proper subject of pretrial discovery." *Baker v. CAN Ins. Co.*, 123 F.R.D. 322, 330 (D. Mont. 1988). The parties generally agree with that principle, but disagree on the timing of the financial disclosure. Nevertheless, Defendants acknowledged at the hearing on these motions that if Plaintiffs' punitive damages claim survives Defendants' pending motion for summary judgment, Defendants will be required to provide discovery as to their current net worth.

Next, as to discovery of Defendants' other financial information, Plaintiffs' motion seeks to compel production of ten years of tax returns, balance sheets, and profit and loss statements. (*See* Doc. 76 at 10.) Plaintiffs have also requested that Defendants provide the distributions to members/managers and investors for the last five years. (*Id.*) Plaintiffs argue that this information is relevant to show

whether "inadequate staffing caused or contributed to Plaintiffs' injuries and damages," and whether "Defendants are placing corporate profit over patient care." (*Id.* at 9.)

Conversely, in their motion for a protective order, Defendants assert that "Plaintiffs are not entitled to the voluminous and confidential Financial Information they seek which far exceeds the needs of this case." (Doc. 85 at 9.) Defendants' objections are two-fold: (1) that the financial information Plaintiffs seek are "not at the heart of the issue" of this case, and (2) that "Plaintiffs' requests are overly broad in temporal scope." (*Id.* at 18–19.)

Tax returns and the other financial information requested "do not enjoy an absolute privilege." *Premium Serv. Corp. v. Perry*, 511 F.2d 225, 229 (9th Cir. 1975). But federal courts have also recognized a public policy against unnecessary public disclosures of tax returns. *Id*. Thus, courts generally apply a two-pronged test to determine whether tax returns are discoverable. "First, the court must find that the returns are relevant to the subject matter of the action. Second, the court must find that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable." *A. Farber & Partners, Inc. v. Graber*, 234 F.R.D. 186, 191 (C.D. Cal. 2006). The party seeking disclosure has the burden to establish the first prong, while the party opposing must show that the information is readily obtainable from other sources. *Id*.

"Relevancy, for purposes of discovery, has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Alves*, 339 F.R.D. at 559 (internal quotations and citations omitted).  In this case, Plaintiffs allege that Defendants "intentionally understaffed" Canyon Creek during the time Petersen, Simons, and Guilford were residents at Canyon Creek by cutting labor costs to increase profit margin at the expense of resident safety.  (*See* Doc. 10 at 15–16.)  Plaintiffs' claim for punitive damages is based, in part, on Defendants' alleged failure to provide specially trained staff to provide care to Peterson, Simmons, and Guilford.  (*Id.* at 29–30.)  Plaintiffs seek to discover whether earnings and profit from Canyon Creek were being diverted and distributed to other Koelsch entities at the cost of being able to adequately staff the Canyon Creek facility.

The Court finds that the financial information requested by Plaintiffs during the time that Plaintiffs were residents of Canyon Creek bears on this issue or could reasonably lead to other information that could bear on this issue.  But the scope of Plaintiffs' requests must be narrowed.  As noted above, Plaintiffs have requested financial records for several years before the decedents were residents of the Canyon Creek facility, and for several years after they died.  The relevance of this information to Plaintiffs' claims is highly questionable.  At the hearing on these

/ / /

6

motions, however, Plaintiffs stated that they would narrow their request for past financial records to the year 2020.  (Hearing Transcript at 20.)

Plaintiffs' reduced request for financial records pertaining to the year Plaintiffs were living at Canyon Creek during the COVID-19 outbreak satisfies the relevancy requirement for production of the financial documents, and would also be proportional to the needs of the case.  Further, while the Defendants have produced documents to show the staffing levels at Canyon Creek, they have not proposed the production of any other financial documents which would show the allocation and distribution of funds outside of Canyon Creek which may have been available for additional staffing at the facility.

 Accordingly, Plaintiffs' motion is GRANTED as to the following information for 2020: (1) tax returns (RFP No. 44), (2) balance sheets (RFP No. 45), (3) profit and loss statements (RFP No. 45), and (4) distributions to members/managers and investors (Interrog. No. 16).  Thus, Defendants' motion is DENIED as to this information for 2020, and GRANTED as to Plaintiffs' motion seeking financial information outside of this time period.

All of the financial records and information produced pursuant to this order will be subject to the parties' stipulation on the use of confidential and financial information, and shall not be disclosed outside of that agreement absent further order of the Court.

### B.    Deposition of Aaron Koelsch

Plaintiffs have filed a motion to compel the deposition of Koelsch's president and chief executive officer, Aaron Koelsch.  (*See* Doc. 76 at 10.) Defendants, in turn, have filed a motion for a protective order.  (Doc. 84.)

Under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including forbidding a deposition, or limiting its scope.  Fed. R. Civ. P. 26(c)(1).  The party seeking a protective order bears the burden of showing good cause for the order by "demonstrating harm or prejudice that will result from the discovery."  *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004).

