IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ESTATE OF ROBERT W. PETERSEN, by and through Robert T. Petersen as Personal Representative; ESTATE OF MARY ANN SIMONS, by and through Dean Simons as Personal Representative; ESTATE OF CHARLOTTE ELAINE GUILFORD, by and through Charles Guilford as Personal Representative, <br><br> Plaintiffs, <br><br> vs. <br><br> KOELSCH SENIOR COMMUNITIES, LLC; and BILLINGS PARTNERS, LLC d/b/a CANYON CREEK, <br><br> Defendants. | CV 22-11-BLG-SPW <br><br> ORDER ADOPTING MAGISTRATE'S FINDINGS AND RECOMMENDATIONS |

United States Magistrate Judge Timothy Cavan filed Findings and Recommendations in this matter on February 21, 2025. (Doc. 157). Judge Cavan recommended the Court deny Defendants Koelsch Senior Communities, LLC's and Billings Partners, LLC, d/b/a/ Canyon Creek's (collectively, "Defendants") Motion for Partial Summary Judgment as to Punitive Damages (Doc. 92). Further, Judge Cavan recommended the Court grant in part and deny in part Defendants' Motion for Partial Summary Judgment Re: Counts II Through VII (Doc. 119).

1

The Defendants timely objected to the Findings and Recommendations. (Doc. 158). Plaintiffs timely responded to the objections. (Doc. 160). After careful review of the objections and responses, the Court adopts Judge Cavan's Findings and Recommendations.

## I.    Background

The parties do not object to Judge Cavan's factual findings. As a result, the Court adopts the facts as set out by Judge Cavan and will briefly summarize the pertinent facts here.

Defendant Billings Partners, LLC, d/b/a Canyon Creek ("Canyon Creek") is a licensed memory care and assisted living facility in Billings, Montana. (Doc. 157 at 2). Defendant Koelsch Senior Communities, LLC ("Koelsch") is a limited liability company that provides some form of management services to Canyon Creek, although the parties dispute the exact nature of the relationship between the two entities. (*Id.*).

Plaintiffs Robert W. Petersen, Mary Anny Simons, and Charlotte Elaine Guilford (collectively, "Plaintiffs") became residents at Canyon Creek in July 2019, June or July 2019, and June 2020, respectively. (*Id.*). The case arises from the care and treatment Canyon Creek provided to Plaintiffs while they were residents, including during a COVID-19 outbreak at the facility beginning in July 2020. (*Id.*).

2

On June 30, 2020, a Canyon Creek resident tested positive for COVID-19. (*Id.*). The parties dispute whether this was the first instance of an infected resident at the facility or when exactly Canyon Creek knew a resident had tested positive. (*Id.*). By July 3, Canyon Creek tested all residents for COVID-19 and found over 75% of residents and staff tested positive. (*Id.* at 4).

During the outbreak at the facility, Canyon Creek relied on outside assistance from other Koelsch facilities, Billings Clinic, agency nurses, and the Montana National Guard to provide care for its residents. (*Id.*). Though the parties dispute whether and to what extent Canyon Creek implemented quarantine measures, Canyon Creek residents were segregated based on testing results and otherwise remained in their rooms. (*Id.*).

On July 25, 2020, Petersen and Simons were taken to the hospital. They both had experienced significant weight loss. (*Id.*). Canyon Creek acknowledges it stopped weighing residents on July 1, 2020 and on July 28, the State requested Canyon Creek to establish a correction plan to address weight loss occurring among the residents. (*Id.*).

On August 10, 2020, Simons died. (*Id.* at 5). Guilford was taken to the hospital around this time and subsequently died on August 22, 2020. Though the parties agree that pneumonia caused Guilford's death, they dispute whether COVID-19 was also a cause. Finally, on September 18, 2020, Petersen died.

3

On January 18, 2022, Petersen's estate brought this action in the Montana Thirteenth Judicial District Court, Yellowstone County. (Doc. 6). Defendants timely removed the action to this Court based on diversity jurisdiction. (Doc. 1). On March 31, 2022, Petersen's estate, along with Guilford's and Simons' estates, filed an Amended Complaint alleging the following causes of action:

(1)    Negligence – Estate of Petersen and Estate of Simons (Count I);

(2)    Negligence / Negligence Per Se – Estate of Petersen and Estate of Simons (Count II);

(3)    Negligence/Negligence Per Se – Estate of Guilford (Count III);

(4)    Negligent Management (Count IV);

(5)    Negligent Misrepresentation (Count V);

(6)    Violation of the Montana Consumer Protection Act (Count VI);

(7)    Violation of the Right to Dignity – Estate of Petersen and Estate of Simons (Count VII);

(8)    Punitive Damages (Count VIII).

(Doc. 10).

