IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ESTATE OF ROBERT W. PETERSEN, by and through Robert T. Petersen as Personal Representative; ESTATE OF MARY ANN SIMONS, by and through Dean Simons as Personal Representative; ESTATE OF CHARLOTTE ELAINE GUILFORD, by and through Charles Guilford as Personal Representative, | CV 22-11-BLG-SPW |
| Plaintiff, | ORDER ADOPTING MAGISTRATE'S FINDINGS AND RECOMMENDATIONS |
| vs. | |
| KOELSCH SENIOR COMMUNITIES, LLC; and BILLINGS PARTNERS, LLC d/b/a CANYONE CREEK. | |
| Defendants. | |

United States Magistrate Judge Timothy Cavan filed Findings and Recommendations in this matter on March 10, 2025. (Doc. 159). Judge Cavan recommended the Court deny in part and grant in part Defendants Koelsch Senior Communities, LLC's and Billings Partners, LLC, d/b/a Canyon Creek's (collectively, "Defendants") Motion for Partial Summary Judgment as to Counts I and III of Plaintiffs' Amended Complaint. (*Id.* at 18). Further, Judge Cavan

1

recommended the court deny as moot Plaintiffs' Motion to Strike Arguments Raised for the First Time in Reply Brief (Doc. 149). (*Id.*).

Defendants and Plaintiffs timely objected to the Findings and Recommendations. (Docs. 161, 162). Defendants and Plaintiffs timely responded to the respective objections. (Docs. 164, 165).

## I.    Background

The parties do not object to Judge Cavan's factual findings. As a result, the Court adopts the facts as set out by Judge Cavan and will briefly summarize the pertinent facts here.

Defendant Billings Partners, LLC, d/b/a Canyon Creek ("Canyon Creek") is a licensed memory care and assisted living facility in Billings, Montana. (Doc. 159 at 2). Defendant Koelsch Senior Communities, LLC ("Koelsch") is a limited liability company that provides some form of management services to Canyon Creek, although the parties dispute the exact nature of the relationship between the two entities. (*Id.*).

Plaintiffs Robert W. Petersen, Mary Anny Simons, and Charlotte Elaine Guilford (collectively, "Plaintiffs") became residents at Canyon Creek in July 2019, June or July 2019, and June 2020, respectively. (*Id.*). The case arises from the care and treatment Canyon Creek provided to Plaintiffs while they were residents, including during a COVID-19 outbreak at the facility beginning in July 2020. (*Id.*).

On June 30, 2020, a Canyon Creek resident tested positive for COVID-19. (*Id.*). The parties dispute whether this was the first instance of an infected resident at the facility or when exactly Canyon Creek knew a resident had tested positive. (*Id.*). By July 3, Canyon Creek tested all residents for COVID-19 and found over 75% of residents and staff tested positive. (*Id.* at 4).

During the outbreak at the facility, Canyon Creek relied on outside assistance from other Koelsch facilities, Billings Clinic, agency nurses, and the Montana National Guard to provide care for its residents. (*Id.*). Though the parties dispute whether and to what extent Canyon Creek implemented quarantine measures, Canyon Creek residents were segregated based on testing results and otherwise remained in their rooms. (*Id.*).

On July 25, 2020, Petersen and Simons were taken to the hospital. They both had experienced significant weight loss. (*Id.*). Canyon Creek acknowledges it stopped weighing residents on July 1, 2020, and on July 28, the State requested Canyon Creek to establish a correction plan to address weight loss occurring among the residents. (*Id.*).

On August 10, 2020, Simons died. (*Id.* at 5). Guilford was taken to the hospital around this time and subsequently died on August 22, 2020. Though the parties agree that pneumonia caused Guilford's death, they dispute whether COVID-19 was also a cause. Finally, on September 18, 2020, Petersen died.

