IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ESTATE OF ROBERT W. PETERSEN, by and through Robert T. Petersen as Personal Representative; ESTATE OF MARY ANN SIMONS, by and through Dean Simons as Personal Representative; ESTATE OF CHARLOTTE ELAINE GUILFORD, by and through Charles Guilford as Personal Representative, | CV 22-11-BLG-SPW |
| Plaintiffs, | ORDER ON DEFENDANTS' MOTION IN LIMINE TO EXCLUDE SCOTT BOLHACK, M.D.'S UNDISCLOSED TESTIMONY |
| vs. | |
| KOELSCH SENIOR COMMUNITIES, LLC and BILLINGS PARTNERS, LLC d/b/a CANYON CREEK, | |
| Defendants. | |

Defendants Koelsch Senior Communities, LLC ("Koelsch"), and Billings Partners, LLC d/b/a Canyon Creek ("Canyon Creek") filed a Motion in Limine to Exclude Plaintiffs' Expert Scott Bolhack, M.D.'s Undisclosed Expert Opinions and Limit His Testimony to Only What Was Timely Disclosed in His Expert Disclosure. (Doc. 174). The Motion is fully briefed and ripe for the Court's review. (*See* Docs. 175, 182, 191).

1

For the following reasons, the Court denies the Motion and orders Plaintiffs to bear reasonable costs associated with the re-opening of Scott Bolhack, M.D.'s deposition.

## I.    Background[1]

On April 3, 2024, Plaintiffs Estate of Robert W. Petersen ("Mr. Petersen"), Estate of Mary Ann Simons ("Ms. Simons"), Estate of Charlotte Elaine Guilford ("Ms. Guilford") and Defendants mutually disclosed their liability experts.  (Doc. 140-1).  In that disclosure, Plaintiffs identified Scott Bolhack, M.D. ("Dr. Bolhack") as board-certified in internal medicine and hospice and palliative medicine.  (*Id.* at 4).    Plaintiffs attached Dr. Bolhack's CV and fee schedule, his expert report including his opinions as well as facts and data he considered, and a list of four years' worth of his previous testimony (the "Initial Disclosure").  (*Id.*; Doc. 140-3).  Discovery closed on June 7, 2024.  (Doc. 53 at 2).

In accordance with the parties' agreement to take expert depositions after the close of discovery, Defendants deposed Dr. Bolhack on July 12, 2024.  Before his deposition, Defendants issued a subpoena,[2] requesting he bring the following information to the deposition:

---

[1] The parties and the Court are well aware of the factual background of this case.  Therefore, only background information relevant to Defendants' Motion is provided here.

[2] Plaintiffs initially issued a subpoena on May 9, 2024, because Dr. Bolhack's deposition was originally scheduled for June 5, 2024.  (Doc. 182-2).  This first subpoena sought Dr. Bolhack's notes, though the parties had agreed that expert notes would not be discoverable.  (*Id.* at 3; Doc. 182-1 at 3).  However, the parties rescheduled Dr. Bolhack's deposition.  Plaintiffs subsequently

- All materials and/or evidence you reviewed regarding this case.
- All materials and/or evidence you rely upon and/or which forms any part of the basis for any opinions you hold in this case or for any opinion you intend to offer at trial in this case.
- Any literature you have relied upon, in whole or part, to support the opinions you hold in this case or the opinions you intend to offer at trial in this case.
- Any literature, medical articles, medical texts, or authoritative medical sources which you consulted, referenced, or reviewed during your evaluation of this case or which you rely upon to support any opinion you hold in this case.
- Copies of any contract you have for work in this case together with all billing invoices and/or timekeeping records for this case.
- Any reports you have written in this case.

(Doc. 140-6 at 2–3).

At the deposition and pursuant to the subpoena, Dr. Bolhack provided Defendants with a folder containing the documents he reviewed in connection with the present case. (Doc. 182-4 at 12). In the folder, Dr. Bolhack included a document titled "Records Reviewed," which listed all material Dr. Bolhack had reviewed up until the deposition. Since his Initial Disclosure in April 2024, Dr. Bolhack had received and reviewed additional material including: Plaintiffs' Statement of Disputed Facts; Defendants' Brief in Support of Motion to Strike Tamar Brien; medical documents produced in discovery; declarations from former employees; reports and associated material from Defendants' experts John Engstrom, M.D. ("Dr. Engstrom") and Sabine von Preyss-Friedman, M.D. ("Dr. von Preyss"); transcripts

---

issued an amended subpoena. (Doc. 140-6). That subpoena did not request Dr. Bolhack's notes, as reflected above.

of Chandra Owen's and Dr. Larry Severa's depositions; and various other documents. (*Contrast* Doc. 140-3 at 2, *with* Doc. 140-10). Dr. Bolhack had received most of the new material from Plaintiffs' counsel approximately one week prior to his deposition. (Doc. 182-4 at 15–16, 18–19).

