IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ESTATE OF ROBERT W. PETERSEN, by and through Robert T. Petersen as Personal Representative; ESTATE OF MARY ANN SIMONS, by and through Dean Simons as Personal Representative; and ESTATE OF CHARLOTTE ELAINE GUILFORD, by and through Charles Guilford as Personal Representative, | CV 22-11-BLG-SPW |
| Plaintiffs, | ORDER ON PLAINTIFFS' OMNIBUS MOTIONS IN LIMINE |
| vs. | |
| KOELSCH SENIOR COMMUNITIES, LLC and BILLINGS PARTNERS, LLC d/b/a CANYON CREEK, | |
| Defendants. | |

Plaintiffs filed their Omnibus Motions in Limine (Doc. 180) seeking to exclude the following evidence and argument from trial:

1. Information about former employees not produced by Defendants in discovery;

2. Blameless apologies and hollow statements of sympathy by Defendants or their counsel;

3. Statements, allegations or claims in the pleadings;

4. Attorney advertising or arguments impugning attorneys in the case; and

1

     5.     Defendants' expert John Bowblis's opinions.

(*Id.* at 2).

The Motions are fully briefed and ripe for the Court's review. (*See* Docs. 181, 185, 198).

## I.    Background

This negligence action arises out of Plaintiffs' allegations that Canyon Creek, a licensed memory care and assisted living facility, failed to properly care for Robert Petersen, Mary Ann Simons, and Charlotte Guilford during the COVID-19 outbreak, proximately causing their injuries and deaths. (Doc. 10 at 2–3). Plaintiffs allege Defendants breached their duty of care by failing to provide adequate staffing, nutrition, hydration, and infection control, among other failures. Plaintiffs also seek punitive damages, alleging that Defendants failed to implement enhanced infection control procedures, did not provide specially trained staff during staffing shortages, and deliberately withheld critical information about COVID-19 infections from residents and their families. (*Id.* at 28–31).

## II.    Legal Standard

A motion in limine is used to preclude prejudicial or objectionable evidence before it is presented to the jury. *Agan v. BNSF Ry.*, CV 19-83-BLG, 2022 WL 3700052, at *1 (D. Mont. Aug. 26, 2022). The Court shall exclude evidence in limine only if the evidence is inadmissible on all potential grounds. *Id.* Unless

evidence meets this high standard, the Court shall defer evidentiary rulings until trial so that questions of foundation, relevancy, and potential prejudice are resolved in proper context. *Id.* "[A] motion in limine should not be used to resolve factual disputes or weigh evidence." *BNSF Ry. v. Quad City Testing Lab'y, Inc.*, No. CV-07-170-BLG, 2010 WL 4337827, at *1 (D. Mont. Oct. 26, 2010).

Motions in limine must specifically "identify the evidence at issue and state with specificity why such evidence is inadmissible." *Colton Crane Co. v. Terex Cranes Wilmington, Inc.*, No. CV 08-8525, 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010). "Orders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).

The decision on a motion in limine is consigned to the district court's discretion—including the decision of whether to rule before trial at all. *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999). Rulings on motions in limine are provisional, and the trial judge may always change their mind during trial. *Luce v. United States*, 469 U.S. 38, 41 (1984).

/ / /

/ / /

/ / /

### III.    Discussion

      A.    *Motion 1: Information About Former Employees Not Produced by Defendants in Discovery*

Plaintiffs first move to exclude certain personnel information of current or former employees that Defendants purportedly refused to produce during discovery. (Doc. 181 at 3–5).

Defendants respond that Plaintiffs' discovery requests were overbroad and invaded employee privacy, making production impossible. (Doc. 185 at 2–3). Though certain employee personnel information was not produced, Defendants assert their right to cross-examine former employees and to use impeachment evidence—material that need not be disclosed in discovery—to challenge those witnesses' credibility. Defendants state that they "will not offer evidence of former employee conduct to 'establish the truth of a matter.'" (*Id.* at 5 (quoting *Kelley v. Smith's Food & Drug Ctrs., Inc.*, No. 2:14-cv-00856, 2014 WL 6474026, at *4 n.3 (D. Nev. Nov. 19, 2014)).

Absent extraordinary circumstances, the Court will not attempt to resolve the parties' discovery disputes at this stage. Therefore, the Court will not consider the parties' arguments as to whether employee personnel information was properly disclosed.

Otherwise, pursuant to the Federal Rules, the parties may use undisclosed information solely for impeachment purposes, and only when applicable on cross-

examination.  *See* Fed. R. Civ. P. 26(a)(1)(A)(ii); Fed. R. Evid. 611(b).  In this respect, Motion 1 is DENIED with leave to renew objections at trial.

