IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ESTATE OF ROBERT W. PETERSEN, by and through Robert T. Petersen as Personal Representative; ESTATE OF MARY ANN SIMONS, by and through Dean Simons as Personal Representative; and ESTATE OF CHARLOTTE ELAINE GUILFORD, by and through Charles Guilford as Personal Representative,<br><br>Plaintiffs,<br><br>vs.<br><br>KOELSCH SENIOR COMMUNITIES, LLC and BILLINGS PARTNERS, LLC d/b/a CANYON CREEK,<br><br>Defendants. | CV 22-11-BLG-SPW<br><br>ORDER ON DEFENDANTS' MOTIONS IN LIMINE NOS. 11-16 |

Defendants filed their Motions in Limine Nos. 11-16 (Doc. 189) seeking to exclude the following evidence and argument from trial:

    11.    References to "Alter Egos" and "Corporate Shells";

    12.    Irrelevant and unfairly prejudicial testimony regarding Defendants' hiring practices;

    13.    Evidence or argument that Defendants acted nefariously or otherwise deceitfully by destroying certain documents pursuant to their document retention policies;

1

    14.    Evidence of the care or adverse outcomes experienced by other residents of Defendants' facilities, including other residents' incidents, falls, weight loss or death, Canyon Creek not appropriately admitting other residents, and evidence of prior lawsuit[s] or complaints against Defendants or hybrid witnesses;

    15.    Irrelevant or undisclosed witnesses at trial, including Pam Donovan, Olivia Koelsch, Dennis and Judy Knoll and their surreptitious video recording; and

    16.    Evidence or arguments regarding news media reporting on Defendants' COVID-19 policies or Defendants' media communications, including publications by third party news outlets, media reports, and news articles.

(*Id.* at 2–3).

The Motions are fully briefed and ripe for the Court's review. (*See* Docs. 190, 200, 205).

## I. Background

This negligence action arises out of Plaintiffs' allegations that Canyon Creek, a licensed memory care and assisted living facility, failed to properly care for Robert Petersen, Mary Ann Simons, and Charlotte Guilford during the COVID-19 outbreak, proximately causing the decedents' injuries and deaths. (Doc. 10 at 2–3). Plaintiffs allege Defendants breached their duty of care by failing to provide adequate staffing, nutrition, hydration, and infection control, among other failures. Plaintiffs also seek punitive damages, alleging that Defendants failed to implement enhanced infection control procedures, did not provide specially trained staff during staffing shortages,

and deliberately withheld critical information about COVID-19 infections from residents and their families. (*Id.* at 28–31).

## II. Legal Standard

A motion in limine is used to preclude prejudicial or objectionable evidence before it is presented to the jury. *Agan v. BNSF Ry.*, No. CV 19-83-BLG, 2022 WL 3700052, at *1 (D. Mont. Aug. 26, 2022). The Court shall exclude evidence in limine only if the evidence is inadmissible on all potential grounds. *Id.* Unless evidence meets this high standard, the Court shall defer evidentiary rulings until trial so that questions of foundation, relevancy, and potential prejudice are resolved in proper context. *Id.* "[A] motion in limine should not be used to resolve factual disputes or weigh evidence." *BNSF Ry. v. Quad City Testing Lab'y, Inc.*, No. CV-07-170-BLG, 2010 WL 4337827, at *1 (D. Mont. Oct. 26, 2010).

Motions in limine must specifically "identify the evidence at issue and state with specificity why such evidence is inadmissible." *Colton Crane Co. v. Terex Cranes Wilmington, Inc.*, No. CV 08-8525, 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010). "Orders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).

The decision on a motion in limine is consigned to the district court's discretion—including the decision of whether to rule before trial at all. *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999). Rulings on motions in limine are provisional, and the trial judge may always change their mind during trial. *Luce v. United States*, 469 U.S. 38, 41 (1984).

### III.   Discussion

#### A.   Motion 11: References to "Alter Egos" and "Corporate Shells"

Defendants first move to preclude Plaintiffs from referring to Defendants or their related entities as "alter egos" or "corporate shells," arguing these terms are irrelevant and unfairly prejudicial. (Doc. 190 at 11). They assert that Plaintiffs have not provided evidence to support claims that Defendants operate as empty shells or alter egos, contending that both Canyon Creek and Koelsch have distinct assets and operations. They further assert that any determination regarding Plaintiffs' corporate veil-piercing theory must be decided by the Court, not the jury. (Doc. 205 at 4).

In response, Plaintiffs argue that the Motion is improper because the terms "alter ego" and "corporate shell" are directly relevant to their veil-piercing theory and their punitive damages analysis. (Doc. 200 at 4; Doc. 10 at 5, 31). Unlike Defendants, Plaintiffs assert that the question of piercing the corporate veil should go to the jury.

