IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ESTATE OF ROBERT W. PETERSEN, by and through Robert T. Petersen as Personal Representative; ESTATE OF MARY ANN SIMONS, by and through Dean Simons as Personal Representative; and ESTATE OF CHARLOTTE ELAINE GUILFORD, by and through Charles Guilford as Personal Representative,<br><br>    Plaintiffs,<br><br>vs.<br><br>KOELSCH SENIOR COMMUNITIES, LLC and BILLINGS PARTNERS, LLC d/b/a CANYON CREEK,<br><br>    Defendants. | CV 22-11-BLG-SPW<br><br><br>ORDER ON DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT JANET MCKEE AND ALTERNATIVE MOTION TO LIMIT TESTIMONY |

Defendants Koelsch Senior Communities, LLC ("Koelsch") and Billings Partners, LLC d/b/a Canyon Creek ("Canyon Creek") filed a Motion to Exclude Testimony of Plaintiffs' Expert Janet McKee and an Alternative Motion to Limit Testimony. (Doc. 178).

The Motion is fully briefed and ripe for the Court's review. (*See* Docs. 179, 184, 192).

1

## I.    Background

This negligence action arises out of Plaintiffs' allegations that Canyon Creek, a licensed memory care and assisted living facility, failed to properly care for Mr. Petersen, Ms. Simons, and Ms. Guilford during the COVID-19 outbreak, proximately causing the residents' injuries and deaths. (Doc. 10 at 2–3). Plaintiffs allege Defendants breached their duty of care by failing to provide adequate staffing, nutrition, hydration, and infection control, among other failures. Plaintiffs also seek punitive damages, alleging that Defendants failed to implement enhanced infection control procedures, did not provide specially trained staff during staffing shortages, and deliberately withheld critical information about COVID-19 infections from residents and their families. (*Id.* at 28–31).

One of Plaintiffs' allegations in this case is that Canyon Creek failed to ensure that Mr. Petersen and Ms. Simons maintained acceptable parameters of nutrition and hydration as required by state statute and federal regulation. (*Id.* at 17).

Plaintiffs retained Janet McKee, a registered dietician, as their expert on the standard of care regarding how assisted living facilities monitor residents' nutritional status and needs. (Doc. 184 at 7). Plaintiffs initially disclosed Ms. McKee as an expert witness on April 3, 2024. (Doc. 140-1). The same day, she provided her expert report, which focused on Canyon Creek's nutritional and hydration care of Mr. Petersen and Ms. Simons (the "Initial Report"). (Docs. 184-2, 184-3). She

reviewed "select medical records from Canyon Creek [and] Billings Clinic Hospital" to form her opinions. (Doc. 184-1 at 1; Doc. 184-2 at 1). She identified and summarized significant failures in care, including inadequate meal assistance, failure to provide necessary supplements, and poor monitoring of nutritional status. In her opinion, these failures led to Mr. Petersen's and Ms. Simons's severe weight loss, malnutrition, dehydration, and other health declines.

Discovery in this matter closed on June 7, 2024. (Doc. 53 at 2). Defendants deposed Ms. McKee on June 14, 2024, pursuant to the parties' agreement. Before her deposition, Defendants issued a subpoena, requesting she bring the following information to the deposition:

- All materials and/or evidence you reviewed regarding this case.
- All materials and/or evidence you rely upon and/or which forms any part of the basis for any opinions you hold in this case or for any opinion you intend to offer at trial in this case.
- Any literature you have relied upon, in whole or part, to support the opinions you hold in this case or the opinions you intend to offer at trial in this case.
- Any literature, medical articles, medical texts, or authoritative medical sources which you consulted, referenced, or reviewed during your evaluation of this case or which you rely upon to support any opinion you hold in this case.
- Copies of any contract you have for work in this case together with all billing invoices and/or timekeeping records for this case.
- Any reports you have written in this case.
- Any notes or summaries you have made regarding the case.
- Any summaries or demonstratives you intend to refer to at the time of your trial testimony.
- A list of all cases wherein you have testified as an expert in deposition or trial in the last ten (10) years.