 "When a party seeks the deposition of a high-level executive (a so-called 'apex' deposition), courts have observed that such discovery creates a tremendous potential for abuse or harassment."  *Apple Inc. v. Samsung Elecs. Co. Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (internal quotation marks and citation omitted). The court may, therefore, limit the frequency or extent of discovery if it determines that the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i).

In determining whether to allow an apex deposition, courts consider "(1) whether the deponent has unique, first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted

other less intrusive discovery methods." *Brewer v. BNSF Ry. Co.*, 2015 WL 13810744, at *1 (D. Mont. Nov. 5, 2015) (citing *Apple*, 282 F.R.D. at 263). The party seeking to prevent a deposition "carries a heavy burden to show why discovery should be denied," and "it is very unusual for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances." *Id.*

Plaintiffs argue Mr. Koelsch has unique, first-hand, non-repetitive knowledge of the facts of this case because of his personal participation in Defendants' response to the COVID-19 outbreak at Canyon Creek, including his authoring an open letter to the Governor of Montana wherein, Plaintiffs assert, Mr. Koelsch "den[ied] many allegations directly related to this lawsuit." (Doc. 76 at 12.)

Defendants dispute that Mr. Koelsch has first-hand knowledge about the facts at issue. (Doc. 85 at 28.) Defendants contend that any information Mr. Koelsch possesses has already been obtained or can be obtained through "Koelsch and Canyon Creek employees who played an active role in creating policies and protocols related to the Plaintiffs' care and the Covid-19 pandemic at Canyon Creek." (*Id.*)

The Court is persuaded that Mr. Koelsch likely has unique, first-hand, non-repetitive knowledge of the facts at issue in the case with regard to his own participation in the COVID-19 response at Canyon Creek. This is not a situation

where a party is attempting to take the deposition of a high-level executive or official who is far removed from any personal involvement in the controversy. Koelsch Senior Communities is a modestly sized company, with approximately 40 employees who provide management services to other Koelsch-affiliated assisted living facilities.  (Hearing Transcript at 30.)  Mr. Koelsch has been listed by Defendants in their preliminary pretrial statement as an individual with knowledge of facts relative to this case.  Additionally, in the letter he wrote to the Montana governor, he outlined Canyon Creek's response to the COVID-19 pandemic and publicly denied "misinformation" that had been disseminated about the facility. (Doc. 85-18.)  It appears from his letter that he was personally involved in the response to the COVID-19 outbreak, and has specific knowledge of the steps taken at Canyon Creek to protect its residents. "[W]hen a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition."  *In re Transpacific Passenger Air Transp. Antitrust Litig.*, 2014 WL 939287, at *2, 5 (N.D. Cal. Mar. 6, 2014).  *See also Hunt v. Cont'l Cas. Co.*, 2015 WL 1518067, at *2 (N.D. Cal. Apr. 3, 2015) ("The party seeking to take [an apex] deposition does not need to prove conclusively in advance that the deponent definitely has unique, non-repetitive information; instead, 'where a corporate officer may have *any* first-hand knowledge of relevant facts, the

/ / /

10

deposition should be allowed.'") (quoting *Grateful Dead Productions v. Sagan*, 2007 WL 2155693, at *1 n.5 (N.D. Cal. July 26, 2007)) (emphasis in original).

Nevertheless, Mr. Koelsch's deposition will be limited to two hours, and will be limited in scope to Mr. Koelsch's involvement and knowledge of the response of Canyon Creek to the COVID-19 pandemic in 2020, including any public communications he may have issued, and any knowledge he may have concerning care provided to Peterson, Simons, and Guilford.

Accordingly, Plaintiffs' motion to compel is GRANTED as to the request to depose Aaron Koelsch within the limitations set forth above. Defendants' motion for a protective order is GRANTED to the extent of the limitations set forth above and DENIED in all other respects.

## C.    Declarations and Testimony of Former Employees

Defendants have filed two motions pertaining to declarations Plaintiffs obtained of eight former Canyon Creek employees. (Docs. 79, 109.) Defendants seek an order from the Court excluding these declarations, prohibiting witness testimony from the declarants, and as an additional sanction, requiring Plaintiffs to disclose the file of their investigator as it relates to any conversations with current or former employees. (Docs. 80 at 16–17; 110 at 2.)

In July 2023, Defendants served discovery requests, requesting the identity of any employee or former employee with whom Plaintiffs had discussed the

allegation in their complaint.  Defendants also requested the production of any statements or documents that related to any such discussion.  To both requests, Plaintiffs responded: "None."

It appears that Plaintiffs later contacted certain Canyon Creek former employees during December 2023 and January 2024, and obtained seven declarations.  In February 2024, Plaintiffs supplemented their responses to Defendants' July discovery requests and asserted a general objection to the discovery requests regarding discussions with former employees, stating: "Objection to the extent this interrogatory seeks attorney-work product."