Defendants filed two separate motions for partial summary judgment that, together, sought judgment as a matter of law on all but Count I of Plaintiffs' Amended Complaint. (Docs. 92, 119). Judge Cavan recommended that Defendants' Motion for Partial Summary Judgment as to Punitive Damages (Doc. 92)—Count

4

VIII—should be denied. Judge Cavan further recommended that Defendants' Motion for Partial Summary Judgment Re: Counts II through VII (Doc. 119) should be granted in part and denied in part.

## II.    Legal Standard

### A.    Findings and Recommendations

The parties are entitled to a de novo review of those findings to which they have "properly objected." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). An objection is proper if it "identif[ies] the parts of the magistrate's disposition that the party finds objectionable and present[s] legal argument and supporting authority, such that the district court is able to identify the issues and the reasons supporting a contrary result." *Mont. Shooting Sports Ass'n v. Holder*, 2010 WL 4102940, at *2 (D. Mont. Oct. 18, 2010). "It is not sufficient for the objecting party to merely restate arguments made before the magistrate or to incorporate those arguments by reference." *Id.* Objections are not "a vehicle for the losing party to relitigate its case." *Hagberg v. Astrue*, 2009 WL 3386595, at *1 (D. Mont. Oct. 14, 2009) (citation omitted).

The portions of the findings and recommendations not properly objected to or not objected to by any party will be reviewed for clear error. *See McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Clear error exists if the court is left with

a "definite and firm conviction that a mistake has been committed." *McMillan v. United States*, 112 F.3d 1040, 1044 (9th Cir. 1997) (citation omitted). The court may accept, reject, or modify, in whole or in part, those findings and recommendations objected to. 28 U.S.C. § 636(b)(1).

The District of Montana Local Rule 72.3(a) provides that an objection to a magistrate judge's findings and recommendations must itemize:

> (1) each factual finding of the magistrate judge to which objection is made, identifying the evidence in the record the party relies on to contradict that finding; and

> (2) each recommendation of the magistrate judge to which objection is made, setting forth the authority the party relies on to contradict that recommendation.

D. Mont. L. R. 72.3(a).

> B.    *Summary Judgment*

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio*

6

*Corp.*, 475 U.S. 574, 586 (1986). When making a summary judgment determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See id.* at 587.

## III.    Discussion

Defendants filed the following objections (Doc. 158) to Judge Cavan's Findings and Recommendations:

(1)    Judge Cavan erroneously determined there was a dispute of material fact as to the availability of punitive damages by relying on inadmissible and irrelevant evidence.

(2)    Judge Cavan incorrectly determined that the Montana Legislature adopted certain federal regulations.

(3)    Judge Cavan incorrectly determined vagueness of a regulation is not valid grounds to deny a negligence per se claim.

Each objection is proper, and the Court will review Judge Cavan's findings on the issues they raise de novo.

### A.    *Defendants' Objections to Magistrate's Findings as to Punitive Damages*

Defendants sought summary judgment on Plaintiffs' punitive damages claim "on the grounds that Plaintiffs . . . failed to set forth clear and convincing evidence that Defendants acted with actual malice toward the Plaintiffs' decedents, as required under Montana law." (Doc. 92 at 2).

Judge Cavan found that Plaintiffs met the clear and convincing standard and demonstrated a genuine dispute regarding the actual malice allegation. Thus, Judge Cavan recommended that summary judgment was inappropriate. (Doc. 157 at 8–13).

Defendants objected to this finding on the basis that Judge Cavan erroneously relied on inadmissible and irrelevant evidence to support his finding. (Doc. 158 at 9–18). Specifically, Defendants contest several facts arguing that each of these facts Judge Cavan relied on are either inadmissible under the Federal Rules or lack merit and should weigh against granting summary judgment.

In response, Plaintiffs cite to various exhibits in the record to bolster their argument that punitive damages should be presented to the jury. (Doc. 160 at 12–21). Plaintiffs fail to specifically rebut Defendants evidentiary objections.

Because Defendants combine admissibility objections with their argument that Judge Cavan incorrectly found a genuine dispute of material fact, the Court will first address Defendants' evidentiary objections and then turn to the merits of the facts on the record to determine if summary judgment was appropriate.

### 1.    Evidentiary Objections

"To begin, objections for relevance are generally unnecessary on summary judgment because they are 'duplicative of the summary judgment standard itself.'" *Sandoval v. Cty. of San Diego*, 985 F.3d 657, 656 (9th Cir. 2021) (quoting *Burch v.*

*Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006)). "[I]f evidence submitted on summary judgment could create a genuine issue of material fact, it is, by definition 'of consequence in determining the action,' and therefore relevant." *Id.* (quoting Fed. R. Evid. 401). "Conversely, if the submitted evidence does not create a genuine dispute of material fact, there is no need for the court to separately determine whether it is relevant because, even assuming it is not, it will not affect the ultimate summary judgment reason." *Id.* For this reason, the Court will not consider Defendants' relevancy objections.