On January 18, 2022, Petersen's estate brought this action in the Montana Thirteenth Judicial District Court, Yellowstone County. (Doc. 6). Defendants timely removed the action to this Court based on diversity jurisdiction. (Doc. 1). On March 31, 2022, Petersen's estate, along with Guilford's and Simons' estates, filed an Amended Complaint alleging the following causes of action:

(1)    Negligence – Estate of Petersen and Estate of Simons (Count I);

(2)    Negligence / Negligence Per Se – Estate of Petersen and Estate of Simons (Count II);

(3)    Negligence/Negligence Per Se – Estate of Guilford (Count III);

(4)    Negligent Management (Count IV);

(5)    Negligent Misrepresentation (Count V);

(6)    Violation of the Montana Consumer Protection Act (Count VI);

(7)    Violation of the Right to Dignity – Estate of Petersen and Estate of Simons (Count VII);

(8)    Punitive Damages (Count VIII).

Defendants filed a motion for partial summary judgment on the common law negligence claims in Count I and Count III. (Doc. 139). Prior to Judge Cavan ruling on the motion, Plaintiffs filed a motion to strike arguments raised for the first time in Defendants' reply brief. (Doc. 149). Judge Cavan recommended that Defendants' Motion for Partial Summary Judgment Re: Counts I and III be granted in part and

4

denied in part. Further, Judge Cavan denied Plaintiffs' Motion to Strike as moot because he did not consider those arguments in ruling on Defendants' motion.

## II.    Legal Standard

### A.    Findings and Recommendations

The parties are entitled to a de novo review of those findings to which they have "properly objected." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). The portions of the findings and recommendations not properly objected to will be reviewed for clear error. *See McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Clear error exists if the court is left with a "definite and firm conviction that a mistake has been committed." *McMillan v. United States*, 112 F.3d 1040, 1044 (9th Cir. 1997) (citation omitted).

An objection is proper if it "identif[ies] the parts of the magistrate's disposition that the party finds objectionable and present[s] legal argument and supporting authority, such that the district court is able to identify the issues and the reasons supporting a contrary result." *Mont. Shooting Sports Ass'n v. Holder*, CV 09-147-M, 2010 WL 4102940, at *2 (D. Mont. Oct. 18, 2010). "It is not sufficient for the objecting party to merely restate arguments made before the magistrate or to incorporate those arguments by reference." *Id.* Objections are not "a vehicle for the

losing party to relitigate its case." *Hagberg v. Astrue*, CV-09-01-BLG, 2009 WL 3386595, at *1 (D. Mont. Oct. 14, 2009) (citation omitted).

The District of Montana Local Rule 72.3(a) provides that an objection to a magistrate judge's findings and recommendations must itemize:

> (1) each factual finding of the magistrate judge to which objection is made, identifying the evidence in the record the party relies on to contradict that finding; and
>
> (2) each recommendation of the magistrate judge to which objection is made, setting forth the authority the party relies on to contradict that recommendation.

D. Mont. L. R. 72.3(a).

### B.   Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When making a summary judgment determination,

the Court must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See id.* at 587.

## III. Discussion

Plaintiffs filed the following objections to Judge Cavan's Findings and Recommendations:

(1) Judge Cavan incorrectly granted summary judgment on Guilford's survival damages claim under Count III because expert medical testimony is not required to establish pain and suffering damages. Alternatively, the Plaintiffs argue they have introduced sufficient evidence to survive summary judgment.

(2) Judge Cavan incorrectly granted summary judgment on Guilford's wrongful death claim under Count III because they have introduced sufficient evidence to establish that Guilford died from the COVID-19 infection she contracted at Canyon Creek.

(3) Judge Cavan incorrectly denied their Motion to Strike Arguments Raised by Defendant for First Time in Reply Brief when he concluded these arguments were moot. Plaintiffs also argue that in the interests of equity, they should be permitted to introduce testimony from Guilford's treating providers that Guilford died from COVID-19.

The Plaintiffs' first two objections are proper, and the Court will review Judge Cavan's findings on those issues de novo. The third objection is improper because

it does not present legal arguments or any supporting authority, and this Court will review the objection for clear error.

Defendants filed the following objections to Judge Cavan's findings and recommendations:

(1) Judge Cavan incorrectly denied summary judgment on Petersen's negligence claim in Count I because he relied on unsworn expert reports, unqualified expert reports, and the only qualified experts to render causation testimony failed to establish a causal link between a breach in the standard of care and Petersen's injuries and death.