The folder also included copies of medical articles (Docs. 140-16–140-18), as well as numerous federal regulations (Docs. 140-19–140-21). Dr. Bolhack was "very familiar" with some of the medical literature before his Initial Disclosure while he had found and read other articles the week before his deposition. (Doc. 182-2 at 20–21). Finally, the folder included a document titled "Bolhack Notes for Peterson [sic], Simons, Guildford [sic] Canyon Crest [sic] SNF [sic]" ("Deposition Notes" or "Notes"), which contained 23 pages of Dr. Bolhack's "pre-deposition notes" and opinions based on the totality of materials he received and reviewed. (Doc. 140-22).

Defendants now seek a Court order, in limine, precluding Dr. Bolhack's testimony, reliance upon, or refence to the materials and opinions first disclosed in his Deposition Notes and Records Reviewed list. Defendants argue the additional materials and new opinions were neither adequately nor timely disclosed under Federal Rule of Civil Procedure 26 and should be excluded from trial pursuant to Federal Rule of Civil Procedure 37.

/ / /

/ / /

4

## II.    Legal Standard

### A.    Motion in Limine

A motion in limine is used to preclude prejudicial or objectionable evidence before it is presented to the jury. *Agan v. BNSF Ry.*, CV 19-83-BLG, 2022 WL 3700052, at *1 (D. Mont. Aug. 26, 2022). The Court shall exclude evidence in limine only if the evidence is inadmissible on all potential grounds. *Id.* Unless evidence meets this high standard, the Court shall defer evidentiary rulings until trial so that questions of foundation, relevancy, and potential prejudice are resolved in proper context. *Id.* "[A] motion in limine should not be used to resolve factual disputes or weigh evidence." *BNSF Ry. v. Quad City Testing Lab'y, Inc.*, CV-07-170-BLG, 2010 WL 4337827, at *1 (D. Mont. Oct. 26, 2010).

Motions in limine must specifically "identify the evidence at issue and state with specificity why such evidence is inadmissible." *Colton Crane Co. v. Terex Cranes Wilmington, Inc.*, 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010). "Orders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).

The decision on a motion in limine is consigned to the district court's discretion—including the decision of whether to rule before trial at all. *United States*

*v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999). Rulings on motions in limine are provisional, and the trial judge may always change their mind during trial. *Luce v. United States*, 469 U.S. 38, 41 (1984).

B.    *Federal Rules of Civil Procedure 26 and 37*

Federal Rule of Civil Procedure 26(a)(2)(A) requires a party to disclose the identity of any witness that the party plans to use at trial to present expert testimony. The expert "disclosure must be accompanied by a written report" that contains "a complete statement of all opinions the [expert] will express" and "the facts or data considered by the [expert] in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i), (ii). Parties "must make these disclosures at the times and in the sequence that the court orders." *Id.* 26(a)(2)(D). "[I]f [a] party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing," the party must supplement or correct its disclosure in a timely manner. *Id.* 26(e)(1)(A).

"Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) [and (e)] that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). However, the district court has "wide latitude . . . to issue sanctions under Rule 37(c)(1)." *Id.*

6

## III.    Discussion

Defendants first seek to exclude three categories of material Dr. Bolhack relied on in forming his opinions, but did not disclose until his deposition. Those categories include: (1) documents available to Plaintiffs before the expert disclosure deadline but not provided to Dr. Bolhack until one week before his deposition; (2) documents available to Plaintiffs after the expert disclosure deadline but not provided to Dr. Bolhack until one week before his deposition; and (3) documents available to Dr. Bolhack before the expert disclosure deadline but only relied on after receiving the additional documents from Plaintiffs' counsel one week before his deposition. (Doc. 175 at 19–25). Defendants next seek to exclude Dr. Bolhack from relying on the new opinions found in his Deposition Notes, which were provided to Defendants for the first time at his deposition. In sum, they seek to limit Dr. Bolhack's trial testimony to the material and opinions he provided in his Initial Disclosure.