>     B.     *Motion 2: Blameless Apologies and Hollow Statements of Sympathy
>            by Defendants or Their Counsel*

Second, Plaintiffs move to exclude any reference, suggestion, or expression of sympathy or regret by Defendants, arguing they are irrelevant and could unfairly influence the jury.  (Doc. 181 at 6).  Plaintiffs cite several examples illustrating their request, including statements such as, "we are deeply sorry for the loss of Ms. Simons," or "our hearts go out to his family."  Plaintiffs also seek to preclude Defendants from referring to opposing counsel as "my friend" or using first names. (*Id.*).

Defendants oppose the Motion as a "blatant attempt to compel the defense to appear as uncaring, unfeeling, and cold in front of a jury."  (Doc. 185 at 6).

The Court ensures the parties it will preserve the integrity and impartiality of the judicial process and provide a fair and effective forum for justice.  As the parties know, the jury will be instructed on the applicable law in this case.  As such, the jury will be instructed that statements of counsel are not evidence and that the case cannot be decided on their feelings of sympathy.

In this respect, Motion 2 is DENIED with leave to renew objections at trial.

/ / /

/ / /

### C.      *Motion 3: Statements, Allegations or Claims in the Pleadings*

Third, Plaintiffs move to exclude any reference to prior pleadings, arguing the final pretrial order supersedes them. (Doc. 181 at 7). Plaintiffs accurately quote the Court's scheduling order but nonetheless ask the Court to enter an evidentiary order, asserting "[t]here should not be an exception to this rule." (Doc. 198 at 6). However, Plaintiffs do not identify an evidentiary basis for exclusion.

Defendants oppose the Motion as vague and overbroad. They generally agree that legal claims are superseded by the pretrial order, but object to excluding any factual allegations found in pleadings, briefing, expert witness disclosure, or discovery responses. (Doc. 185 at 8–9).

"[T]he Final Pretrial Order supersedes all prior pleadings" and controls the subsequent course and scope of the action. (Doc. 173 at 3); *see* Fed. R. Civ. P. 16(e). Therefore, "[c]laims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint." *Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, 818 F. Supp. 2d 1193, 1207 (E.D. Cal. 2011). The Court ensures the parties it will comply with the Federal Rules and legal standards applicable to this case.

Because Plaintiffs fail to identify specific evidence at issue, Motion 3 is DENIED as vague and overbroad with leave to renew objections at trial.

D.    *Motion 4: Attorney Advertising or Arguments Impugning Attorneys in the Case*

Fourth, Plaintiffs move to preclude any argument impugning the motives of either counsel, including discussion of attorney advertising or how the attorneys came to represent the parties in this case. (Doc. 181 at 7).

Defendants do not object, except to preserve their ability during voir dire to question potential jurors about any prior exposure or interactions with Plaintiffs' counsel. (Doc. 185 at 10–11).

Motion 4 is GRANTED because the parties mostly agree with one another. However, the Court will allow the parties during voir dire to ask potential jurors about their familiarity with counsel and whether anything they have heard or read about counsel would affect their ability to be fair and impartial.

E.    *Motion 5: Defendants' Expert John Bowblis's Opinions*

Finally, Plaintiffs seek to exclude the testimony of John Bowblis, Ph.D., ("Dr. Bowblis"), arguing he is not qualified to opine on assisted living facility administration issues or nursing care and that his opinions are not relevant. (Doc. 181 at 9–11).

Defendants retained Dr. Bowblis "to provide an economic and regulatory analysis of the Plaintiff's [sic] allegations as they pertain to the staffing levels at Canyon Creek." (Doc. 181-4 at 4). He is also a designated rebuttal expert.

Plaintiffs challenge Dr. Bowblis's qualifications and the relevance of his proposed testimony. As to his qualifications, Plaintiffs argue that Dr. Bowblis has never worked in an assisted living facility, is not licensed as an assisted living administrator or nurse, and does not hold a healthcare management degree. (Doc. 181 at 9). They also object to several of his rebuttal opinions, claiming those opinions exceed the scope of his expertise. (*Id.* at 10–11; Doc. 198 at 10–11). Those challenged opinions include: (1) appropriate use and availability of personal protective equipment ("PPE"), (2) whether Plaintiffs' acuity mandated a higher level of care, and (3) the management relationship between Koelsch and Canyon Creek. (Doc. 181 at 10). As to relevance, Plaintiffs argue that Dr. Bowblis's opinions will not assist the jury because they rely on quantitative and statistical comparisons instead of Montana's standard of care or whether Defendants' staffing levels met that standard in light of the residents' acuity and specific needs. (*Id.*; Doc. 198 at 7–8, 12–13).

Defendants counter that Dr. Bowblis is qualified because he has significant experience analyzing staffing and regulatory issues in assisted living facilities. Defendants point to his Ph.D. in economics, his extensive authorship and research in the field, and his practical experience. (Doc. 185 at 14).