Here, the Court agrees with Plaintiffs and denies the Motion for two reasons. First, Defendants' use of a motion in limine to exclude legal terms related to Plaintiffs' pleaded theory is improper. If Defendants believed that Plaintiffs had failed to plead sufficient facts to support their veil-piercing theory, or that such a theory had no evidence to support it, Defendants should have sought remedy through a motion to dismiss or motion for summary judgment. Having failed to pursue such relief, Defendants may not now claim that the terms pertaining to Plaintiffs' theory are irrelevant and unfairly prejudicial.

Second, the Court disagrees with Defendants that piercing the corporate veil is solely a question of equitable relief to be determined by a judge. Indeed, piercing the corporate veil is a remedy grounded in equitable fairness. *Hando v. PPG Indus., Inc.*, 771 P.2d 956, 960 (Mont. 1989) ("Piercing the corporate veil is an equitable remedy used to curb injustices resulting from the improper use of a corporate entity."). Because of the doctrine's equitable nature, "no concrete formula exists under which a court will disregard the separate identity of the corporate entity. Use of this remedy depends entirely upon the circumstances of each case." *Id.* As such, the doctrine often requires a fact-intensive inquiry into the relationship between the corporation and its owners. *Id.* That inquiry can be performed by either a court or a jury.

For example, in *Drilcon, Inc. v. Roil Energy Corp.*, the jury was tasked with deciding whether the corporate veil should be pierced. 749 P.2d 1058, 1063–64 (Mont. 1988). In another case, the district court judge decided whether to pierce the corporate veil at a bench trial. *E.g.*, *Peschel Family Tr. v. Colonna*, 75 P.3d 793, 796 (Mont. 2003). In either instance, Montana courts have applied a two-pronged test to determine whether to pierce the corporate veil: "[f]irst, the *trier of fact* must find that the defendant was either the alter ego, an instrumentality, or an agent of the corporation [and] [s]econd, the *trier of fact* must find evidence that the corporate entity was used as a subterfuge to defeat public convenience, justify wrong or perpetrate fraud." *Id.* at 796–77 (emphasis added) (internal quotation marks and citations omitted).

In sum, under Montana law, veil piercing derives from equitable principles designed to prevent injustice. Though an equitable remedy is generally determined by a judge, the Montana Supreme Court has opined that veil piercing is a fact-intensive inquiry suitable for a jury.

Because the jury in this case will need to resolve factual disputes that determine whether veil piercing is appropriate, Plaintiffs will inherently need to use the terms "alter ego" or "corporate shell" to proffer their theory. Accordingly, the terms are relevant and not unfairly prejudicial, provided Plaintiffs' use of them is grounded in evidence supporting their theory.

In this respect, Motion 11 is DENIED.

### B. *Motion 12: Elicitation of Irrelevant and Unfairly Prejudicial Testimony Regarding Defendants' Hiring Practices*

Defendants next move to preclude Plaintiffs from introducing testimony that Defendants' hiring practices included hiring caregivers with criminal backgrounds, arguing that such testimony is irrelevant, unfairly prejudicial, and constitutes improper character evidence. (Doc. 190 at 13–15). They state that there is no evidence linking Canyon Creek's hiring practices to Plaintiffs' alleged harms, and further that the testimony would distract the jury from the dispositive issues. Even if the hiring practices evidence is relevant, Defendants assert that it is excludable under Federal Rule of Evidence 404, which prohibits the use of a person's prior bad acts to prove character and to show they acted in conformity with it on a specific occasion. (*Id.* at 16).

In response, Plaintiffs contend that Defendants' practice of hiring caregivers with a criminal history reflects desperate hiring practices and as such, is relevant to whether Defendants breached the standard of care. (Doc. 200 at 5). They state it is separately relevant to contrast Defendants' hiring practices with the representations it made in its marketing materials, as well as Defendants' alleged disregard of the risk of harm. Plaintiffs apparently plan to show that hiring "convicted felons to fill low-pay caregiver positions is directly germane" to Defendants' practice of putting profits above resident care. (*Id.* at 6).

7

To be admissible, evidence must be relevant under Federal Rule of Evidence 402 and its probative value must not be substantially outweighed by the danger of unfair prejudice under Federal Rule of Evidence 403.