3

(Doc. 184-5 at 3).

Accordingly, Ms. McKee turned over "thousands of pages of documents" she purportedly used to formulate her opinions, including: (1) all of Defendants' and Plaintiffs' expert reports and rebuttals; (2) select summary judgment briefing; (3) declarations of former employees; (4) at least 12 witness depositions; (5) nearly 4,000 pages of non-medical records; and (6) federal and Montana regulations. (Doc. 179 at 11; Docs. 179-2, 179-3). She also produced four documents detailing specific breaches of care, emphasizing major failures in infection control, staffing, nutritional support, and compliance with state regulations, which led to serious health consequences for both Mr. Petersen and Ms. Simons (the "Violations Report"). (Doc. 179-4).

## II.    Discussion

Defendants first move to exclude Ms. McKee's testimony under Federal Rule of Evidence 702, arguing that her opinions exceed the scope of her qualifications, are based on insufficient facts and data, and are not supported by a reliable assessment of the applicable standard of care. (Doc. 179 at 17–21). Defendants next move in the alternative to limit Ms. McKee's testimony. They first argue that she lacks the qualifications to offer medical causation opinions or to use statutes or regulations to establish a duty and should therefore be prohibited from proffering such opinions. (*Id.* at 21–25). Second, they argue that any testimony about, reliance

4

upon, or reference to opinions and information first disclosed during Ms. McKee's deposition should be excluded from trial pursuant to Federal Rules of Civil Procedure 26 and 37. (*Id.* at 25–29).

For the following reasons, Defendants' Motion to Exclude is denied and the Alternative Motion to Limit Testimony is granted in part and denied in part.

### A.    *Motion to Exclude Testimony of Plaintiffs' Expert Janet McKee*

Under Federal Rule of Evidence 702, a district court serves as a "gatekeeper" of expert testimony. *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). "One of the preliminary gate-keeping determinations a trial court must make . . . is whether the witness is appropriately qualified as an expert on the particular subject matter." *Hardesty v. Barcus*, No. CV 11-103-M, 2012 WL 5906797, at *2 (D. Mont. Nov. 26, 2012).  If the expert is deemed qualified, the next inquiry is whether the testimony is reliable.

### 1.    *Qualifications*

Defendants first challenge Ms. McKee's qualifications, arguing her background as a registered dietician does not render her qualified to offer opinions regarding the care provided by Canyon Creek's administrators, nurses, and Certified Nursing Assistants. (Doc. 179 at 17).

The qualification standard is meant to be broad and to seek a "minimal foundation" justifying the expert's role as an expert. *Hangarter v. Provident Life &*

*Accident Ins.*, 373 F.3d 998, 1015–16 (9th Cir. 2004). There are no definite guidelines for determining the knowledge, skill, or experience required either in a particular case or of a particular witness. "The test is whether, under the totality of the circumstances, the witness can be said to be qualified as an expert in a particular field through any one or more of the five bases enumerated in Rule 702—knowledge, skill, experience, training, or education." *Santos v. Posadas de Puerto Rico Assocs., Inc.*, 452 F.3d 59, 64 (1st Cir. 2006). Then, a court must "compar[e] the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990).

Here, the Court finds Ms. McKee is qualified. Ms. McKee holds a Master of Science in Food, Nutrition, and Institutional Management and a Bachelor of Science in Home Economics Education. (Doc. 184-1 at 1). She is a registered dietician and nutritionist and holds licenses in nine states. (*Id.*). She is board certified as a specialist in gerontological nutrition and currently, she is the owner and manager of a nutrition and foodservice consulting company that services healthcare facilities, including acute care, skilled nursing and long-term care, residential psychiatric and behavioral treatment, and assisted living centers throughout the United States. (*Id.*).