Plaintiffs then took a fact witness deposition and Rule 30(b)(6) deposition of Canyon Creek executive director Kevin Chambers on February 22, 2024, and March 8, 2024, respectively.  Following the deposition on March 8, Plaintiffs supplemented their Initial Disclosures to include the names of 26 current or former Canyon Creek employees, together with the production of seven declarations from some of those employees.

Defendants now seek sanctions under Rule 37(c), which states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  As Defendants assert, Rule 37(c) also

authorizes the court to order sanctions in the form of "order[ing] payment of the reasonable expenses, including attorney's fees, caused by the failure," and "prohibiting the disobedient party from supporting or opposing designated claims or defenses." *Id.* 37(b)(2)(A)(ii), (c)(1)(A).

Rule 26(a) requires each party to provide (1) the name and contact information of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, and (2) a copy of all documents and tangible things that the disclosing party possesses and may use to support its claims or defenses. *Id.* 26(a)(1)(A)(i)–(ii). But there is an exception to this disclosure obligation if the party's use of the information "would be solely for impeachment." *Id.*

In response to Defendants' motion for sanctions, Plaintiffs argue that the declarations they obtained from these employees were for impeachment purposes only, and therefore, were explicitly excepted from the initial disclosure requirements of Rule 26(a).  (Doc. 83 at 7–8.)  Plaintiffs further argue that these materials constituted attorney work product that they were entitled to withhold from production.  (*Id.* at 3.)

First, with respect to the assertion of any work product privilege, Plaintiffs acknowledged at the hearing that, pursuant to Fed. R. Civ. P. 26(b)(5), they were required to produce a privilege log if they were asserting a work product privilege.

But the sanction for failure to properly assert a privilege is generally the waiver of the privilege. *See Burlington N. & Santa Fe Ry. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005); *see also Full Tilt Boogie v. KEP Fortune*, LLC, 2021 WL 4535350, at *6 (C.D. Cal. June 9, 2021). Plaintiffs have already voluntarily waived any potential privilege, and have identified the witnesses and produced the declarations. Accordingly, the question of whether the privilege was properly asserted and whether sanctions on that basis are appropriate is moot.

Additionally, even assuming that Plaintiffs did not timely identify the witnesses or produce the declarations, Plaintiffs are not subject to Rule 37(c) sanctions if their failure was "harmless." Fed. R. Civ. P. 37(c)(1). Defendants have not demonstrated any prejudice they suffered by Plaintiffs' late disclosure. Defendants have alluded to the fact that they did not have access to the declarations prior to the depositions of Mr. Chambers, and were unable to properly prepare their witness. But Plaintiffs also adamantly assert that the undisclosed declaration "*did not* impeach Mr. Chambers or reveal any untruths." (Doc. 87 at 9.) In fact, in their briefing and at the hearing on these motions, Defendants were unable to articulate that the late disclosure had any impact on the deposition, or otherwise caused any prejudice to Defendants.

Accordingly, Defendants' Motion for Sanctions or Alternative Motion in Limine and Motion To Strike Declaration of Tamar Brien are DENIED.

**D.     Fall Records and Incident Reports**

Finally, Defendants have filed a motion for a protective order regarding Defendants' fall records and incident reports.  (Doc. 77.)  At the July 18, 2024 hearing, the Court issued an oral order from the bench that Defendants redact all personal identifying information and produce the requested documents. Defendants' motion is DENIED.

All of the fall records and incident reports produced pursuant to this order will be subject to the parties' stipulation on the use of confidential and financial information, and shall not be disclosed outside of that agreement absent further order of the Court.

**II.     CONCLUSION**

Based on the foregoing, IT IS ORDERED that:

1.      Plaintiffs' Motion To Compel (Doc. 76) is GRANTED as to the requested financial information for 2020; GRANTED as to the request to depose Aaron Koelsch within the limitations set forth above; and DENIED in all other respects.  If Plaintiffs' punitive damages claim survives Defendants' pending motion for summary judgment, Defendants will be required to provide discovery as to their current net worth.

2.      Defendants' Motion for Protective Order Regarding Financial Information and the Deposition of CEO Aaron Koelsch (Doc. 84) is GRANTED as

to the discovery of financial information outside of 2020, and as to the limitations to the deposition of Aaron Koelsch set forth above, and DENIED in all other respects.

   3. Defendants' Motion for a Protective Order for Defendants' Fall Records and Incident Reports (Doc. 77), Motion for Sanctions or Alternative Motion in Limine (Doc. 79), and Motion To Strike Declaration of Tamar Brien (Doc. 109) are DENIED.

   DATED this 28th day of August, 2024.

                    _____
                    TIMOTHY J. CAVAN
                    United States Magistrate Judge