Nevertheless, materials offered to support or oppose a fact during summary judgment briefing must be capable of being offered at trial in an admissible form. Fed. R. Civ. P. 56(c)(2). Though the submitted facts need not be presented in an admissible form at summary judgment, there must be an admissible form existing by which those facts may be later introduced at trial. *See Sandoval*, 985 F.3d at 666 (focus at summary judgment stage is content, not form of proffered evidence). If a party objects to the admittance of evidence, the objections must specifically explain what particular exhibit is improper and why. *See Loomis v. Cornish*, 856 F.3d 991, 996–97 (9th Cir. 2016). Once made, the objection shifts the burden to the opponent to defend the contested material as admissible in its current form or to explain in what form the contested material may be admissible at trial. *See* Fed. R. Civ. P. 56(c)(2) advisory committee note (2010).

9

Defendants first seek to preclude an internet review from indeed.com, claiming this exhibit is inadmissible hearsay and lacks authentication. (Doc. 158 at 10 (citing Fed. R. Evid. 802 and 901); Doc. 96-6). The website may be hearsay if offered for the truth of the matter. It is not clear what the exhibit is being offered for or whether it lacks authentication because the Plaintiffs do not rebut Defendants argument. Therefore, the Court sustains Defendants objection as to the indeed.com website.

Second, Defendants contend with Plaintiffs so-called "Whistleblower Declarations." (Doc. 158 at 11). The "Whistleblower Declarations" are declarations from various Canyon Creek staff, which Defendants claim are unsworn declarations that do not satisfy admissibility standards under Federal Rule of Civil Procedure 56(c)(1). (*See* Docs. 80-8, 80-9, 80-10, 80-11, and 80-12). "A[] . . . declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). At summary judgment, a declaration must be subscribed as true under penalty of perjury, and be executed substantially in the statutory form, which requires a declarant to swear "under penalty of perjury that the foregoing is true and correct." 28 U.S.C. § 1746. Additionally, it must be signed. *Davenport v. Bd. or Trustees of State Center Community College Dist.*, 654 F. Supp. 1073, 1082–83 (E.D. Cal. 2009).

10

After reviewing the "Whistleblower Declarations" (Docs. 80-8–80-12), the Court finds the declarations are not admissible evidence for the purposes of deciding the merits of Defendants' motion for summary judgment because they do not include the phrase "under penalty of perjury" or state that the document is true. *See* 28 U.S.C. § 1746; *Kresting v United States*, 865 F. Supp. 669 (D. Haw. 1994). Accordingly, Defendants objection to the "Whistleblower Declarations" is sustained.

Third, Defendants object to a deposition from Kevin Chambers, Executive Director of Canyon Creek Memory Care. (Doc. 158 at 13; Doc. 157 at 12 (citing Doc. 96 at 49)). In his deposition, Chambers verified a report that stated, "Still very short staffed with caregivers and nurses!" (Doc. 96 at 5; Doc. 96-7 at 2). Defendants argue that the referenced report is not included as an exhibit and thus, should not be relied on. Depositions are generally admissible at summary judgment and Defendants do not specifically point to a Federal Rule that would otherwise exclude them or their refence to a report shown at a deposition. *See* Fed. R. Civ. P. 56(c)(1). Accordingly, the Court overrules Defendants objection as to the admissibility of Kevin Chambers' deposition.

Finally, Defendants object to a photograph used to support Judge Cavan's finding that Defendants' indifference to residents' health was evidenced by Plaintiffs' health records when they arrived at Billings Clinic. (Doc. 158 at 17; Doc.

11

157 at 12–13). The Defendants do not cite to a Federal Rule that would exclude the photograph from consideration at summary judgment. Therefore, the Court overrules Defendants objection as to the admissibility of the photograph.

Pursuant to the Court's rulings, the Court will not consider the indeed.com website or the "Whistleblower Declarations" when reviewing Judge Cavan's finding that a genuine issue of material fact existed as to punitive damages. The Court will only consider the merits of whether the remaining evidence on the record creates a genuine dispute of material fact.

### 2.    *Summary Judgment as to Punitive Damages*

A judge may consider objected-to materials after determining their facts would be admissible at trial. *See Steffek v. Client Servs., Inc.*, 948 F.3d 761, 769 (7th Cir. 2020); *Jacoby v. Keers*, 779 Fed. Appx. 676, 679 (11th Cir. 2019). However, evaluating credibility, weighing evidence, and drawing factual inferences remain functions reserved for the jury. *See Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150–51 (2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### a. *Understaffing and Personnel Issues*

First, Defendants argue there is not enough evidence to show "that Defendants were aware of significant understaffing at the facility and other personnel issues." (Doc. 159 at 10; Doc. 157 at 11 (citing Doc. 96 at 5, 41, 49, 55, and 58)). In Kevin

12

Chambers' deposition, he verified a report that stated, "Still very short staffed with caregivers and nurses!" (Doc. 96 at 5; Doc. 96-7 at 2). Chambers also provided an affirmative answer to a question about staying informed regarding staffing levels. Defendants maintain that this evidence lacks context and should not be relied on at summary judgment. (Doc. 96 at 49; Doc. 96-7 at 30). Defendants also dispute Judge Cavan's reliance on the "July 2020 Monthly Operations Report" arguing that the most the exhibit demonstrates is "that after the novel COVID-19 outbreak occurred in July 2020, Canyon Creek's staff got sick, and Canyon Creek received staff from Billings Clinic, the National Guard, and other communities out-of-state." (Doc. 158 at 12–13).