(2) Judge Cavan incorrectly denied summary judgment on Simons' negligence claim in Count I because he relied on unsworn expert reports, unqualified expert reports, and the only qualified experts to render causation testimony failed to establish a causal link between a breach in the standard of care and Simons' injuries and death.

Defendants further requested that this Court grant summary judgment on Guilford's Negligent Misrepresentation claim (Count V) and her Negligence Per-Se claim (Count III) based on Judge Cavan's finding that Plaintiffs failed to introduce sufficient expert testimony to survive summary judgment on Guilford's common-law negligence claim.

The Defendants' two objections are proper, and the Court will review Judge Cavan's findings on those issues de novo. Defendants did not make its arguments related to the claims of negligent misrepresentation and negligence per-se in either of its motions for partial summary judgment. (*See* Docs. 120, 139). Therefore, the Court must determine whether it is proper for this Court to consider the arguments before evaluating them on the merits.

The Court will first analyze the Defendants' objection to Count I. Then the Plaintiffs' objection to Count III and Judge Cavan's ruling on their Motion to Strike. Finally, this Court will determine whether it is proper to consider Defendants' new arguments on Guilford's Negligent Misrepresentation and Negligence Per-Se claims.

A.    *Count I (Petersen and Simons Negligence Claim)*

Judge Cavan recommended denying summary judgment on Count I because the Plaintiffs put forth sufficient evidence through expert opinions to survive summary judgment. (Doc. 159 at 9, 11). Defendants make multiple arguments for why Judge Cavan's recommendation was improper. First, they argue that Judge Cavan relied on unsworn expert reports from Janet S. McKee, Jill Haugan, and Dr. Scott Bolhack that are inadmissible for summary judgment purposes. (Doc. 162 at 18, 29). Second, they contend that even if these reports are admissible, Judge Cavan incorrectly relied on McKee's and Haugan's reports because they are unqualified to

offer opinions on medical causation. (*Id.* at 19, 29). Last, they argue that Plaintiffs' qualified experts failed to establish a breach in the standard of care that led to Petersen's and Simons' injuries and deaths. (*Id.* at 24, 31).

In response, Plaintiffs argue that the Defendants objection to the form of summary judgment evidence lacks merit. (Doc. 165 at 6, 15). Further, that Judge Cavan properly denied summary judgment based on expert testimony that established a breach in the standard of care that caused Petersen's and Simons' injuries and eventual death. (*Id.* at 12–14, 15–22).

The Court will first evaluate whether Judge Cavan improperly relied on inadmissible and unqualified expert testimony. Then whether the admissible and qualified expert opinion testimony establishes causation for Petersen's and Simons' injuries and death.

### *1.    Unsworn Expert Reports*

Unsworn expert reports are inadmissible hearsay evidence. *Aecon Bldgs., Inc. v. Zurich N. Am.*, 572 F. Supp. 2d 1227, 1237 (W.D. Wash. 2008). Courts in the Ninth Circuit have routinely held that unsworn expert reports are inadmissible on summary judgment. *Persian Gulf Inc. v. BP West Coast Products LLC*, 632 F. Supp. 3d 1108, 1133 (C.D. Cal. Sept. 30, 2022.); *Shuffle Master, Inc. v. MP Games LLC*, 553 F. Supp. 2d 1202, 1210–11 (D. Nev. 2008); *King Tuna, Inc. v. Anova Food, Inc.*, CV-07-7451-ODW, 2009 WL 650732 at * 1 (C.D. Cal Mar. 10, 2009). For an expert

opinion to be considered on summary judgment, it must be accompanied either by a proper affidavit or deposition testimony that verifies the report. *Persian Gulf Inc.*, 632 F. Supp. 3d at 1133; *Staton v. City & County of Butte-Silver Bow*, CV-20-60-BU, 2023 WL 7428297 at *5 (D. Mont. Nov. 9, 2023); *FNBN-RESCON I LLC v. Ritter*, 2014 WL 979930 at *5 (D. Nev. Mar. 12, 2014). Alternatively, the expert report is admissible if it was signed under the penalty of perjury. *American Federation of Musicians of United States and Canada v. Paramount Pictures Corporation*, 903 F.3d 968, 977–78 (9th Cir. 2018) ("There is no meaningful distinction between an expert report accompanied by a sworn declaration and an expert report that is itself sworn.")