In response, Plaintiffs assert the additional material "adequately and properly supplemented" the Initial Disclosure under Rule 26, for which Defendants now have had 14 months' notice to prepare their case. (Doc. 182 at 10). Regardless of a potential Rule 26 violation, Plaintiffs contend that any exclusion or limitation of Dr. Bolhack's opinion would be inappropriate because any failure to disclose was substantially justified and harmless.

7

For the following reasons, the Court finds Plaintiffs failed to adequately disclose and supplement new material and opinions under Rule 26, which triggers Rule 37 exclusion. However, limiting Dr. Bolhack's trial testimony to his Initial Disclosure is inappropriate at this time because any prejudice to Defendants is mitigated by the availability of less drastic sanctions.

A.    *Federal Rule of Civil Procedure 26*

Under Rule 26(a), "subsequently-given deposition testimony is [generally] not a substitution for adequate disclosure in the expert's original report." *Asetek Danmark A/S v. CMI USA, Inc.*, No. 13-cv-00457, 2014 WL 6997670, at *1 n.1 (N.D. Cal. Dec. 9, 2014). An incomplete expert report therefore risks prejudicing the deposing party by undermining the party's ability to properly prepare for an effective deposition. *See Pineda v. City & County of San Francisco*, 280 F.R.D. 517, 521–22 (N.D. Cal. 2012); *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998) ("The [expert] report must be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources.").

If, however, a report is later found to be incomplete or inaccurate, "Rule 26(e) creates a 'duty to supplement,' not a right." *Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009). "Supplementation . . . means

correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. Sept. 9, 1998). While Rule 26(e) requires supplementation of expert reports upon discovery of new information, it "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' [initial] report." *Plentyhawk v. Sheikh*, CV 14-44-BLG, 2016 WL 3086404, at *3 (D. Mont. May 31, 2016) (internal quotation marks and citation omitted). A party therefore cannot bring new and additional theories to its case under the guise of Rule 26 supplementation.

Here, the Court will determine whether the three categories of material—identified by Defendants—were properly disclosed under the Rules. Second, the Court will analyze whether Dr. Bolhack's reliance on that material yielded new or expanded opinions, and likewise, whether those opinions were adequately disclosed.

### 1. *Documents Available to Plaintiffs Before the Expert Disclosure Deadline but not Provided to Dr. Bolhack Until One Week Before his Deposition*

The first category of material includes:

(1) two-hundred and thirty-nine pages of bates-numbered documents (Bates 20930–21169), including:

    a. Kevin Chambers Canyon Creek updates (Bates 20294–20307);
    b. Tax Returns (Bates 20547–20583);
    c. Koelsch website screenshots (Bates 21163–21169); and

(2) nine employee declarations.

(*Compare* Doc. 140-3 at 2, *with* Doc. 140-10; Doc. 182-4 at 15–16).

All material in this category, except for one employee declaration, was available to the parties before the expert disclosure deadline. (Docs. 175-1, 80-6–80-12). Yet, Plaintiffs did not provide the material to Dr. Bolhack until approximately one week before his deposition. (Doc. 182-4 at 16, 18, 19). This means Dr. Bolhack received the material almost three months after his Initial Disclosure and one month after the close of discovery.

This Court has previously held that "[a] complete expert disclosure, based on current information as best known by the party, should be submitted to the opposing part[y] by the expert disclosure deadline." *Plentyhawk*, 2016 WL 3086404, at *3. Otherwise, an incomplete expert report defeats the purpose of a party's ability to prepare for a deposition or trial if it does not know what "facts or data" the expert considered in forming their opinions. *See* Fed. R. Civ. P. 26(a)(2)(B)(ii).

Here, the Court finds no reason justifying Plaintiffs' decision to withhold the first category of material from Dr. Bolhack when that material was available before the expert disclosure deadline. Because Dr. Bolhack ultimately relied on the material to form his opinions, Plaintiffs failed to timely and adequately disclose under Rule 26(a).

>    2.    *Documents Available to Plaintiffs After the Expert Disclosure*
>           *Deadline but not Provided to Dr. Bolhack Until One Week*
>           *Before his Deposition*

The second category of material includes:

(1) Dr. von Preyss's and Dr. Engrstom's reports;
(2) Chandra Owen's deposition transcript;
(3) Dr. Larry Severa's deposition transcript;
(4) Plaintiffs statement of disputed facts; and
(5) Defendants' brief in support of their motion to strike declaration of
    Tamar Bryan.

(*Compare* Doc. 140-3, *with* Doc. 140-10).