Expert testimony may not be admitted unless the proponent demonstrates the testimony meets the requirements set out in Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

"One of the preliminary gate-keeping determinations a trial court must make . . . is whether the witness is appropriately qualified as an expert on the particular subject matter." *Hardesty v. Barcus*, No. CV 11-103-M, 2012 WL 5906797, at *2 (D. Mont. Nov. 26, 2012). The qualification standard is meant to be broad and to seek a "minimal foundation" justifying the expert's role as an expert. *Hangarter v. Provident Life & Accident Ins.*, 373 F.3d 998, 1015–16 (9th Cir. 2004). There are no definite guidelines for determining the knowledge, skill, or experience required either in a particular case or of a particular witness. "The test is whether, under the totality of the circumstances, the witness can be said to be qualified as an expert in a particular field through any one or more of the five bases enumerated in Rule 702— knowledge, skill, experience, training, or education." *Santos v. Posadas de Puerto Rico Assocs., Inc.*, 452 F.3d 59, 64 (1st Cir. 2006). Thus, a court must "compar[e] the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990).

Even if an expert is qualified, the expert's testimony must also be relevant and helpful to the jury. "Whether testimony is helpful within the meaning of Rule 702 is in essence a relevancy inquiry." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1184 (9th Cir. 2002). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) (citation modified).

Here, the Court agrees with Defendants that Dr. Bowblis is qualified to testify as an expert and that his testimony is relevant to the disputed issues in this case.

Dr. Bowblis is qualified based on his knowledge, education, and experience with researching and analyzing long-term care facilities' operations. (Doc. 181-4). He is an economics professor at Miami University in Ohio, where he serves as a research fellow at the Scripps Gerontology Center—a leading academic center on aging and aging policy. (*Id.* at 1). He is recognized as an expert on staffing levels in long-term care, with papers cited by the Centers for Medicare and Medicaid Services. (*Id.* at 2). In 2022, the Department of Health and Human Services sought his consultation regarding nursing home staff and expenditures. (*Id.*).

10

Dr. Bowblis has also contributed to COVID-19 research and policy. During the pandemic, he served on a special task force in Ohio that assisted with deploying the National Guard to long-term care providers. This work eventually expanded into a federally funded grant studying the effectiveness of visitation bans in nursing homes. (*Id.* at 3). His expertise is further evidenced by his roles in research teams funded by Ohio's state government, his publication and presentation record, and the citations to his work by both state and federal policymakers.

Based on Dr. Bowblis's qualifications, the Court finds his knowledge, education, and experience directly relate to the staffing analysis he offers, rendering his opinions reliable and relevant. Whether Defendants breached the standard of care and caused harm to Mr. Petersen, Ms. Simons, or Ms. Guilford is a factual issue for the jury. A central component of that inquiry is whether Defendants provided adequate staffing levels. Dr. Bowblis's testimony will assist the jury by explaining and contextualizing Canyon Creek's labor reports, financial and monthly operation reports, staffing level data of other assisted living facilities, and COVID-19 data. (*Id.* at 33; Doc. 181-5 at 9).

His testimony will also aid the jury through his rebuttal opinions. Dr. Bowblis may address PPE shortages because he worked with assisted living facilities facing such shortages in 2020 and later published research on the issue. (Doc. 181-5 at 2; Doc. 186-5). His opinions and relevant experience help contextualize Canyon

11

Creek's position that they were instructed to "get PPE from wherever [they] could get it." (Doc. 94 at 4).

Additionally, Dr. Bowblis may testify about assisted living facilities caring for residents who require higher levels of care because of his extensive knowledge of Medicaid's Home and Community-Based Services ("HCBS") waiver, which allows individuals to receive long-term care outside of nursing homes. (*See* Doc. 181-5 at 3). He has played an active role in state initiatives aimed at evaluating and improving Medicaid services, such as HCBS waivers. (Doc. 181-4 at 2–3; *see, e.g.,* Doc. 186-6). This expertise qualifies him to help the jury understand the scope of care assisted living facilities can provide their residents.

Finally, Dr. Bowblis may testify about the relationship between Canyon Creek and Koelsch. As noted, much of his research focuses on how health care and long-term care providers make operational decisions, and how those decisions impact staffing, quality, finance, as well as the relationship between operators and other parties. (Doc. 181-4 at 1–2). His background, combined with his review of the facts in this case, provides a reliable and relevant foundation for his opinions.

Because Dr. Bowblis is qualified and his opinions are relevantly tied to the issues in this case, Motion 5 is DENIED.

///

///

12

## IV.   Conclusion

For the reasons stated above, IT IS HEREBY ORDERED that the Court's rulings on Plaintiffs' Omnibus Motions in Limine (Doc. 180) are as follows:

(1)   Motion in Limine 1 is DENIED with leave to renew objections at trial;

(2)   Motion in Limine 2 is DENIED with leave to renew objections at trial

(3)   Motion in Limine 3 is DENIED with leave to renew objections at trial;

(4)   Motion in Limine 4 is GRANTED except as applied to voir dire as explained in this Order; and

(5)   Motion in Limine 5 is DENIED.

DATED this ___1st___ day of December, 2025.

SUSAN P. WATTERS
United States District Judge