Here, the Court agrees with Defendants that Plaintiffs have failed to establish a relevant nexus between hiring caregivers with a criminal history and breaching the standard of care. A criminal record, standing alone, does not account for an individual's qualifications, the number of years of relevant caregiving experience, or whether such background directly impacted the quality of care or Defendants' ability to adequately staff Canyon Creek. Without demonstrating that the employees' criminal histories were causally connected to the alleged harm, including understaffing, Plaintiffs' argument is irrelevant to the claims. Caregivers' past wrongful conduct is likewise irrelevant to the representations Defendants made in their marketing materials because those representations are no longer an issue in this case.

Therefore, Motion 12 is GRANTED.

C.  *Motion 13: Evidence or Argument that Defendants Acted Nefariously or Otherwise Deceitfully by Destroying Certain Documents Pursuant to Their Document Retention Policies*

Defendants next move to exclude evidence or argument suggesting they acted nefariously by destroying documents. (Doc. 190 at 17–19). They argue such evidence is irrelevant and carries a substantial risk of prejudice and confusion

8

because the destruction was part of a standard document retention policy and occurred before any knowledge of a potential lawsuit.

In response, Plaintiffs suggest that any questions probing the specifics of Defendants' three-month document retention policy are fair and helpful to the jury. (Doc. 200 at 7). They make no remark regarding the nefarious characterization of potential questioning at trial.

Here, the Court first agrees with Plaintiffs that they may ask Defendants about their document retention policy because it is relevant to Plaintiffs' claims. *See* Fed. R. Evid. 402. At the same time, counsel's questioning should not suggest deceit or nefarious practice where a Canyon Creek employee was merely acting within the scope of that policy. Any contention Defendants have with Plaintiffs' theory about Canyon Creek's document retention policy may be addressed on cross-examination.

Therefore, Motion 13 is DENIED with leave to renew objections at trial.

D.   *Motion 14: Evidence of the Care or Adverse Outcomes Experienced by Other Residents of Defendants' Facilities*

Defendants next move to exclude: (1) evidence of other residents' incidents, falls, weight loss, or death; (2) evidence that Canyon Creek did not appropriately admit other residents; and (3) evidence of prior lawsuits or complaints against Defendants or hybrid witnesses. (Doc. 190 at 19–28). Defendants argue each category should be excluded because the evidence is irrelevant, unfairly prejudicial, or constitutes improper character evidence. *See* Fed. R. Evid. 401–03, 404(b).

9

Plaintiffs broadly dispute Defendants' Motion, arguing that the evidence of other incidents and other lawsuits is relevant to prove actual malice in support of their punitive damages claim. (Doc. 200 at 9). Plaintiffs rely on *McCollough v. Johnson, Rodenberg & Lauinger*, 645 F. Supp. 2d 917 (D. Mont. 2009), to support their argument that the admission of other lawsuits and other evidence of similar conduct by Defendants is permissible to show Defendants' knowledge of risks and their deliberate disregard or indifference to those risks. (Doc. 200 at 10–12).

In general, "[a] defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages. A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business." *State Farm Mut. Auto. Ins. v. Campbell*, 538 U.S. 408, 422–23 (2003). However, evidence of other acts may be relevant to the consideration of punitive damages when they are similar to the conduct which caused the harm. *Id.* Indeed, a plaintiff may show that the defendant harmed others to prove the defendant's behavior was reprehensible. *Philip Morris USA v. Williams*, 549 U.S. 346, 355 (2007). However, while such evidence may inform the jury's assessment of reprehensibility, it cannot be used to punish the defendant directly for harms suffered by nonparties. *Id.*

In line with the Supreme Court's rulings, this Court has previously found that evidence of a defendant's lawsuit filings against other nonparty individuals was

10

properly admitted at trial to show malice and reprehensibility of the defendant's actions. *McCollough*, 645 F. Supp. 2d at 922–23. In *McCollough*, the plaintiff sought recovery under malicious prosecution and punitive damages claims. *Id.* at 923. At trial, this Court admitted evidence that the defendant filed an average of 150 lawsuits per month against nonparty individuals, as well as testimony from two nonparty witnesses that the lawsuits filed against them were baseless. *Id.* After a jury found for the plaintiff, the defendant moved for a new trial arguing, among other reasons, that the Court improperly admitted the evidence of the other lawsuits. *Id.* at 920. The Court denied the motion, ruling that the evidence was admissible because it was "strictly limited . . . to the issues relevant to [plaintiff's claims]," particularly as to the defendant's reprehensibility and to the jury's consideration of whether the defendant acted with malice. *Id.* at 923–24.

With these principles in mind, the Court determines that neither party has identified specific evidence for the Court to make a ruling at this time. The Court will permit evidence of other negligent acts in support of punitive damages only if Plaintiffs demonstrate that those acts involve the same type of misconduct alleged in this case. Before such evidence is presented to the jury, Plaintiffs must make an offer of proof outside the jury's presence to demonstrate the required similarity. In this respect, the Motion 14 is RESERVED FOR RULING.