Ms. McKee has delivered extensive educational programs and presentations nationwide for healthcare associations, industry conventions, and professional

groups, covering topics including nutrition's role in fall prevention, geriatric care, quality assurance, pandemic response, and liability reduction. (*Id.* at 1–2). She has developed and taught nutrition courses at the university level and for healthcare professionals. (*Id.* at 7). Further, she has conducted and published clinical research and authored/co-authored numerous articles and chapters on clinical nutrition topics, liability risk management, and speciality dietetics. (*Id.* at 3–7).

In sum, Ms. McKee's knowledge, skill, experience, and education are relevant to the opinions she offers regarding Canyon Creek's dietary standard of care duties. Accordingly, Ms. McKee is qualified to testify.

> 2. *Reliability*

Defendants next challenge Ms. McKee's reliability, arguing her opinions are based on insufficient facts and data and rely on a flawed methodology. (Doc. 179 at 18–21).

The reliability inquiry "focuses not on 'what the experts say,' or their qualifications, 'but what basis they have for saying it.'" *United States v. Holguin*, 51 F.4th 841, 854 (9th Cir. 2022) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995)). The analysis is meant to be flexible. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993). In engaging in this flexible analysis, the Court must not supplant the jury's fact-finding role. *See id.*; *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006). However, at the

same time, the Court cannot abdicate its gatekeeping role nor delegate that responsibility to the jury. *See* Fed. R. Evid. 702.

The reliability determination has three components: (1) the expert must base the opinion "on sufficient facts or data"; (2) the expert must ground the opinion in "reliable principles and methods"; and (3) the expert's opinion must reflect "a reliable application of the principles and methods to the facts of the case." *Id.* "The evidentiary requirement of reliability is lower than the merits standard of correctness." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994). Thus, an expert's assessments do not need to be correct, just reliable.

The proponent must demonstrate the expert's reliability by a preponderance of the evidence. Fed. R. Evid. 702. "[O]nce the court has found it more likely than not that the admissibility requirement has been met, any attack by the opponent will go only to the weight of the evidence." *Id.* advisory committee's note to 2023 amendment.

Here, the Court determines that Ms. McKee's opinions satisfy the preponderance standard for admissibility, albeit marginally. First, Ms. McKee's opinions are based on sufficient facts and data. In opposition, Defendants argue that Ms. McKee's "global" conclusions about Canyon Creek's handling of the decedents' nutritional risks appear unsupported to the extent she does not identify or cite the "select records" she reviewed. (Docs. 184-2, 184-3). Likewise, they assert

she did not receive or review Canyon Creek's menus, spreadsheets, or invoices for food and supplements, yet she still characterized clinical outcomes as "poor" or "negative" as a result of Canyon Creek's care. (Doc. 184-2 at 2–3; Doc. 184-3 at 2–3).

Although Ms. McKee did not cite specific documents and conceded that she would have preferred to review additional material, the Court nonetheless acknowledges that her testimony appears grounded in record evidence, as shown by the "thousands of pages" she produced at her deposition. (Doc. 184 at 11; Doc. 184-4 at 3). She also referenced and discussed specific documents during her deposition that evidenced facts on which she based her opinions, and she provided Defendants with a record inventory list identifying the documents she reviewed. (Doc. 179-3). For example, she relied on hospital records containing weight information to opine that significant weight loss would require a facility to "interview that patient and . . . revise a plan of care"—a step she concluded Canyon Creek failed to take. (Doc. 184-4 at 29). She also reviewed multiple depositions and other pertinent records in forming her opinion that Canyon Creek failed to provide adequate nutritional services to meet the decedents' needs. (*E.g., id.* at 24, 31, 32).

In short, Rule 702's flexible analysis leads the Court to conclude that Ms. McKee's opinions rest on sufficient record facts and data, as demonstrated by the

list she provided to Defendants and the extensive records she produced and relied on during her deposition.

Second, Ms. McKee's opinions reflect a reliable application of her experience, training, and education to the facts of the case. Defendants argue otherwise. For example, Ms. McKee opined that Canyon Creek failed to weigh Mr. Petersen on admission and that its negligence caused his weight loss, malnutrition, falls, dehydration, and pressure wounds, as well as a decreased quality and length of life. (Doc. 184-2 at 2). At deposition, however, she acknowledged not knowing when Mr. Petersen was admitted, not possessing his pre-admission records, and not being aware of his prior quality of life or whether he had preexisting pressure injuries. (Doc. 184-4 at 32, 38, 40). Absent this information, Defendants argue that her opinions are unreliable.

However, Ms. McKee does offer opinions relevant to her experience and supported by the record regarding Mr. Petersen's condition and treatment at Canyon Creek. For example, in Ms. McKee's experience, individuals with Parkinson's, like Mr. Petersen, "often have dysphagia[,] need help eating and . . . need one-on-one assistance." (*Id.* at 28–29). She opined that Mr. Petersen was at "high risk for choking, aspiration, weight loss, dehydration and protein calorie deficits." (*Id.* at 28). According to the record, however, Mr. Petersen "was placed in [Canyon Creek's] Ivory Dining Room, which [was] for independent diners" rather than the

10

Rose Dining Room, which provided assisted dining. (*Id.* at 29). In her view, Mr. Petersen's placement in the Ivory Room "promoted weight loss" because he needed assistance eating but did not receive it. (*Id.* at 32). Ms. McKee also criticized Canyon Creek's care plan for Mr. Petersen as "very vague" and repeatedly copied, noting inconsistent assessments. (*Id.* at 30). "One [said] he need[ed] feeding, one [said] he need[ed] assistance, one sa[id] he's a self-feeder." (*Id.*). She concluded that Canyon Creek could not "have it all three ways on one assessment" and that Mr. Petersen "needed assistance and cuing, but . . . was placed on a regular diet without . . . any kind of care plan to ensure he got supervision." (*Id.* at 30, 32).

Although certain aspects of Ms. McKee's testimony may lack foundation in pre-admission records or prior medical history, her analysis of Canyon Creek's care practices are nonetheless grounded in her professional experience and supported by the record. Therefore, her opinions are reliable.

Because Ms. McKee's opinions rest on sufficient facts and data and reliably apply her expertise to the facts of this case, she may testify at trial. Accordingly, the Court DENIES Defendants' Motion to Exclude.

/ / /

/ / /

/ / /

/ / /

11

B.    *Alternative Motion to Limit Testimony*

1.    *Causation Opinions and Establishing a Duty*

In the alternative, Defendants next move to limit, in limine, Ms. McKee's testimony by prohibiting her from offering causation opinions or using statutes or regulations to establish a duty. (Doc. 179 at 21–25).

A motion in limine is used to preclude prejudicial or objectionable evidence before it is presented to the jury. *Agan v. BNSF Ry.*, No. CV 19-83-BLG, 2022 WL 3700052, at *1 (D. Mont. Aug. 26, 2022). The Court shall exclude evidence in limine only if the evidence is inadmissible on all potential grounds. *Id.*

Motions in limine must specifically "identify the evidence at issue and state with specificity why such evidence is inadmissible." *Colton Crane Co. v. Terex Cranes Wilmington, Inc.*, No. CV 08-8525, 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010). Rulings on motions in limine are provisional, and the trial judge may always change their mind during trial. *Luce v. United States*, 469 U.S. 38, 41 (1984).

a.    *Causation Opinions*

Defendants first argue that Ms. McKee should be prohibited from opining that Canyon Creek caused Plaintiffs' medical diagnoses or that Canyon Creek "promoted"[1] Plaintiffs' medical outcomes. (Doc. 179 at 21). Plaintiffs "do not

---

[1] Defendants assert that Ms. McKee's use of "promote" equates to "cause." Ms. McKee testified that she used "promote" to indicate that a resident was put at risk. (Doc. 184-4 at 34). It was not intended as a medical causation opinion. (*Id.*).

intend to elicit a causation opinion from [Ms.] McKee." (Doc. 184 at 18–19). Therefore, the Alternative Motion to Limit Testimony is GRANTED as to eliciting causation opinions.

However, the Court agrees with Plaintiffs that Ms. McKee "is uniquely positioned to render an opinion on the risks attendant to poor nutrition." (*Id.*). She may therefore testify "on how lack of proper nutrition can promote, among other things, weight loss, falls pressure ulcers, or urinary tract infections." (*Id.* at 18). In this respect, the Alternative Motion to Limit Testimony is DENIED with leave to renew objections at trial.

### b. *Establishing a Duty*

Defendants next argue that Ms. McKee cannot use statutes or regulations to evidence a standard of dietary care because she only opined that Canyon Creek violated the cited statutes and regulations, not that the statutes and regulations embodied an applicable standard of care. (Doc. 179 at 22). Because Ms. McKee failed to identify laws embodying the standard of care, Defendants argue she is not qualified to determine which statutes and regulations establish a duty applicable to Canyon Creek. (*Id.* at 24).

In her deposition, Ms. McKee stated: "The standard of care is set by the regulations, the policies, procedures, what should be done to treat a resident's nutritional needs." (Doc. 184-4 at 23). In fact, Defendants' counsel asked Ms.

McKee, "So tell me if this is correct . . . . The standard of care in your mind is defined by what the regulations say, what policies and procedures say, and then, also, looking at the specific needs of a resident and doing what is reasonable and appropriate based on that specific resident's needs?" (*Id.*). Ms. McKee answered, "Yes." (*Id.*). She identified various regulations in her Violations Report which she ostensibly used to inform her opinion of the standard of care. (Doc. 179-4).

Based on Ms. McKee's testimony and qualifications discussed above, the Court permits her to opine on how the regulations and statutes she identified inform the standard of care and create a duty in this case. Plaintiffs do not intend to elicit ultimate issue opinions from Ms. McKee. (Doc. 184 at 19).

Accordingly, the Alternative Motion to Limit Testimony is DENIED as to Ms. McKee's use of statutes and regulations to identify a standard of care and establish a duty.

### 2.    *Federal Rules of Civil Procedure 26 and 37*

Finally, Defendants move to limit Ms. McKee's testimony by excluding "a number of" Ms. McKee's undisclosed materials, including documents and opinions revealed to Defendants for the first time at her June 2024 deposition. (Doc. 179 at 11–15).

Federal Rule of Civil Procedure 26(a)(2)(A)–(B)(i), (ii), requires a party to disclose expert witnesses and their written reports. A party who learns that its

disclosure is materially incomplete or incorrect, and that the information has not otherwise been made known to the opposing parties during discovery or in writing, must timely supplement or correct the disclosure. *Id.* 26(e)(1)(A).

"Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) [and (e)] that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). However, the district court has "wide latitude . . . to issue sanctions under Rule 37(c)(1)." *Id.*

### a. Rule 26

Under Rule 26(a), "subsequently-given deposition testimony is [generally] not a substitution for adequate disclosure in the expert's original report." *Asetek Danmark A/S v. CMI USA, Inc.*, No. 13-cv-00457, 2014 WL 6997670, at *1 n.1 (N.D. Cal. Dec. 9, 2014). An incomplete expert report therefore risks prejudicing the deposing party by undermining the party's ability to properly prepare for an effective deposition. *See Pineda v. City & County of San Francisco*, 280 F.R.D. 517, 521–22 (N.D. Cal. 2012); *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998) ("The [expert] report must be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources.").

If, however, a report is later found to be incomplete or inaccurate, "Rule 26(e) creates a 'duty to supplement,' not a right." *Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009). "Supplementation . . . means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. Sept. 9, 1998). While Rule 26(e) requires supplementation of expert reports upon discovery of new information, it "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' [initial] report." *Plentyhawk v. Sheikh*, CV 14-44-BLG, 2016 WL 3086404, at *3 (D. Mont. May 31, 2016) (citation omitted). A party therefore cannot bring new and additional theories to its case under the guise of Rule 26 supplementation.

Here, the Court finds that Ms. McKee introduced new opinions in her Violations Report and throughout her deposition that were neither adequately disclosed nor supplemented by Plaintiffs. When asked about her Initial Report during her deposition, Ms. McKee testified that "all [her] opinions based on the facts that [she] had at the time, are expressed in [her Initial Report]." (Doc. 184-4 at 8). She went on: "If you were to ask me a certain question about something that's not dovetailed out in the report, I may have a supplementing backup opinion, but the

16

global opinions are there. . . . I reserve the right to addendum my opinions as additional information came available." (*Id.*).

After reviewing Ms. McKee's Initial Report alongside her Violations Report, the Court finds that though the documents are fundamentally aligned, they differ in breadth and scope, in their regulatory and legal framing, and in their identification of infection control and systemic failures. (*Compare* Docs. 184-2, *and* 184-3, *with* Doc. 179-4). Ms. McKee likewise testified during her deposition with a more comprehensive and pointed view of her opinions than she had set out in her Initial Report.

For example, Ms. McKee testified that: (1) the Director of Nursing, Wendy Palato, failed to do her job (Doc. 184-4 at 34); (2) Canyon Creek's Administrator, Kevin Chambers, did not have a program in place to ensure his staff called physicians (*Id.* at 35); and (3) Koelsch's Regional Director of Operations at the time, Michelle Baker, failed to have systems in place to manage her staff (*Id.*). However, these people and these opinions were not explicitly disclosed in her Initial Report. When pressed on the issue, Ms. McKee pointed to a line in the Initial Report, which stated that she "formed an opinion relating to the nutrition and hydration care . . . by Canyon Creek and its *staff*." (Doc. 184-3 at 1; Doc. 184-4 at 35). Ms. McKee suggested the late-disclosed opinions about specific staff should have been "inferred" by her Initial Report. (Doc. 184-4 at 35). The Court disagrees.

17

Disclosures by experts are not living documents that can be added to on a continuing basis. If the Court were to treat Ms. McKee's disclosures in this fashion, then "the full disclosure requirement implicit in Rule 26 . . . would interfere with the Court's ability to set case management deadlines, because new reports and opinions would warrant further consultation with one's own expert and virtually require new rounds of depositions." *Beller ex rel. Beller v. United States*, 221 F.R.D. 689, 695 (D. N.M. Nov. 10, 2003). That process would not facilitate settlement or final disposition of the case. *Id.* In this instance, Plaintiffs did not adequately disclose Ms. McKee's new and additional criticisms of Canyon Creek.

In addition to improper disclosure, Plaintiffs failed to adequately supplement Ms. McKee's Initial Report under Rule 26(e). It is obvious that the additional material Ms. McKee relied on and the new opinions she formed after her disclosure far exceed the scope of Rule 26(e), that is—"correcting inaccuracies or filling the interstices of an incomplete report." *See Keener*, 181 F.R.D. at 640.

Accordingly, Plaintiffs violated Rule 26 when they failed to adequately disclose or supplement Ms. McKee's Initial Report with the numerous new opinions from her Violations Report and the detailed analysis she provided at her deposition.

### b. Rule 37

"If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . at a trial, unless the failure was

substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The party facing sanctions for belated disclosure bears the burden to demonstrate justification or harmlessness. *Yeti by Molly*, 259 F.3d at 1107.

Plaintiffs first attempt to justify Ms. McKee's late disclosure by claiming they complied with Defendants' subpoena after the parties agreed that expert notes were not discoverable. (Doc. 184 at 21). Plaintiffs further argue the late disclosure was harmless because Defendants have now known about Ms. McKee's opinions for over a year, so any "prejudic[e] in this case strains credulity." (*Id.* at 22).

The Court finds the late disclosure was neither substantially justified nor harmless. Initially, the late disclosure deprived Defendants of a meaningful opportunity to prepare for, examine, and respond to Ms. McKee's new opinions at her deposition. True, Plaintiffs complied with Defendants' subpoena. However, had Defendants not subpoenaed Ms. McKee, they may not have learned about the new materials she relied on or her new opinions until trial. Plaintiffs offer no reason why the additional materials or new opinions were not properly supplemented under Rule 26(e) before Ms. McKee's deposition, and therefore, the late disclosure was not justified.

The Court next rejects Plaintiffs' contention that the late disclosure was harmless because Defendants violated the parties' agreement not to produce expert notes. (Doc. 184 at 22). Ms. McKee's "notes" advanced her opinions far beyond

19

the scope of her summary analysis in her Initial Report. And even though Defendants have known the totality of Ms. McKee's opinions for over a year, it was Plaintiffs' duty to adequately disclose and supplement under Rule 26. To now reopen the deposition at Defendants' expense for Plaintiffs' failure to disclose would certainly prejudice Defendants. For these reasons, Plaintiffs' late disclosure was not harmless.

Because the late disclosure was neither justified nor harmless, "Rule 37(c)(1) is an 'automatic' sanction that prohibits the use of improperly disclosed evidence." *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021) (quoting *Yeti by Molly*, 259 F.3d at 1106). However, "[t]he automatic nature of the rule's application does not mean that a district court *must* exclude evidence that runs afoul of Rule 26(a) or (e)." *Id.* (emphasis in original). "Rather, the rule is automatic in the sense that a district court *may* properly impose an exclusion sanction where a noncompliant party has failed to show that the discovery violation was either substantially justified or harmless." *Id.* "[T]he degree and severity" of the sanction "are within the discretion of the trial judge." *Keener*, 181 F.R.D. at 641; *see Yeti by Molly*, 259 F.3d at 1106.

The Ninth Circuit has identified several factors district courts may consider in deciding whether to impose Rule 37(c)(1)'s exclusion sanction. Those factors include: "(1) the public's interest in expeditious resolution of litigation; (2) the

court's need to manage its docket; (3) the risk of prejudice to [the party seeking sanctions]; (4) the public policy favoring disposition of cases on their merits; [and] (5) the availability of less drastic sanctions." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) (citing *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990)). "The first two of these factors favor the imposition of sanctions in most cases, while the fourth cuts against a default or dismissal sanction. Thus[,] the key factors are prejudice and availability of lesser sanctions." *Wanderer*, 910 F.2d at 656.

Here, the Court ultimately concludes that the risk of any prejudice to Defendants at trial is mitigated by two factors. First, despite Plaintiffs' procedural infraction, Defendants have had adequate time to prepare for trial since they learned of Ms. McKee's late disclosure 15 months ago. Second, expert testimony is an essential component to litigating the parties' case; as such, there are less drastic sanctions available than striking portions of Ms. McKee's opinions that would promote a fair trial. The jury should be allowed to weigh the entirety of Plaintiffs' experts' opinions.

Therefore, the Court elects to impose the lesser sanction of allowing Plaintiffs to file Ms. McKee's supplemental expert report and allowing Defendants to reopen Ms. McKee's deposition. The parties may conduct this deposition by Zoom or other remote means, and Plaintiffs shall bear the reasonable costs of conducting this

deposition.  Based on the foregoing, Defendants' Alternative Motion to Limit Testimony is DENIED as to Rules 26 and 37.

## III.   Conclusion

Based on the foregoing, IT IS HEREBY ORDERED that:

(1)   Defendants' Motion to Exclude Testimony of Plaintiffs' Expert Janet McKee (Doc. 178) is DENIED;

(2)   Defendants' Alternative Motion to Limit Testimony (Doc. 178) is:

  (a)   GRANTED as to eliciting causation testimony and otherwise DENIED with leave to renew objections at trial;

  (b)   DENIED as to Ms. McKee's use of statutes and regulations to identify a standard of care and establish a duty; and

  (c)   DENIED as to Rules 26 and 27.  Plaintiffs shall bear reasonable costs associated with the re-opening of Ms. McKee's deposition as described above.

DATED this _12th_ day of December, 2025.

SUSAN P. WATTERS
United States District Judge

22