Plaintiffs point to additional record evidence which bolsters Judge Cavan's finding that a genuine dispute to material fact exists as to whether Defendants were aware of understaffing and personnel issues. In addition to the facts above: (1) Canyon Creek nursing director Wendy Palato affirmatively agreed that "Canyon Creek was very short-staffed"; (2) nurse Lonna Olson stated that Wendy Palato was sometimes verbally abusive to employees, recounting that Palato on one occasion "yelled at [Olson] in front of [her] coworker"; (3) registered nurse expert Kirsten Speed found that "Canyon Creek . . . failed to ensure safe staff levels to provide adequate care to the 61 residents;" and (4) the "July 2020 Monthly Operations Report" stated that "[COVID-19] positive staff resulted in a staffing crisis both with

nurses and caregivers." (Doc. 96-27 at 5; Doc. 96-18 at 6; Doc. 96-2 at 6–7; Doc. 106-1 at 1).

Provided the preceding facts, the Court finds that Plaintiffs have demonstrated a genuine factual dispute as to whether Defendants were aware of significant understaffing and other personnel issues.

### b. *Indifference to Staffing Issues and Failure to Provide Plaintiffs with Proper Care*

Second, Defendants object to Judge Cavan's finding that Defendants were indifferent to staffing issues and failed to provide Plaintiffs with proper care. (Doc. 158 at 13; Doc. 157 at 12 (citing Doc. 96 at 49)). Defendants incorporate their argument from above. Defendants argue that Judge Cavan referenced only one sentence in Chambers' deposition which lacks context and is unreliable. (Doc. 96 at 49; Doc. 96-7 at 30 (Chambers answered affirmatively to a question about staying informed about staffing levels)).

Like the analysis as to Defendants' awareness to understaffing, the Court finds that whether Defendants were indifferent to staffing issues is a question for the jury. As shown in the preceding section, Plaintiffs have proffered enough record evidence to demonstrate a factual dispute. (*See also* Doc. 160 at 14–16). Thus, the Court adopts Judge Cavan's finding.

/ / /

/ / /

14

       *c. Staffing Shortages, Poor Grooming, Inadequate Bathing, and*
          *Bedsores*

Third, Defendants object to declarations made by former employees confirming staffing shortages and alleging poor grooming, inadequate bathing, residents left in soiled clothing, and bedsores from inactivity. (Doc. 158 at 14; Doc. 157 at 12). Defendants claim that the declarations should not be relied on for substantive findings.

As stated above, the Court sustained Defendants objection to the "Whistleblower Declarations," however, Plaintiffs cite to other portions of the record to support Judge Cavan's finding. For example: (1) Misty Mitchel testified she found her father, Petersen, "all dirty," his "clothing and underwear was wet . . . for over an hour"; (2) Simons' daughter described seeing a "pressure sore . . . as big as [her] fist" on Simons; and (3) an email from Wendy Palato stated, "[t]here are a lot of residents with sores, because they are sitting in their chairs all day." (Doc. 96-10 at 2; Doc. 96-3 at 3; Doc. 96-28).

The Court will not evaluate credibility, weigh the evidence, or draw factual inferences as to these statements. Accordingly, the Court finds that the record supports Judge Cavan's finding that a genuine dispute of material fact exists as to whether residents were poorly groomed, inadequately bathed, left in soiled clothing, or developed bedsores from inactivity.

/ / /

### d. Weight Loss

Fourth, Defendants object to Judge Cavan's finding that Defendants were unwilling to consider alternative methods of weighing residents, which would have allowed the facility to detect and mitigate Plaintiffs' weight loss sooner. (Doc. 158 at 32; Doc. 157 at 12). Defendants also object to Judge Cavan's finding that Defendants instituted a correctional plan only after a Canyon Creek employee made an anonymous report to the State. (Doc. 158 at 16; Doc. 157 at 12).

Wendy Palato testified that residents were losing weight "across the board." (Doc. 96-27 at 2–3). There was a weight room in Canyon Creek and Kevin Chambers testified that there was never a discussion of buying additional scales or moving scales into residents' rooms. (Doc. 96-1 at 29). After talking with the State in the latter half of July, Palato testified that "we got permission for [the residents] to come out and get weighed." (Doc. 96-27 at 2). The "July 2020 Monthly Operations Report" states that the "State received a complaint call about staffing levels from current or former staff. They were not able to disclose who called." (Doc. 106-1 at 1). The State "wanted to be kept informed of staffing levels on a daily basis." (Doc. 106-1 at 2).

Though Defendants argue there is no proof as to what triggered the State involvement, the Court finds there is enough evidence to establish a genuine dispute of material fact as to how Defendants were tracking weight loss during 2020. The

Court will not weigh the evidence one way or the other, but rather affirm Judge Cavan's finding that summary judgment is inappropriate.

### e. Plaintiffs' Health Records

Finally, Defendants object to a photograph used to support the finding that Defendants' indifference to residents' health was evidenced by Plaintiffs' health records when they arrived at Billings Clinic. (Doc. 158 at 17; Doc. 157 at 12–13). Defendants argue that Plaintiffs used the photographic evidence to establish that Petersen went to the ER, had lost 20 pounds, was confused, deconditioned, and had acute kidney injury and dehydration, and is not admissible evidence establishing a disputed fact. (Doc. 158 at 17; Doc. 96 at 60–61).

Again, the Court will not weigh the evidence or draw factual inferences. The Court finds the photograph in conjunction with other facts on the record (as noted above) support Judge Cavan's finding that there is genuine issue of material fact as to whether Defendants were indifferent to residents' health.

### 3.    Conclusion on Punitive Damages

Apart from the indeed.com website and the "Whistleblower Declarations," the Court finds that Judge Cavan properly relied on admissible evidence at summary judgment to make his finding. Based on the foregoing analysis, the Court also finds that Judge Cavan correctly determined that Plaintiffs presented clear and convincing evidence that genuine issues of material fact exist as to whether Defendants' conduct

constituted actual malice. Based on the fact intensive issues, it is proper that a jury determine whether punitive damages are warranted. *See Byorth v. USSA Cas. Ins. Co.*, 2020 WL 5232485, at *1 (D. Mont. Sept. 2, 2020). Thus, the Court ADOPTS Judge Cavan's recommendation as to punitive damages.

B.    *Defendants' Objection to Magistrate's Finding as to Montana's Incorporation of Federal Regulations*

Defendants next sought summary judgment on the grounds that nearly none of the federal regulations cited in Plaintiffs' Amended Complaint were incorporated into the Montana statute alleged by Plaintiffs. (Doc. 120 at 18). In their Amended Complaint, Plaintiffs assert that "Montana Code Annotated § 50-5-1104(1) adopts rights guaranteed by the Federal Nursing Home Reform Act (FNHRA) set forth in 42 U.S.C. § 1396 et seq. and implemented through federal regulation." (Doc. 10 at 16, 20). The Montana statute to which Plaintiffs point states in relevant part:

> The state adopts by reference for all long-term care facilities the rights for long-term care facility residents applied by the federal government to facilities that provide skilled nursing care or intermediate nursing care and participate in a medicaid or medicare program (42 U.S.C. 1395i-3(a) and 1396r(a), as implemented by regulation).

Mont. Code Ann. § 50-5-1104(1) (2019).

Plaintiffs allege that the federal regulations at issue include Defendants' violations of 42 C.F.R. §§ 483.10 ("Resident rights"), 483.12 ("Freedom from abuse, neglect, and exploitation"), 483.24 ("Quality of life"), 483.25 ("Quality of care"), 483.35 ("Nursing services"), and 483.80 ("Infection control").

Judge Cavan found that, as a threshold matter, the federal regulations were incorporated into state statutory law "in the forms as they existed at the time of the 1997 amendment." (Doc. 157 at 20). Defendants objected to this finding. However, Defendants concede to the adoption of 42 C.F.R. § 483.10 ("Resident Rights") arguing that the Montana Legislature intended to only adopt Resident Rights and not the other federal regulations cited by Plaintiffs. (Doc. 158 at 21 ("the 1997 Legislature only adopted 42 C.F.R. § 483.10")). Thus, the Court will consider whether the Montana Legislature incorporated other pertinent federal regulations in addition to Resident Rights.

### 1.    Federal Regulations Incorporated by Reference

Under Montana law, when construing a statute, a judge "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Mont. Code. Ann. § 1-2-101 (2023).    If the statute is ambiguous or unclear, the legislature's intention is to be pursued if possible. *Id.* § 1-2-102. Courts are to ascertain this intention by looking to the language employed in the text and the apparent purpose to be served by the statute. *Shannon v. Keller*, 612 P.2d 1293, 1294 (Mont. 1980).

To determine what regulations and rights were incorporated into Montana law by reference, Judge Cavan looked to the language of the state statute at the time it was codified in 1987 and later amended in 1997. Pertinent here, the Montana

19

Legislature added the parenthetical reference "42 U.S.C. 1395i-3(i) and 1396r(a), as implemented by regulation" to Section 50-5-1104(1) by amendment in 1997.

In 1997, the two sections of the United States Code added to Section 50-5-1104(1) were sections of the Nursing Home Reform Act ("NHRA"). *See* Nursing Home Reform Act of 1987, Pub. L. No. 100-203, § 4201(a), 101 Stat. 1330-160, 160 (1987).; *id.* § 4211(a), 101 Stat. at 183. The United States Code sections incorporated by reference expressly require that the facility "meet[] the requirements . . . described in subsections (b), (c), and (d) of this section. 42 U.S.C. §§ 1395i-3(a) and 1396r(a). Because Sections 1395i-3(a) and 1396r(a) expressly included the requirements in subsections (b), (c), and (d), Judge Cavan found that the Montana Legislature intended to incorporate subsections (b), (c), and (d)—as well as the implementing regulations—into Montana's statute. The requirements under subsections (b), (c), and (d) address the subject matter of regulations that Plaintiffs cite as a basis for negligence per se—i.e., resident rights, quality of care, nursing services, infection control, freedom from abuse, and quality of life. *Id.* §§ 1395i-3(b)–(d), 1396r(b)–(d). Because the regulatory requirements pertinent to Plaintiff's allegations were promulgated, in part, in 1991, Judge Cavan found that these requirements are among the federal regulations the Montana Legislature incorporated by reference into Section 50-5-1104(1) in 1997.

Defendants argue that the Montana Legislature only adopted Resident Rights as set forth in 42 C.F.R. § 483.10. (Doc. 158 at 21 (citing *Mins. of the Meeting Public Health, Welfare & Safety Comm. Mont. State Senate* at 3, Mar. 20, 1987)). Defendants also purport that when the state legislature amended Section 50-5-1104(1) in 1997 to include the parenthetical "42 U.S.C. 1395i-3(a) and 1396r(a), as implemented by regulation," the addition was merely a clerical update to reflect the updated federal statute, not to adopt all enabling regulations to the NHRA.

Here, the Court looks first to the plain language of the statute and finds that the Montana Legislature adopted all regulations implemented by §§ 1395i-3(a) and 1396r(a). *See* Requirements for Long Term Care Facilities, 56 Fed. Reg. 48,826 (Sept. 26, 1991). Words in a statute are given their ordinary meaning. *State v. Felde*, 478 P.3d 825, 828 (Mont. 2021). Thus, without inserting what has been omitted or omitting what has been inserted, the Court construes the language "as implemented by regulation" to mean all regulation promulgated by the Department of Health and Human Services ("DPHHS") in the Code of Federal Regulations and published in the Federal Registers as implemented by Congressional legislation, here—Sections 1395i-3(a) and 1396r(a).

To support this finding, the Court looks to Montana's Human Services and Aging Committee meeting minutes from 1987 when Section 50-5-1104(1) was being considered as part of House Bill 455. (*See* Doc. 120-1 at 2). Representative Joan

21

Miles, sponsor of H.B. 455, stated that "the bill would establish rights for long-term care residents." (*Id.*). She pointed out that "the rights have been adopted federally but needed state rights that could be extended to include personal care facilities and facilities not receiving federal funds." (*Id.*). At adoption, Representative Miles hoped to expand resident rights in personal care facilities, not limit them to skilled nursing facilities as Defendants suggest. When the Legislature amended Section 50-5-1104(1) in 1997, it's further apparent that it did not reduce the rights originally granted through incorporation-by-reference. Rather, the absence of conditional language is indicative of the Legislature's intent to preserve the wide range of rights guaranteed by federal regulations. Pertinent to this case, the DPHHS promulgated the following regulations in 1991: "Resident rights," "Quality of life," "Quality of care," "Nursing Services," and "Infection Control." *Id.* at 48,867, 48,8871, 48,873, and 48,876. Thus, these rights were included at the 1997 amendment.

In construing the plain meaning of the statute and in light of legislative action, the Court finds that the Montana Legislature intended to adopt all federal regulations promulgated by the NHRA's passage as it relates to the federal statutes found in Section 50-5-1104(1). Accordingly, it must be determined whether the 1997 Legislature intended to adopt the federal regulations as they existed in 1997 or as they exist now.

/ / /

22

2. *Forms of the Federal Regulations*

In his Findings and Recommendations, Judge Cavan found that the federal regulations pertinent to this case are among the federal regulations incorporated by reference into Section 50-5-1104(1) "in the forms as they existed at the time of the 1997 amendment." (Doc. 157 at 20).

Defendants object to this finding on the basis that no "limiting language would restrict the interpretation of the phrase 'as implemented by regulation' to the moment in time that statute was authorized." (Doc. 158 at 22). If not read contemporarily, Defendants argue the statute and parallel regulations yield an absurd and contradictory result.

Plaintiffs, though seeking to affirm Judge Cavan's finding, purport that Judge Cavan "ultimately found" the regulatory sections were in the same forms as they existed at the time of the 1997 amendment. (Doc. 160 at 27). The Court disagrees with Defendants and Plaintiffs.

In Montana, the legislature has authority to adopt existing federal statutes or regulations in its enactments. *See Lee v. Montana*, 635 P.2d 1282, 1286 (Mont. 1981); *Montana v. Dist. Ct. of Second Jud. Dist.*, 272 P.525, 529 (Mont. 1928) ("where one statute refers to another for the power given by the former, the statute referred to is to be considered as incorporated in the one making the reference"). However, the legislature's authority does not extend to the adoption of changes in

23

federal laws or regulations to occur in the future. *See Lee*, 635 P.2d at 1286; *Gustafson v. Hammond Irrigation Dist.*, 287 P. 640, 640–41 (Mont. 1930) ("the adoption of a statute by reference is construed as an adoption of the law as it existed at the time the adopting statute was passed, and therefore is not affected by any subsequent modification or repeal of the statute adopted").

For example, during the energy crisis in 1974, Congress enacted the Emergency Highway Energy Conservation Act which in effect, denied federal highway funds to any state that failed to enact a 55 mile per hour maximum speed limit on its highways. Emergency Highway Energy Conservation Act, Pub. L. No. 93-239, 87 Stat 1016 (1974). In response, Montana passed a statute which read in pertinent part:

> The attorney general shall declare by proclamation filed with the secretary of state a speed limit for all motor vehicles on all public streets and highways in the state whenever the establishment of such a speed limit by the state is required by federal law as a condition to the state's continuing eligibility to receive funds authorized by the Federal Aid Highway Act of 1973 and all acts amendatory thereto or any other federal statute. *The speed limit may not be less than that required by federal law*, and the attorney general shall by further proclamation change the speed limit adopted pursuant to this section to comply with federal law.

Mont. Code Ann. § 61-8-304 (1974) (emphasis added).

The Montana Supreme Court, in *Lee v. Montana*, struck down the statute as unconstitutional based on the principle that "almost without exception," the legislature does not have the right to adopt changes in the federal laws or regulations

24

to occur in the future. 635 P.2d at 1286. ("No state that we can find has approved a delegation of sovereign power involved here for mandatory action in the future, based upon the federal law."). "The evil," the Court found, "in the present legislation is the permanent delegation of the legislative sovereign power." *Id.* at 1287. Thus, to the extent that a Montana statute purported to incorporate a future enactment of another sovereign entity, the statute would be invalid.

Further proof of this principle exists in Montana's Administrative Procedure Act. A state agency may adopt a federal agency rule by reference. Mont. Code Ann. § 2-4-307 (2023). A state agency rule adopting by reference a federal rule "may not adopt any later amendments or editions of the material adopted." *Id.* § 2-4-307(4).

This constitutional distinction compels the Court to find that when a Montana statute incorporates by reference a federal statute, the Montana authority incorporates only the version of the incorporated federal authority that existed on the date the Montana statute was enacted or amended. Because Montana amended Section 50-5-1104(1) in 1997, Judge Cavan correctly found that the regulations Plaintiffs sued under remain in the forms in which they existed in 1997. To hold otherwise, in Montana, would be an unconstitutional "permanent delegation of legislative sovereign power." *Lee*, 635 P.2d at 1287. For these reasons, the Court construes the federal regulations alleged by Plaintiffs as they were in 1997. *See* Requirements for Long Term Care Facilities, 56 Fed. Reg. 48,826 (Sept. 26, 1991).

25

3.    *Absurd and Contradictory Result*

Finally, Defendants contend that Judge Cavan's findings create "the absurd result of facilities being required to: (1) decipher what regulations they are governed by, as [long-term facilities] comply with the most up-to-date version of applicable regulations; and (2) attempt to reconcile the differences between those obsolete rules and modern Montana statutes and administrative rules." (Doc. 158 at 20).

Montana courts generally interpret and apply statutes as written, however the courts also "have a duty to look beyond the language of a statute if literal application would lead to an absurd result." *In re Marriage of Syverson*, 931 P.2d 691, 702 (Mont. 1997); *e.g., Stroop v. Day*, 896 P.2d 439, 441–42 (Mont. 1995) (the court refused to literally interpret the word "provocation" as found in the "Dog Bite" statute, because to do so what "yield unjust and absurd results"), *Hafner v. Conoco, Inc.*, 886 P.2d 947, 951 (Mont. 1994) (employment discrimination case in which the court was guided by Fifth Circuit reasoning that a literal reading of "otherwise qualified" would lead to an absurd result and thus, found Hafner was not qualified for his position).

Here, Defendants compare provisions (not alleged by Plaintiffs) of the federal regulation scheme implemented by 42 U.S.C. §§ 13695i-3(a) and 1396r(a) to Montana code and administrative rules.  Defendants seek to demonstrate how

Montana assisted living facilities would be governed by an absurd and contradictory regulatory scheme if the Court adopted Judge Cavan's findings.

Defendants' comparative exercise between federal regulation and Montana code might yield inapplicable results as to other assisted living facilities in Montana, but not as to Canyon Creek. This Court finds that the regulations as alleged by Plaintiffs against Defendants are neither absurd nor contradictory. To the contrary, the Court is convinced that Section 50-5-1104(1)'s plain text coupled with Montana's caselaw and legislative history supports the finding that all federal regulations implemented by §§ 13695i-3(a) and 1396r(a) were incorporated-by-reference into Montana law and were intended to apply to long term care facilities, such as Canyon Creek.

For these reasons, the Court ADOPTS Judge Cavan's findings as to Counts II and III.

### C. *Defendants' Objection to Magistrate's Findings as to Vagueness*

Defendants next sought summary judgment on the grounds that the statutes and regulations alleged by Plaintiffs were "too vague to establish the standard of care required to support a negligence per se claim." (Doc. 120 at 124).

A plaintiff must establish five elements to bring a negligence per se claim:

(1) that the defendant violated a particular statute; (2) that the statute was enacted to protect a specific class of persons; (3) that the plaintiff is a member of the class; (4) that the plaintiff's injury is the kind of injury that the statute

was enacted to prevent; and (5) that the statute was intended to regulate members of the defendant's class.

*Stipe v. First-Interstate Bank-Polson*, 188 P.3d 1063, 1066 (Mont. 2008).

Judge Cavan found that summary judgment was inappropriate because the Defendants did not directly challenge whether Plaintiffs satisfied the five elements of negligence per se. (Doc. 157 at 25). Judge Cavan concluded that because Montana courts consider the five elements of negligence per se to "adequately account for and guard against vagueness," Defendants' motion for summary judgment should be denied as to the vagueness grounds "when such grounds are not based on or supported by Montana law." (*Id.* at 25–26).

Defendants object to this finding. Defendants argue that Judge Cavan's conclusion "ignores the first element of the five-part test, which necessarily requires that the statute be cogent enough to permit a factfinder to know what is acceptable versus unacceptable conduct as a matter of law." (Doc. 158 at 28). Unlike "sufficiently particular" statues or regulations, Defendants assert the regulations alleged by Plaintiffs are too vague to determine a standard of care. (Doc. 158 at 28–29).

In response, Plaintiffs point out that each Montana case Defendants rely on "reiterate the elements of a negligence per se claim." (Doc. 160 at 29 (citing *Stripe v. First Interstate Bank-Polson*, 188 P.3d 1063 (Mont. 2008) (reciting elements); *Hislop v. Cady*, 862 P.2d 388, 391 (Mont. 1993) (reciting requirement to satisfy

elements); *Giambra v. Kelsey*, 162 P.3d 134 (discussing the relationship of negligence per se and comparative negligence with no discussion of vagueness or specificity), *etc.*). Thus, the cases "highlight the correctness of [Judge Cavan's] finding" and further, fail to support Defendants' theory. (Doc. 160 at 29).

The Court finds that Defendants, again, have failed to proffer a sufficient argument under Montana's five-part negligence per se framework to prove that no dispute of material fact exists. As the party seeking summary judgment, Defendants bear the burden to demonstrate how Plaintiffs failed to make a showing sufficient to establish an element essential to their claim. *See Celotex Corp.*, 477 U.S. at 322–23. The argument that there is no genuine dispute because the alleged statutes are too vague lacks merit, especially when Defendants proffer no facts or record evidence and fail to utilize Montana's negligence per se test. Plaintiffs have alleged specific statutory violations, and it is Defendants burden to disprove those violations under Montana's statutory scheme. Defendants have not met this burden. This Court agrees with Judge Cavan that "Defendants apparently concede that whether they violated Section 50-5-1104(1) (and any federal regulations incorporated therein) is a disputed question of fact." (Doc. 157 at 25).

For these reasons, the Court ADOPTS Judge Cavan's findings as to vagueness.

///

## IV.    Conclusion

IT IS SO ORDERED that Judge Cavan's Findings and Recommendations (Doc. 157) are ADOPTED in FULL.

IT IS FURTHER ORDERED that:

1. Defendants' Motion for Partial Summary Judgment as to Punitive Damages (Doc. 92) is DENIED.

2. Defendant's Motion for Partial Summary Judgment Re: Counts II Through VII (Doc. 119) is:

   a.  GRANTED as to Couns IV and VII;

   b.  GRANTED as to Plaintiffs' claims of negligence per se in Counts II and III that are based on violations of Mont. Admin. R. 37.106.2816 and 37.106.2843;

   c.  GRANTED as to Petersen's and Simons' claims in Count V;

   d.  GRANTED as to Petersen's and Simons' claims in Count VI; and

   e.  DENIED in all other respects.

DATED this _26th_ day of March, 2025.

Susan P. Watters

SUSAN P. WATTERS
United States District Judge