After reviewing the expert reports of McKee and Haugan and the deposition excerpts submitted by the parties, the Court finds that the reports are inadmissible evidence for summary judgment purposes because they are unaccompanied by a proper affidavit or sworn under penalty of perjury. (*See* Doc. 145-2; Doc. 96-5). Additionally, the deposition excerpts provided do not "verify" the contents of their reports. Instead, the excerpts discuss the qualifications of the two experts and the documents they reviewed rather than the content of their reports. (*See* Docs. 115-3, 148-1, 148-3). Therefore, when evaluating the Defendants' objections, this Court will not consider the expert reports of McKee and Haugan.

However, the Court finds that Dr. Bolhack's expert report is admissible. While his expert report was not accompanied by a proper affidavit or sworn under penalty of perjury, the deposition excerpts provided verify the content of his report. (*See* Doc. 140-9 at 9, 11, 14, and 21).

Defendants next argue that Judge Cavan improperly relied on the expert reports of McKee and Haugan because they are unqualified to testify regarding medical causation. (Doc. 162 at 19–20, 29–31). Because this Court has already determined that McKee's and Haugan's expert reports are inadmissible on summary judgment, this Court will only evaluate whether Dr. Bolhack's and Dr. Knapp's[1] expert reports and deposition testimony are sufficient to establish a breach of the standard of care that led to Petersen's and Simons' injuries and death.

### 2.    *Common-Law Negligence Claims*

Judge Cavan determined that the Plaintiffs presented enough evidence in the form of expert opinions to survive summary judgment on Petersen's and Simons' common-law negligence claims. (Doc. 159 at 9, 11). Defendants object to this finding, arguing that the admissible expert reports for both individuals failed to establish that a breach in the standard of care caused their injuries or death. (Doc. 162 at 24, 31). In response, the Plaintiffs contend that they have provided sufficient

---

[1] Dr. Knapp's expert opinion stated that "this report is a complete and accurate statement of my opinion, and the basis and reasons for them to which I will testify under oath." (Doc. 140-2 at 9). Defendants did not object to Judge Cavan's consideration of this report on summary judgment.

evidence to survive summary judgment without relying on the inadmissible expert reports. (Doc. 165 at 10, 22).

In a medical negligence action before a federal court sitting in diversity, state law governs whether and to what extent expert testimony is required to establish the elements of the plaintiff's claim. *See, e.g. Cranska v. UMIA Ins., Inc.*, 709 F. Supp. 3d 1200, 1210 (D. Mont. 2024). The plaintiff in a medical negligence action must establish the following elements: (1) the applicable standard of care, (2) the defendant departed from that standard of care, and (3) the departure proximately caused the plaintiff's injury. *Camen v. Glacier Eye Clinic, P.C.*, 539 P.3d 1062, 1070 (Mont. 2023). The causation element of a negligence claim requires affirmative proof that the alleged negligent conduct was a cause-in-fact of the alleged harm and resulting damages. *Kipfinger v. Great Falls Obstetrical & Gynecological Assocs.*, 525 P.3d 1183, 1196 (Mont. 2023) (citing *Busta v. Colombus Hosp. Corp.*, 916 P.2d 122, 139 (Mont. 1996)). In Montana, expert testimony is required to establish the elements of a medical negligence action. *Camen*, 539 P.3d at 1072; *Kostelecky v. Peas in a Pod LLC*, 518 P.3d 840, 853 (Mont. 2022). "Except in rare cases where the cause of the alleged injury is plain and obvious to lay persons without need for specialized knowledge or expertise, proof of the occurrence, nature, cause, and/or prognosis of an alleged bodily or mental injury, disease process, or other medical condition generally requires qualified expert testimony." *Kostelecky,*

518 P.3d at 853. The facts of the present case as they relate to causation are sufficiently complex to be beyond the knowledge of a layperson without medical training.

### a. Petersen

The Court finds that Dr. Bolhack's expert report and deposition testimony regarding Petersen are sufficient to survive summary judgment. Dr. Bolhack's expert report indicates that Petersen's "severe deconditioning, dehydration, possible sepsis, altered mental status, and pressure ulcers" were significant factors that led to his injuries and death. (Doc. 140-3 at 3). According to Dr. Bolhack, when Petersen was admitted to the Billings Clinic, he was "profoundly dehydrated," which Dr. Bolhack described as "a manifestation of the neglect" Petersen experienced during his time at Canyon Creek. (Doc. 140-9 at 14, 113:8–13). Dr. Bolhack stated that Petersen "was liters and liters of fluid behind and that factor alone ... could cause death." (*Id.*). Additionally, Dr. Bolhack noted that Petersen lost twenty pounds between his last recorded weight at Canyon Creek on June 21, 2020, and when he was admitted to Billings Clinic on July 25, 2020. (Doc. 140-3 at 3). He opined that the rapid deterioration of Petersen's health coincided with records showing Canyon Creek stopped providing care to Petersen beginning on June 26, 2020. (*Id.*).

Dr. Bolhack's report and deposition demonstrates a deviation from the standard of care, which is causally related to Petersen's injury during his lifetime

and his eventual death.     Accordingly, the Court adopts Judge Cavan's recommendation on Petersen's negligence claim and denies Defendants' motion for summary judgment.

### b. Simons

Next, the Court finds that the expert reports from Dr. Bolhack and Dr. Knapp regarding Simons are sufficient to survive summary judgment  Dr. Knapp stated in his report that "it is with reasonable medical certainty that Ms. Simons died of a preventable cause of death, severe protein-calorie malnutrition which was directly related to her significant neglect, and infrequent and/or inadequate feeding and hydration." (Doc. 140-2 at 7).  Specifically, Dr. Knapp found that Canyon Creek breached the standard of care by failing to monitor Simons' food and fluid intake, which caused significant weight loss and dehydration, resulting in protein-calorie malnutrition. (*Id.*).  Further, Dr. Knapp noted that Simons developed a stage 3 sacral pressure ulcer because of the substandard treatment provided by Canyon Creek.  He asserted that Simons would not have developed this pressure ulcer if she had received proper skin protection, was turned every two hours, and if Canyon Creek had implemented adequate and appropriate support surfaces. (*Id.*).

Likewise, Dr. Bolhack concluded that Simons' death was caused by severe deconditioning and protein-calorie malnutrition. (Doc. 140-3 at 3).  He noted that Canyon Creek did not adequately monitor Simons' weight, leading to an almost 20-

pound weight loss from her last recorded weight on June 21 at Canyon Creek to her admission to Billings Clinic on July 23.  (*Id.*).

Based on the expert disclosures of Dr. Knapp and Dr. Bolhack, Simons has provided adequate testimony to establish a breach of the standard of care that resulted in her injuries and eventual death.  Accordingly, the Court adopts Judge Cavan's recommendation regarding Simons' negligence claim and denies Defendants' motion for summary judgment.

B.    *Count III (Guilford Common-Law Negligence Claim)*

Judge Cavan granted summary judgment in favor of the Defendants regarding Guilford's common-law negligence claim (Count III).  He determined that Plaintiffs failed to introduce sufficient expert testimony to establish that any negligent act or omission in Guilford's care caused the injury sustained during her lifetime (survival claim) or her death (wrongful death claim).  (Doc. 159 at 13).  Specifically, Judge Cavan found that the Plaintiffs failed to introduce expert testimony that linked Defendants' breach of a standard of care to Guilford's COVID-19 infection, which ultimately led to her death.

Plaintiffs object to Judge Cavan's recommendation on Guilford's common-law negligence claim.  First, they argue that Judge Cavan erroneously found that expert medical testimony is required to demonstrate that Guilford experienced pain and suffering for her survival claim.  (Doc. 161 at 4).  Alternatively, they assert that

they established Canyon Creek violated Montana regulations, which Judge Cavan previously determined could be used to prove negligence. (*Id.* at 7). Last, they argue that Guilford's wrongful death claim should survive because they have introduced evidence from her provider's medical records that establish Guilford died from COVID-19. (*Id.* at 9). In response, Defendants maintain that Judge Cavan correctly determined there was insufficient evidence to prove any negligent act in Guilford's care caused her COVID-19 infection. (Doc. 164 at 3).

Under Montana law, two causes of action are available to the survivors of a decedent whose death is caused by the negligence of another: survival and wrongful death. *Hern v. Safeco Ins. Co. of Illinois*, 125 P.3d 597, 604 (Mont. 2005). A "survival action" raises a claim that came into existence when the decedent was still alive; these claims survive his or her death, and the cause may be purported against the responsible party by the decedent's personal representative. *Id.* A wrongful death action is a legal claim that arises when an individual dies due to the wrongful act or negligence of another party. The personal representative of the deceased can maintain an action for damages against those responsible for the death. Mont. Code Ann. § 27-1-513. Montana law clearly states that expert medical testimony is necessary to establish causation for medical negligence claims. *See Kipfinger*, 525 P.3d at 1195; *Camen*, 539 P.3d at 1072.

In reviewing Judge Cavan's order, this Court agrees that Plaintiffs' experts have failed to establish that Defendants breached the standard of care causing Guilford's COVID-19 infection. The only admissible expert report related to Guilford comes from Dr. Bolhack. Dr. Bolhack gives a chronological report of Guilford's stay at Canyon Creek but does not identify anything Canyon Creek did or failed to do that was a departure from the standard of care causing Guilford's COVID-19 infection. (*See* Doc. 140-3).

Further, Plaintiffs' reliance on extrajudicial cases to demonstrate that pain and suffering damages can be proven through layperson testimony is irrelevant to the pertinent issue here. The cases cited are not based on Montana law and focus on the damages portion of a negligence claim rather than the causation element. Additionally, the cases cited by Plaintiffs that contemplate medical negligence reiterate the general rule that expert testimony is required to prove causation unless the cause of the injury or death is obvious to a layperson. *See Hernandez v. Reuter*, 523 P.3d 614, 622 (N.M. Ct. App. 2022); *Taylor v. Fletcher Allen Health Care*, 60 A.3d 646, 651 (Vt. 2012) ("Proving proximate causation in medical negligence cases is notoriously difficult ... [i]t is precisely for this reason that we generally require expert testimony."); *Williams v. Lucy Webb Hayes Nat'l Training Sch.*, 924 A.2d 1000, 1003 (D.C. 2007) (expert testimony is required unless the cause is within the realm of ordinary human knowledge). In this case, the facts

18

related to causation are sufficiently complex to be beyond a layperson's understanding without medical training. Therefore, expert medical testimony is required to survive summary judgment.

Plaintiffs next argue that Judge Cavan failed to consider Defendants' violation of Montana regulations which he previously stated could be used by Guilford to establish her negligence claim. (Doc. 161 at 7 (citing Doc. 157 at 21)). However, this argument misrepresents the Magistrate's conclusion, which pertained specifically to Plaintiff's negligence-per-se claim. Judge Cavan concluded that while violations of Montana regulations can be used as evidence of negligence, they do not provide sufficient grounds to find the Defendants negligent per se under Montana law. (Doc. 157 at 21). Plaintiffs still must provide expert testimony that demonstrates a breach in the standard of care caused Guilford's COVID-19 infection.

Last, Plaintiffs argue that Judge Cavan ignored medical records indicating that Guilford's cause of death was COVID-19. (Doc. 161 at 9). As discussed earlier, in medical negligence cases, the Plaintiff must establish through expert testimony that a breach of care caused the injury or death. The key issue here is not whether Guilford died from COVID-19, but whether Canyon Creek breached the standard of care that led to her infection. As Judge Cavan stated, "a death certificate is not a substitute for an expert medical opinion ... because it does not provide any

explanation of how that conduct led to [Guilford's] death." (Doc. 159 at 15–16). Additional medical records proving Guilford died from COVID-19 are not a substitute for expert medical testimony establishing a breach in the standard of care caused Guilford's COVID-19 infection.

Accordingly, the Court adopts Judge Cavan's recommendation regarding Guilford's common-law negligence claim under Count III and grants Defendants' motion for summary judgment.

C.    *Motion to Strike*

Plaintiffs argue that Judge Cavan erroneously denied their Motion to Strike. (Doc. 161 at 13 (citing Doc. 159 at 17)). In their motion, Plaintiffs contend that Defendants did not raise any argument regarding Guilford's survival damages claims until their reply brief on October 7, 2024. (Doc. 150 at 6). Specifically, they object to Defendants' argument that an expert witness is necessary to establish pain and suffering damages. (Doc. 150 at 2).

In Judge Cavan's findings and recommendation, he,

> did not make any recommendation based upon Defendants' argument that an expert witness was required to establish pain and suffering. The Court has already concluded that, based on other grounds, that Plaintiffs .... failed to put forward sufficient evidence to seek either survival damages or wrongful death damages as to Guilford.

(Doc. 159 at 17). Therefore, Judge Cavan denied the motion to strike as moot. (*Id.* at 18).

Plaintiffs' objection does not advance any legal arguments or provide the Court with supporting authority. Thus, we review the objection under the clear error standard. The Court finds that Judge Cavan did not commit clear error in determining the Motion to Strike was moot because he did not consider the reply brief when making his recommendations.

Further, Plaintiffs argument that equity interests demand they be allowed to present evidence from Guilford's treating providers that she died from COVID-19 lacks merit. (Doc. 161 at 14). The issue here is not whether Guilford died from COVID-19, but whether a breach of care by Canyon Creek caused her to contract the virus. Even assuming that Guilford died from COVID-19, summary judgment on Count III is properly granted because Plaintiffs have failed to establish the requisite causation element for a negligence claim.

D.    *Negligent Misrepresentation (Count V) and Negligence Per-Se Claims (Count III)*

Defendants request this Court dismiss Guilford's Negligent Misrepresentation claim (Count V) and Negligence Per-Se (Count III) claim based on Judge Cavan's finding that Guilford presented "insufficient expert testimony to establish that any negligent act or omission in Guilford's care was a cause of injury sustained during her lifetime or her death." (Doc. 162 at 34–35). Defendants did not raise this

argument in either of its motions for partial summary judgment. (*See* Docs. 120, 132, 139, 148).

A district court is well within its discretion in barring arguments raised for the first time on objections to a magistrate's findings and recommendation absent exceptional circumstances. *Friends of the Wild Swan v. Weber*, 955 F. Supp. 2d 1191, 1194 (Jul. 8, 2013, D. Mont.) (citing *Greenhow v. Secretary of Health and Human Services*, 863 F.2d 633, 638–39 (9th Cir. 1988) (*overruled on other grounds*)). "[A]llowing parties to litigate their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purposes of the Magistrates Act." *Greenhow*, 863 F.2d at 638. "The Magistrates act was [not] intended to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court. *Id.*

Defendants failed to raise these arguments in their motions for partial summary judgment. They do not provide any reason for failing to raise these arguments in their partial summary judgment motions, let alone any exceptional circumstances. No new evidence has been presented, nor have any facts changed that would have prevented Defendants from including these arguments in their original motions. In fact, Defendants raised this exact argument regarding Guilford's common-law negligence claim in Count III. Therefore, this Court will not consider these arguments.

## IV.   Conclusion

IT IS SO ORDERED that Judge Cavan's Findings and Recommendations (Doc. 159) are ADOPTED in FULL.

IT IS FURTHER ORDERED that:

1. Defendants' Motion for Partial Summary Judgment Re: Counts I and III Through VII (Doc. 138) is:

   a. DENIED as to Count I for both Petersen's and Simons' negligence claims; and

   b. GRANTED as to Count III for Guilford's common-law negligence claim

2. Plaintiffs' Motion to Strike Arguments Raised for the First Time in Reply Brief (Doc. 149) is DENIED.

3. Defendants' request to grant summary judgment on Count V (Negligent Misrepresentation) and Count III (Negligence Per-Se) is DENIED.

DATED this _20_ day of May, 2025.

_Susan P. Watters_
SUSAN P. WATTERS
United States District Judge