Defendants disclosed Dr. von Preyss's and Dr. Engstrom's reports to Plaintiffs on April 3, 2024. However, Plaintiffs did not provide the reports to Dr. Bolhack until one week before his July 12 deposition. (Doc. 182-4 at 16). Likewise, Chandra Owen's deposition was available to the parties on June 11, 2024 (Doc. 140-12), and Dr. Severa's deposition was available on April 4, 2024 (Doc. 140-14). Yet again, Plaintiffs did not provide the depositions to Dr. Bolhack until one week before his deposition. (Doc. 182-4 at 19). Plaintiffs' statement of disputed facts as well as Defendants' brief in support were similarly available after the expert disclosure deadline yet only provided to Dr. Bolhack the week before his deposition. (Docs. 96, 110; Doc. 182-4 at 14, 16).

If a party needs to correct the accuracy or complete the report after the initial disclosure deadline has passed, it must do so under Rule 26(e).

> The obligation to supplement disclosures and discovery responses applies whenever a party learns that its prior disclosures or responses are in some material respect incomplete or incorrect. There is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition or when an expert during a deposition corrects information contained in an earlier report.

Fed. R. Civ. P. 26(e) advisory committee's notes to 1993 amendment.

Here, the parties learned of the material in this second category after the initial disclosure deadline. Therefore, Plaintiffs duty to supplement arose under Rule 26(e) when they learned that Dr. Bolhack's Initial Disclosure was either incomplete or incorrect based on the new information. Plaintiffs' contention that they "need not supplement when information [was] made known in the discovery process" has no merit here because the information in this second category exceeds the scope of Rule 26(e), that is—"correcting inaccuracies or filling the interstices of an incomplete report." (Doc. 182 at 9); *see Keener*, 181 F.R.D. at 640. As the Court will discuss, Dr. Bolhack used this second category of material to revise, add to, and create new opinions. Even if Plaintiffs are now conceding the Initial Disclosure was inaccurate or incomplete, they have failed to show what part of the Initial Disclosure needed to be corrected or filled in. As such, the Court finds the additional material in this category was not a proper supplementation as allowed under Rule 26(e)(1).

/ / /

12

3.    *Documents Available to Dr. Bolhack Before the Expert Disclosure Deadline but Only Relied on After Receiving the Additional Documents from Plaintiffs' Counsel One Week Before his Deposition*

The final category of material Defendants seek to exclude consists of governmental regulations and medical literature Dr. Bolhack admitted to reviewing only after he received and reviewed the preceding two categories of material. (*Compare* Doc. 140-3, *with* Doc. 140-10). The scientific articles were published between 1993 and 2022, and the governmental regulations were both publicly available and long-standing. Therefore, they would have been available for review before the expert disclosure deadline.

Again, Dr. Bolhack did not disclose these regulations or articles in his Initial Disclosure and therefore they were untimely disclosed under Rule 26(a). And unless Plaintiffs now concede Dr. Bolhack's Initial Disclosure was inaccurate or incomplete, the introduction of this new material was not proper supplementation as contemplated by Rule 26(e).

4.    *Dr. Bolhack's Deposition Notes and Opinions*

After receiving and reviewing the three categories of undisclosed material, Dr. Bolhack compiled his Deposition Notes. As a result, his Notes—by his own admission—contain "a host of opinions" not found in his Initial Disclosure. (Doc. 182-4 at 16–19, 30, 124, 125; *compare* Doc. 182-5, *with* Doc. 140-3).

Dr. Bolhack's new and expanded opinions pertain to causation of death, facility neglect and causality, expanded event timelines, COVID-19 response, pressure wound management and nutritional declines, hospice care initiation, and detailed rebuttal of other experts' testimony.

For example, as to causation and neglect, the Deposition Notes surpass the summary-level conclusions initially disclosed. At first, Dr. Bolhack detailed causation opinions regarding all three decedents, with references to multiple contributing factors beyond the primary disease listed on each death certificate, but with no specific references to Canyon Creek's standard of care breach. By contrast, the Deposition Notes include more detailed and pointed attributions of death and decline to Canyon Creek's failure in monitoring, intervention, and institutional processes, including explicit citations to regulatory standards.

As to Mr. Petersen, Dr. Bolhack initially opined that while Parkinson's disease was present, "severe deconditioning, dehydration, possible sepsis, altered mental status, and pressure ulcers" upon hospital admission were significant contributors to his death. (Doc. 140-3 at 3). However, in his Deposition Notes, Dr. Bolhack discusses the direct impact of Mr. Petersen's severe dehydration and weight loss, asserting that the path toward hospice admission and death was "triggered" by neglect and inadequate observation. (Doc. 182-5 at 9). This opinion is a more direct causal linkage than what was described in the Initial Disclosure.

14

As to Ms. Simons, Dr. Bolhack initially asserted her death "was caused by severe protein calorie malnutrition," noting the acute respiratory arrest on her death certificate. (Doc. 140-3 at 3–4). He further cited her profound weight loss, pressure injuries, and metabolic disturbances, arguing Canyon Creek's failures caused her premature death. (*Id.* at 4). However, unlike his Initial Disclosure, his Notes offer more practical, detailed suggestions of failed interventions such as 1:1 eating assistance, evaluation of neurological status, and assessment of swallowing issues. His Notes attribute Ms. Simons's death to neglect more directly than his Initial Disclosure. He explicitly states: "The neglect resulted in her death." (Doc. 182-5 at 14).

For both Mr. Petersen and Ms. Simons, Dr. Bolhack's Notes include new, specific analyses of pressure ulcer onset and wound care as well as elaborations on the timing, missed interventions, and weight data to bolster the claim that functional decline and death were preventable. (*Compare* Doc. 140-3 at 3–4, *with* Doc. 182-5 at 5, 16–17; Doc. 182-4 at 136).

As to Ms. Guilford, Dr. Bolhack initially attributed her death to COVID-19 and summarily linked it to Canyon Creek's failures, including poor documentation and lack of response to deteriorating health. (Doc. 140-3 at 4). However, he adds more concrete statements in his Notes stating there was "no documentation of any observations or interventions with her original positive infection." According to Dr.

15

Bolhack's Notes, Ms. Guilford had been "medically abandoned." (Doc. 182-5 at 21).

Likewise, Dr. Bolhack's Notes introduce new criticisms of Canyon Creek's pandemic response. His new opinions connect pandemic failures to patient outcomes in ways that were largely absent from his Initial Disclosure. For example, the Initial Disclosure attributed the decedents' deaths to failures in nutrition, hydration, wound care, and monitoring, but does not contextualize these failures within the framework of Canyon Creek's COVID-19 response. (Doc. 140-3 at 3–4). Dr. Bolhack's Deposition Notes by contrast, specifically state that Canyon Creek used the "COVID[-19] outbreak as an excuse" to avoid providing necessary care for Mr. Petersen, which led to severe dehydration, hospitalization, and functional decline. (Doc. 182-5 at 9). He opines Canyon Creek was understaffed, and for all three decedents, he goes beyond clinical causes of death and asserts that neglect, exacerbated by poor COVID-19 protocols, was a direct contributor to adverse outcomes. (Doc. 182-5 at 7, 9, 16, 21). He further relies on recently reviewed material to compare the facility's actions against the requirements of regulatory and public health standards for a pandemic response. (Doc. 182-5 at 9, 10, 22, 23).

Finally, unlike his Initial Disclosure, Dr. Bolhack's Notes challenge opposing expert testimony with new opinions, stating he was not confident their COVID-19 severity assessment was correct, and critically questions whether appropriate

16

processes were in place.  His detailed critiques of the testimony and opinions of opposing experts, referencing both factual disagreements and regulatory mandates, are absent from the Initial Disclosure.  (Doc. 182-5 at 9, 16, 17, 21).

It is obvious—by Dr. Bolhack's own admission and after review of the two reports—that the Deposition Notes are different from, rather than supplemental to, the opinions contained in his Initial Disclosure.  Thus, the Deposition Notes and the new opinions therein were not adequately disclosed and do not constitute supplementation under Rules 26(a) or (e).

### B.    *Federal Rule of Civil Procedure 37*

#### 1.    *Substantially Justified and Harmless*

"If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37 (c)(1).

> [D]istrict courts have identified "[s]everal factors to guide the determination of whether substantial justification and harmlessness exist, including (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence."

*Liberty Ins. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022) (quoting *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 242 (D. Nev. 2017)).  The party facing sanctions for belated disclosure bears the burden to demonstrate justification or

harmlessness. *Yeti by Molly*, 259 F.3d at 1107. Plaintiffs have not met their burden here.

Plaintiffs first attempt to justify Dr. Bolhack's late disclosure by claiming they complied with Defendants' subpoena after the parties agreed expert notes were not discoverable. (Doc. 182 at 11). Plaintiffs further argue the late disclosure was harmless because Defendants have now known about Dr. Bolhack's opinions for over a year, declined to follow up, and never tried to re-open the deposition or supplement their own experts' reports. (*Id.* at 11–12).

Turning to the factors, the Court finds the late disclosure was neither substantially justified nor harmless. Initially, the late disclosure deprived Defendants of a meaningful opportunity to prepare for, examine, and respond to Dr. Bolhack's new opinions at his deposition. True, Plaintiffs complied with Defendants' subpoena. However, h ad Defendants not subpoenaed Dr. Bolhack, they may not have learned about the new materials Dr. Bolhack relied on or his new opinions until trial. The record shows the additional material Dr. Bolhack relied on was largely available before the disclosure deadline. Plaintiffs offer no reason why it was not provided to Dr. Bolhack before his Initial Disclosure, and therefore, the late disclosure of the documents and Dr. Bolhack's new opinions was not justified.

The Court next rejects Plaintiffs' contentions that Defendants "sat on their hands" in bringing the instant Motion. (*Id.* at 2, 11–12). The procedural record

reflects Defendants' timely pursuit of relief consistent with the Court's directive regarding the timing of motions in limine. (Doc. 191 at 13–14). Trial is approaching in January 2026, and though Defendants have known the totality of Dr. Bolhack's opinions for over a year, it was Plaintiffs' duty to adequately disclose and supplement under Rule 26. To now reopen the deposition at Defendants' expense for Plaintiffs' failure would certainly prejudice Defendants. For these reasons, Plaintiffs' late disclosure was not harmless.

### 2.    *Sanctions*

Because the late disclosure was neither justified nor harmless, "Rule 37(c)(1) is an 'automatic' sanction that prohibits the use of improperly disclosed evidence." *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021) (quoting *Yeti by Molly*, 259 F.3d at 1106). However, "the automatic nature of the rule's application does not mean that a district court *must* exclude evidence that runs afoul of Rule 26(a) or (e)." *Id.* (emphasis in original). "Rather, the rule is automatic in the sense that a district court *may* properly impose an exclusion sanction where a noncompliant party has failed to show that the discovery violation was either substantially justified or harmless." *Id.* "[T]he degree and severity" of the sanction "are within the discretion of the trial judge." *Keener*, 181 F.R.D. at 642; *see Yeti by Molly*, 259 F.3d at 1106.

The Ninth Circuit has identified several factors district courts may consider in deciding whether to impose Rule 37(c)(1)'s exclusion sanction. Those factors include: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to [the party seeking sanctions]; (4) the public policy favoring disposition of cases on their merits; [and] (5) the availability of less drastic sanctions." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) (citing *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990)). "The first two of these factors favor the imposition of sanctions in most cases, while the fourth cuts against a default or dismissal sanction. Thus[,] the key factors are prejudice and availability of lesser sanctions." *Wanderer*, 910 F.2d at 656.

Here, Plaintiffs' inadequate disclosure was neither substantially justified nor harmless. However, the Court ultimately concludes that the risk of any prejudice to Defendants at trial is mitigated by two factors. First, despite Plaintiffs' procedural infraction, Defendants have had adequate time to prepare for trial since they learned of Dr. Bolhack's late disclosure 14 months ago. Second, expert testimony is essential to litigating the parties' case; as such, there are less drastic sanctions available than striking portions of Dr. Bolhack's opinions. *See id.* ("[S]anctions which interfere with the litigants' claim or defenses violate due process when they are imposed 'merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case.'" (quoting *Wyle v. R.J. Reynolds Indus., Inc.*,

20

709 F.2d 585, 591 (9th Cir. 1983))). The jury should be allowed to weigh the entirety of Plaintiffs' experts' opinions.

Therefore, the Court elects to impose the lesser sanction of allowing Plaintiffs to file Dr. Bolhack's supplemental expert report and allowing Defendants to reopen Dr. Bolhack's deposition. The parties may conduct this deposition by Zoom or other remote means, and Plaintiffs shall bear the reasonable costs of conducting this deposition.

## IV.    Conclusion

IT IS ORDERED that Defendants' Motion in Limine to Exclude Plaintiffs' Expert Scott Bolhack, M.D.'s Undisclosed Expert Opinions and Limit His Testimony to Only What Was Timely Disclosed in His Expert Disclosure (Doc. 174) is DENIED.

Plaintiffs shall bear reasonable costs associated with the re-opening of Dr. Bolhack's deposition as described above.

DATED this _13th_ day of November, 2025.

SUSAN P. WATTERS
United States District Judge