In all other respects, Motion 14 is DENIED. Evidence that Canyon Creek did not appropriately admit other residents, or evidence of prior lawsuits or complaints, is not admissible because the evidence is not similar to the alleged misconduct in this case.

### E.     *Motion 15: Introduction of Irrelevant or Undisclosed Witnesses*

Defendants next move to preclude Plaintiffs from calling undisclosed witnesses or witnesses who lack information relevant to the case. (Doc. 190 at 28–33). Specifically, Defendants seek to exclude: (1) Pam Donovan from testifying; (2) Olivia Koelsch from testifying; and (3) and Judy and Dennis Knolls from testifying and presenting a video recording they made while visiting Ms. Knolls's mother at Canyon Creek. Plaintiffs oppose the Motion except as to Pam Donovan, whom they no longer intend to call. Motion 15 is initially DENIED AS MOOT as to Ms. Donovan.

Lay witnesses are limited to opinions: (1) "rationally based on the witness's perception;" (2) "helpful to clearly understanding the witness's testimony or to determining a fact in issue;" and (3) "not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701.

#### 1.     *Olivia Koelsch*

Defendants argue that Ms. Koelsch has no personal knowledge of the matters involved in this litigation and therefore may not testify. However, Plaintiffs assert

that she was the head of marketing at Koelsch during the time Canyon Creek allegedly misrepresented information to Ms. Guilford and her family and therefore may testify. (Doc. 200 at 15). If Plaintiffs can establish that Ms. Koelsch had personal knowledge related to the communications made to the Guilford family—that Canyon Creek was free of COVID-19 infection—then she may testify at trial. Ms. Koelsch may not testify about other marketing materials pursuant to the Court's Order on summary judgment. (Doc. 157 at 27).

In this respect, Motion 15 is RESERVED FOR RULING.

### 2.   *Judy and Dennis Knolls*

Defendants next argue that Judy and Dennis Knolls and their "surreptitious" video footage of a meeting with Kevin Chambers should be excluded as irrelevant and unfairly prejudicial evidence. The Court first agrees with Defendants that the video footage is irrelevant and not admissible at trial.

Plaintiffs otherwise argue that Judy and Dennis Knolls may testify to support their punitive damages claim because Judy Knolls's mother was treated similarly to the decedents in this case. Consistent with the Court's analysis in Motion 14, the Knolls may testify only if Plaintiffs first demonstrate that the negligent acts involving Ms. Knolls's mother are of the same type of misconduct alleged in this case.

In this respect, Motion 15 is RESERVED FOR RULING.

### F. Motion 16: Evidence or Arguments Regarding News Media Reporting on Defendants' COVID-19 Policies or Defendants' Media Communications

Finally, Defendants move to preclude Plaintiffs from admitting evidence or presenting arguments regarding news media reporting on Defendants' COVID-19 policies, arguing that those articles are irrelevant, constitute impermissible hearsay, and violate the Best Evidence Rule. (Doc. 190 at 33–37).

Plaintiffs respond that the news articles are relevant to show Defendants' motivations and priorities as it relates to their alleged reprehensible conduct. (Doc. 200 at 19). They further argue the articles are not hearsay because they are not offered for the truth of the matter asserted. (*Id.* at 21).

After reviewing the articles (Docs. 190-13, 190-14, 190-15), the Court agrees with Defendants that the news articles or statements made by Defendants reported by third-party media outlets do not make a fact "more or less probable than it would be without the evidence." Fed. R. Evid. 401. To the extent the news articles hold any probative value, it is substantially outweighed by the danger of needlessly presenting cumulative evidence to the jury. Fed. R. Evid. 403.

Therefore, Motion 16 is GRANTED.

## IV. Conclusion

For the reasons stated above, IT IS HEREBY ORDERED that the Court rules on Defendants' Motions in Limine Nos. 11-16 (Doc. 189) as follows:

(1)   Motion in Limine 11 is DENIED;

(2)   Motion in Limine 12 is GRANTED;

(3)   Motion in Limine 13 is DENIED with leave to renew objections at trial;

(4)   Motion in Limine 14 is RESERVED FOR RULING as to evidence of other residents' incidents, falls, weight loss, or death and GRANTED in all other respects;

(5)   Motion in Limine 15 is DENIED AS MOOT as to Pam Donovan, RESERVED FOR RULING as to Olivia Koelsch, and GRANTED IN PART and RESERVED FOR RULING IN PART as to Judy and Dennis Knolls; and

(6)   Motion in Limine 16 is GRANTED.

DATED this 10th day of December, 2025.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge